UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

VISIBLE SYSTEMS CORPORATION,

Plaintiff

v.                                              Civil Action No. 04-CV-11610-RGS

UNISYS CORPORATION,

Defendant

---

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS TO COMPEL DISCOVERY, WITH REQUEST FOR ORAL ARGUMENT

In the midst of ongoing discussions about as-yet unfinished written and document discovery on both sides of this case, the plaintiff, Visible Systems, has unilaterally and without warning come to court with nearly 100 pages of motion papers detailing perceived inadequacies in the defendant's responses to date. Plaintiff fails to tell the Court that in a good-faith, cooperative effort to resolve or narrow the issues between the parties, and without waiving its legitimate objections, the defendant, Unisys, had already agreed, before the motions were filed, to provide additional information in a number of the areas covered by the motions, and to consider potential compromises on several other areas of inquiry—thus rendering moot many of the issues plaintiff seeks to raise with the Court. Indeed, Unisys had substantially completed its work on the agreed-upon supplemental responses when it was interrupted by the need to reply to plaintiff's motions.

While there remain areas of genuine disagreement about the scope of plaintiff's discovery demands in this case (leaving aside for the moment the numerous still-

unresolved issues as to *plaintiff's* inadequate disclosures), the matters in dispute are more specific than would be suggested by plaintiff's prolix and disjointed filings.  Visible Systems seriously distorts the defendant's positions on these remaining issues, which positions were carefully laid out in the defendant's written responses and in extensive discussions with plaintiff's counsel.  Nor has Unisys improperly resisted the scheduling of its Rule 30(b)(6) deposition, as plaintiff misleadingly suggests.  The defendant therefore seeks to clarify these issues, and asks that the Court deny plaintiff's motions as premature and unfounded.

## I.      Background

### A.      Unisys and 3D VISIBLE ENTERPRISE

This case involves a dispute over the right of Unisys to use the service mark 3D VISIBLE ENTERPRISE in connection with its business.  Unisys, based in Blue Bell, Pennsylvania, is a leader in the field of information technology (IT) consulting, providing services in such areas as computer system integration, outsourcing, and infrastructure.  It has more than 36,000 employees in over 100 countries around the world.  The company is among the largest government IT contractors, serving local, state, and federal agencies, as well as foreign governments.  Other groups within Unisys focus on such sectors as communications, financial services, and transportation.  The company's consulting services are designed to assist clients in areas such as business transformation, customer-relationship management, supply-chain management, and security.  The company also specializes in making high-end computer servers.

In recent years, a major focus of Unisys's consulting business has been on digital "blueprinting" methods, which involve creating computer models or "virtual maps" of

business or technology processes for clients. In early 2004, on the advice of an outside advertising agency, Unisys adopted and began using the mark 3D VISIBLE ENTERPRISE, which refers to an approach Unisys seeks to take in providing consulting services to its clients, and to the goal of such services from the client's perspective.

The services provided under the 3D VISIBLE ENTERPRISE mark (and its abbreviation, 3D-VE) are based on the idea that a complex organization may be considered to have four distinct "layers": a topmost "strategy" layer; a "business-process" layer; an "applications" layer; and an "infrastructure" layer. Decisions made or risks confronted at one of these layers may have far-reaching implications throughout other parts—and even other layers—of the organization. For example, in the area of information-technology investment, it is often extraordinarily difficult for a client to assess the scope and effects of a contemplated change to its IT system, and to assess the true potential value of a new technology to the organization. As another example, changes in the regulatory environment in which a business operates (e.g., electronic-transaction rules for the banking industry) may have profound and widespread effects in multiple layers and areas of a client's operations. 3D VISIBLE ENTERPRISE refers to the goal of using computer-based modeling—blueprinting—as the basis for providing consulting services at any one or more of the layers of a business or other enterprise, because such modeling can enable decisionmakers to see the deepest and most remote cause-and-effect relationships, at their own layer and each of the others, that may stem from decisions, risks, and changes they confront.

The 3D VISIBLE ENTERPRISE approach and goal apply in each of the areas where Unisys has a proven record of expertise. In outsourcing, for example, the

approach assists clients to decide exactly which services to outsource and which to retain in-house, and to see the impact of such changes before they are made.  In systems integration, a 3D-VE approach enables a client to go beyond integrating IT systems with each other, to integrating them with the client's business vision and business processes. In the server technology and infrastructure areas, the approach allows a client to prove the value of an investment before it is made, and to use its IT systems not simply as a means of getting things done, but as a way to create traceability and accountability across an entire organization.

### B.     Visible Systems

Visible Systems, based in Lexington, Massachusetts, describes itself as "a boutique IT company, specializing in mainstreaming framework-based software engineering throughout the enterprise."[1]  The business reporting service Dun & Bradstreet identifies the company as a manufacturer and seller of "computer-aided software development tools," which it provides "for software engineers, data warehouse architects, analysts and designers."[2]  In 1985, Visible Systems registered the trademarks VISIBLE SYSTEMS and VISIBLE SYSTEMS CORPORATION for "computer programs recorded on magnetic disks," while disclaiming any rights to the term SYSTEMS.  The company has more recently separately registered VISIBLE for certain kinds of computer programs, and certain related training and consulting services.

As in many trademark matters, a central issue in this case is whether the use by Unisys of the 3D VISIBLE ENTERPRISE mark in connection with its consulting

---

[1]  With one or two possible exceptions, the plaintiff here is apparently unrelated to some 43 other existing companies with identical or similar "Visible Systems" names, as shown in a recent Dun & Bradstreet report.  *See* Exhibit A hereto.

[2]  *See* Dun & Bradstreet Report, Exhibit B hereto.

services is likely to cause confusion among relevant categories of purchasers and potential purchasers about whether those services are somehow associated with the prepackaged software, or any other products or services, offered by Visible Systems.

## II.  Discovery Issues Raised by Plaintiff's Motions: Interrogatories and Requests for Production

### A.  Pertinent Procedural History

Unisys served interrogatories and requests for production of documents on Visible Systems on October 11, 2005.  Plaintiff's counsel sought an extension of time to respond to the requests, and Unisys's counsel agreed.  As it notes in its motion, Visible Systems then served its own discovery requests upon Unisys on November 23, 2005.  At that point, the undersigned lawyer principally responsible for coordinating Unisys's response to discovery requests was involved in preparing for the upcoming jury trial of a complex matter before Magistrate Judge Collings in this district court, a trial that took place between January 9 and February 2, 2006.[3]  Preparation for and trial of that matter occupied substantially all of counsel's time between mid-December and early February. Accordingly, Unisys's counsel sought and obtained the agreement of Visible Systems' counsel that the time for the defendant's discovery responses would be extended appropriately.  Visible Systems itself had not yet begun its production of documents, and Unisys's counsel agreed to a corresponding extension of time for plaintiff to begin that process.  Ultimately, by agreement and pursuant to the parties' cooperative approach, Unisys served its written responses and the parties made a mutual initial exchange of

---

[3]  The case was *St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, et al.*, Civil Action No. 01-10327-RBC.

requested documents on February 22, 2006.[4]

Counsel then conducted a series of in-person meetings, lengthy telephone conferences, and e-mail exchanges in which they discussed in detail the various issues raised by the parties' responses and production.  In a conference conducted over two days on March 22 and 23, Unisys agreed that notwithstanding what it regarded as legitimate objections to many of Visible Systems' interrogatories and requests, and in an effort to resolve or narrow the issues, it would provide supplemental information in response to some 14 of plaintiff's 23 interrogatories, and would consider possible compromise positions on various other requests.  In accordance with this agreement, Unisys and its counsel proceeded to investigate the matters on which it had agreed to supplement, and to prepare the supplemental responses, while also seeking to review and address numerous deficiencies in Visible Systems' document production and interrogatory responses.[5]

---

[4]  Visible Systems' assertion in its motion that Unisys "did not request a further extension" from an agreed-upon February 13 deadline to this February 22 date (*see* Motion at 12) is highly disingenuous.  In fact, the mutual exchange of discovery responses and documents that occurred on that date was by specific and express agreement between counsel.  Plaintiff also misleadingly asserts that even the February 13 extension was granted "on the understanding that Unisys would make a partial production" of documents before then (*see id.*).  In fact, the understanding was that *both sides* would use their best efforts to move the document-production process forward, but despite those efforts, the first production of documents *by either party* occurred on February 22—in Unisys's case, this being a function of its counsel's January and early-February trial schedule.

[5]  Visible Systems began its production by presenting 22 file-drawer length cardboard boxes of cryptically organized business records, the vast majority of which, as eventually became evident when Unisys's counsel reviewed the materials, were obviously irrelevant to any material issue in this case.  There then followed a series of "electronic" productions in which Visible Systems provided disks containing thousands of unsorted and (apparently) mostly irrelevant e-mails, vast numbers of poorly copied and marginally relevant accounting documents, and unusable copies of what plaintiff characterized as "customer databases," but which as far as Unisys has been able to determine (having only recently obtained readable copies) are merely lists of tens of thousands of unsorted "contacts" of various kinds, with no identification of which of

Plaintiff's counsel then abruptly interrupted these ongoing activities with its current motions.

Plaintiff's motion to compel concerning its interrogatories and requests for production of documents identifies what it refers to as six "major subject areas" in which it is dissatisfied with the responses it has received.  In several of these areas, Unisys had already agreed to provide additional responsive information, thus rendering plaintiff's complaints wholly or partly moot.[6]  The issues that remain are largely matters of scope: whether, to take one example, Unisys should be required to manually search the electronic mailboxes of tens of thousands of company e-mail users for occurrences of the word "visible."  For simplicity, Unisys will address the "major subjects" in the order in which they are presented by plaintiff.

### B.    Unisys "Partners"

On its extensive public internet website, Unisys provides detailed information about "partnerships" or "alliances" it has with some sixty other technology and service companies relating to various aspects of its business.[7]  In its interrogatories, plaintiff sought information about such partners who are "involved... in the ability of Unisys to deliver 3D VISIBLE ENTERPRISE to your clients."[8]  In its document requests, plaintiff

---

these are claimed to be relevant to the issues of this case.

[6]  Despite the forced interruption resulting from the present motions, Unisys anticipates that it will have completed the agreed-upon supplementation by late this week or early next week.

[7]  *See* http://www.unisys.com/about__unisys/partners/index.htm

[8]  *See* Interrogatory No. 12.  The text of plaintiff's interrogatories and document requests is contained in "Annex A" to its motion papers, with the document requests beginning at page 1 and the interrogatories at page 14.  While the Annex does not include Unisys's responses in the form in which they were served, it does appear to accurately set forth the text of the responses.  To avoid unnecessary duplication, Unisys has not attached copies of the actual responses to this opposition.

sought "all contracts and agreements" with any partners that are "related to the '3D Visible Enterprise' offering."[9]  Unisys made various objections to these requests, and in subsequent discussions plaintiff's counsel sought to clarify that it was seeking information about those companies that provide the software "tools" Unisys consultants use in performing blueprinting work under the 3D VISIBLE ENTERPRISE mark.  There are three such companies: IBM, Proforma, and CostXpert.[10]

With this clarification by plaintiff's counsel, Unisys agreed to provide information about the relationships with these companies beyond that which is already available on the Unisys website—in particular, a description of the nature of the relationship, what tools each company supplies, and how the tools are used by Unisys. Unisys has also complied with plaintiff's request that it identify the Unisys personnel responsible for the relationship with each of these partners.  Finally, Unisys agreed to consider further whether it would produce copies of its relevant contracts with these suppliers.  It has now undertaken to notify the companies (as expressly required under the terms of at least some of the agreements) that it proposes to produce redacted copies of the contracts, sufficient to respond to plaintiff's inquiry as to whether Unisys is indeed engaged in "reselling" prepackaged modeling software that plaintiff claims is in competition with software that it sells.[11]  The redactions would exclude other irrelevant

---

[9] *See* Document Request No. 10.

[10] Visible Systems' motion papers refer to three other companies, Microsoft, Oracle and Computer Associates.  Counsel is informed that these companies do not provide modeling tools that Unisys consultants use in their blueprinting work, and are not in this way "involved... in the ability of Unisys to deliver 3D VISIBLE ENTERPRISE to" its clients, as Unisys understands plaintiff's use of this phrase.

[11] One of the documents on which Visible Systems relies to support this contention identifies the company as a "niche player" in this software market.  *See* Plaintiff's Exhibit D at 2.

information about the business terms negotiated between Unisys and the tool suppliers: matters of pricing, delivery schedules, and the like.

### C.    Use by Unisys of the Word "Visible"

In its interrogatories, plaintiff asked Unisys to "identify all instances in which you have used the term 'Visible'" outside the context of 3D VISIBLE ENTERPRISE, and to provide detailed information about every such use of the word.[12]  Plaintiff's document requests demanded that Unisys produce every single e-mail or other electronic document "containing the word 'visible' or 'Visible' or 'VISIBLE.'"[13]  Unisys objected to the overbreadth of these requests, among other things, and in subsequent discussions plaintiff's counsel agreed to limit the inquiry to use (presumably meaning *public* use) of "Visible" with an initial capital letter.  As plaintiff's motion papers put it, the focus of this inquiry is whether Unisys has engaged in a "wide-ranging marketing strategy" to create a "family" of trademarks with the term VISIBLE as the centerpiece and unifying theme.  In its supplemental responses, as agreed, Unisys has provided information about the handful of public uses of "Visible" that it has been able to identify.  In virtually all of the instances, the word "Visible" appears in a textual, descriptive setting in which the capitalization of the initial "V" is simply a matter of proper grammar (for example, in a headline or title), and many of which, as plaintiff's motion papers make clear, were already known to plaintiff from readily available searching of the Unisys website.  Nonetheless, Unisys does not dispute that plaintiff is entitled to discovery concerning any

---

[12]  *See* Interrogatory No. 4.

[13]  *See* Document Request No. 20.  Other duplicative requests sought "all documents concerning Defendant's decision to use... the term 'Visible'" standing alone (*see* Document Request No. 8) and documents concerning any "services and/or goods offered by Defendant under the... term[]... 'Visible'" standing alone (*see* Document Request No. 14).

decisionmaking process that may have led to these uses of the word "Visible"—and whether they indeed reflect any program or strategy to create a family of VISIBLE trademarks.

Turning to a related but different issue raised by the plaintiff, Unisys has of course included e-mail and electronic documents in its search for relevant evidence and responsive discovery material in this case. And it has produced extensive e-mail and electronic documents from the key personnel involved with the 3D VISIBLE ENTERPRISE trademark and the services provided under it. Unisys has declined, however, to adopt plaintiff's suggestion—on which its motion papers continue to insist— that Unisys must conduct a search of every e-mail and electronic document throughout the company for every use of the word "visible."[14] In discussions between counsel about this request, Unisys agreed to provide information about the structure of its e-mail system, to enable a fair assessment of the feasibility and burdensomeness of conducting even a search limited to e-mail. It also agreed to produce a copy of its corporate document retention policy.

While plaintiff filed its motions without waiting for Unisys to deliver this information, if it had been less hasty it would have learned the following. Counsel is informed that Unisys utilizes a "distributed" e-mail system, which means that it has e-mail servers at various locations around the world. There are approximately 21 such servers in the United States alone, on which approximately 21,000 individual mailboxes are maintained. Each mailbox is its own "entity" within a database; the company does not in the ordinary course of its business forward user e-mail messages to a central

---

[14] *See* Plaintiff's Motion at 8.

repository, or create centralized "journal copies" of messages. Therefore, to conduct a search of every user's e-mail for the word "visible," for example, Unisys would have to dedicate a large number of personnel to open each of the approximately 21,000 mailboxes and manually conduct a keyword search within each one. In addition, many employees choose to have e-mail delivered to their local hard drives rather than leave it residing on the mail servers; even if a corporate-wide search could be undertaken, it would not pick up the e-mail of those employees.

Some of the users covered by a hypothetical 21,000-mailbox search might well be expected to have e-mail messages referring in various contexts to the 3D VISIBLE ENTERPRISE trademark, since the mark denotes an important part of the company's current business. In most cases, of course, these everyday business documents would be wholly irrelevant to any disputed and material issue in this trademark case. To be sure, the temporal scope of the searches would in many cases be limited, since under the Unisys document-retention policy employees are directed not to retain most e-mail for more than 40 days. Still, the ordinary uses of the 3D VISIBLE ENTERPRISE mark would have to be sifted to find what if any of the evidence plaintiff seeks—other relevant "trademark-like" uses of the word "Visible"—might indeed exist. And this process would have to be repeated for each of the thousands of users. Such a burdensome and inefficient exercise—a classic example of a "fishing expedition"—does not represent a method reasonably calculated to lead to the discovery of admissible evidence in this case.

Instead, the approach Unisys has taken on the subject of e-mail and electronic documents—focusing on the key employees involved in the decisions and activities at issue in this case, and other key sources of potentially relevant information, and taking

reasonable steps to determine what responsive information in any discoverable form these sources may yield—is entirely appropriate, and indeed represents the only sensible and practical way to conduct discovery in this case.

### D.     Limited Responses to Certain Requests

Visible Systems complains that after objecting to several of its interrogatories and document requests, Unisys provides what plaintiff regards as "partial" or "selective" answers.  As a procedural matter, there is of course nothing whatsoever improper about this.  Indeed, the applicable rules specifically require that where only part of a request is objectionable, the responding party should reply to any portion of the request to which no objection is made.[15]

Furthermore, in many cases what Unisys did was simply to restate a vague or ambiguous request to make clear its understanding of the intended question before replying.  For example, one set of document requests to which plaintiff's motion apparently refers (albeit without citation) sought "all documents concerning Defendant's selection of the mark" 3D VISIBLE ENTERPRISE, "including but not limited to any communication" with "any third party, including but not limited to any consultant, design firm, advertising agency, advertising media, printer, supplier, search firm, web site designer, internet registry, or internet provider."[16]  Plaintiff's motion falsely represents to the Court that Unisys has "avoid[ed] producing any documents" in response to this

---

[15] *See* Fed. R. Civ. P. 33(b)(1), 34(b).

[16] *See* Document Request No. 1.  Plaintiff later added a second, duplicative request for "all documents concerning Defendant's decision to use" the 3D VISIBLE ENTERPRISE mark (*see* Document Request No. 8), to which Unisys gave the same response and likewise agreed to produce responsive documents.

request.[17]  This is absolutely not true: what Unisys in fact did, as its response explained

and its counsel again pointed out in conference, was simply to state that it understood the

use of the phrase "selection of the mark" to refer to the initial decision by Unisys to adopt

and use the mark, rather than to some continuing or more generalized state of mind about

the trademark.  This is certainly a reasonable interpretation of the request, and Unisys has

produced numerous documents pertaining to the initial selection of the mark; thus,

plaintiff's representation that Unisys has "avoided producing any" such documents is

simply incorrect.

    Visible Systems also falsely tells the Court that Unisys has improperly "avoid[ed]

producing any documents reflecting the involvement of key Unisys persons who are

known to have been at the center of the launch of" the 3D VISIBLE ENTERPRISE

mark.[18]  Visible Systems identifies one such person, Unisys president and CEO Joseph

McGrath.  Plaintiff points to no document request in response to which Unisys has taken

the alleged position that it need not produce documents concerning Mr. McGrath's

alleged role, and no such request or response exists.  The statement in plaintiff's motion

is simply incorrect.  In fact, Unisys has consistently acknowledged that to the extent it

identifies in its records non-privileged documents or information concerning the decision

to adopt the 3D VISIBLE ENTERPRISE mark—including documents showing who

participated in the decision, and how—such documents and information are properly

subject to discovery; and indeed, Unisys has produced many such documents, so that

plaintiff's statement to the contrary is, again, incorrect.

---

[17] *See* Motion at 5, Item (i).
[18] *See* Motion at 5, Item (ii).

### E.     "Business Blueprinting"

Beginning in 2003, Unisys used the name BUSINESS BLUEPRINTING to refer to the computer-modeling methodology its consultants were following in providing services to the company's clients, and more generally to the idea of using such methods to align business and technology concerns within an organization.  When Unisys adopted the 3D VISIBLE ENTERPRISE mark in early 2004, it began using the parallel name and mark 3D BLUEPRINTING to refer to this methodology—and to emphasize its power to work across multiple organizational layers.  In its interrogatories, Visible Systems sought to have Unisys "identify all instances in which you have used the term 'Business Blueprinting' in connection with *any* product or service or methodology or other thing or concept," and to provide a detailed history of the advertising and selling of any goods or services under the BUSINESS BLUEPRINTING mark.[19]  In its document requests, Visible Systems sought "all federal and state trademark or service mark applications and any domain name applications" concerning BUSINESS BLUEPRINTING, as well as "all documents referring or relating to any such attempts to register."[20]

Since BUSINESS BLUEPRINTING is not a trademark at issue in this case, Unisys naturally objected to these requests as not reasonably calculated to lead to the discovery of admissible evidence.  It did, however, agree to provide information about its use of the name BUSINESS BLUEPRINTING, and about the relationship of that name, and the successor 3D BLUEPRINTING, to the mark in dispute.  As plaintiff acknowledges, the responsive documents Unisys has produced in this case refer to and explain the company's use of the BUSINESS BLUEPRINTING name, and its reasons for

---

[19]  *See* Interrogatory No. 7.
[20]  *See* Document Request No. 5.

adopting the 3D VISIBLE ENTERPRISE and 3D BLUEPRINTING names. Plaintiff speculates that Unisys may have had some nefarious motive for replacing BUSINESS BLUEPRINTING with 3D BLUEPRINTING and 3D VISIBLE ENTERPRISE, postulating that the change somehow signaled an intent to take advantage of the goodwill allegedly surrounding Visible Systems' name. If there were in fact evidence of such motivation, Unisys would of course be required to produce it, and since it has agreed to produce documents concerning its adoption of the 3D VISIBLE ENTERPRISE mark, there is no basis for plaintiff's assertion that Unisys disputes the discoverability of such evidence—again, if any existed.

Likewise, to the extent plaintiff's concern is with the blueprinting *methodology*, as distinct from how Unisys chose to name it at any particular time, Unisys has never disputed that plaintiff is entitled to some limited discovery sufficient to enable it to understand the methodology and how it pertains to the services offered under the 3D VISIBLE ENTERPRISE mark. But plaintiff has offered no rational justification for conducting an entire second category of discovery into the activities of Unisys in connection with a trademark that is not at issue in this case.

### F.    Prior Knowledge of Visible Systems

In its interrogatories, plaintiff asked Unisys to provide, as to each person involved in the adoption of the 3D VISIBLE ENTERPRISE mark, "a statement of the knowledge *vel non* that each such person had of Visible Systems Corporation" or its products as of the time of his or her involvement.[21] Unisys did not object to this portion of the interrogatory, and in response it stated that to its knowledge, when the decision to adopt

---

[21] *See* Interrogatory No. 1.

the 3D VISIBLE ENTERPRISE mark was made none of the Unisys personnel involved had any knowledge of Visible Systems or its trademarks, with the possible exception of those employees who reviewed a December 2003 trademark clearance opinion letter provided by attorneys for Unisys's advertising firm. That letter, which has been produced in this case, referred to various existing federal trademark registrations containing the word VISIBLE, and opined that "none of these prior marks appear to be so closely similar to 3D VISIBLE ENTERPRISE that they should preclude its use."

Plaintiff now says that in order to test the assertion by Unisys that it had only this limited notice concerning plaintiff's VISIBLE trademarks, Visible Systems is entitled to have the defendant conduct a search of all of its e-mail and electronic documents for every use of the word "visible" occurring anywhere at any time. For the reasons discussed above in Section C, this is not practicable, appropriate or required.

### G. Unisys Recruiting Activities at Universities

Visible Systems' interrogatories demanded that Unisys "identify all universities and other post-secondary-school academic institutions at which Unisys has recruited during the past five years."[22] As plaintiff acknowledges, notwithstanding its objections to this wholly irrelevant inquiry, Unisys has agreed to provide the list requested. This issue is therefore moot.

### H. Itemized Discussion of Issues—Interrogatories

Perhaps reluctant to press its position on several other issues discussed between counsel concerning Unisys's responses, plaintiff does not address them in the main body of its motion, but buries them in the voluminous attachments. Nonetheless, pursuant to

---

[22] *See* Interrogatory No. 20.

Local Rule 37.1(C), Unisys will briefly address the remaining issues on an item-by-item

basis here, beginning with the interrogatories:[23]

> Interrogatory No. 1.    This interrogatory sought to have Unisys "identify each
>
> person... who participated in, or was consulted concerning, the adoption of, any decision
>
> to use, or any marketing, promotion, or other use of the mark 3D VISIBLE
>
> ENTERPRISE, or any investigation of marks or owners of marks similar to 3D
>
> VISIBLE ENTERPRISE or the term 'Visible'...."  Here again, Unisys sought to clarify
>
> that the part of this question relating to the "adoption" and "decision to use" the mark
>
> was intended to refer to the initial decision by Unisys to adopt and use the mark, rather
>
> than to some more generalized or ongoing inquiry into the company's state of mind on
>
> the subject.  Unisys proceeded to identify some 22 persons principally involved in the
>
> trademark-selection process.  Plaintiff complains that this list did not include several
>
> senior corporate executives who it believes must have "participated" at some level in the
>
> decision to adopt the trademark, and thus are covered by what plaintiff says was the
>
> intended meaning of this interrogatory.  The Court need not involve itself in resolving
>
> this semantic debate, as plaintiff is free to continue conducting whatever proper
>
> discovery it chooses on this subject.  Indeed, the matter is listed in plaintiff's Rule
>
> 30(b)(6) deposition notice, and Unisys has agreed to produce a witness to testify about
>
> it.[24]
>
> Beyond this, plaintiff's demand that Unisys identify, for example, every person

---

[23]  Again, the discussion of specific interrogatories begins at page 14 of "Annex A" to plaintiff's motion.

[24]  *See* Unisys's response to the Rule 30(b)(6) notice, which is an attachment to plaintiff's other motion to compel, beginning at page 28 of that document, and in particular see Item 27 on pages 43-44.

in the company ever involved in "any marketing, promotion or other use" of the 3D VISIBLE ENTERPRISE trademark is ill-defined and potentially limitless, and thus not reasonably calculated to lead to the discovery of admissible evidence. Thus, the objections asserted are appropriate. With respect to plaintiff's complaint about the identifying information given with respect to the individuals named in Unisys's response, this issue was resolved in discussions between counsel, and Unisys will shortly provide the agreed-upon additional information.[25]

Interrogatory No. 2.    This item relates to the services offered by Unisys under the 3D VISIBLE ENTERPRISE mark. As plaintiff acknowledges, notwithstanding its legitimate objections, Unisys agreed in discussions to provide additional information in response to this interrogatory. Unisys has not, contrary to plaintiff's passing assertion, waived its attorney-client privilege with respect to the decision to adopt and use the 3D VISIBLE ENTERPRISE mark, or as to any other issue in this case.[26] As plaintiff here acknowledges, Unisys has produced the trademark-search reports and opinions prepared by "counsel for Grey"—that is, Grey Worldwide, the New York advertising firm involved in the selection of the mark. Unisys has *not* produced any privileged communications with its own counsel, and therefore has waived no privilege.

Interrogatory No. 3.    This interrogatory seeks information about Unisys's use and promotion of the 3D VISIBLE ENTERPRISE mark. Unisys has produced business records providing the information sought. In discussions between counsel, Unisys

---

[25]  With respect to plaintiff's other complaint in this part of its motion, that Unisys has "avoid[ed] producing documents related to [its] decision to use 'Visible' as the centerpiece of additional marks," see Section C above.

[26]  Plaintiff suggests that this argument is set forth more fully in connection with its statement of position about Document Request No. 11 (*see* "Annex A" at 16), but no such additional argument appears there (*see id.* at 7).

agreed to provide a supplemental answer with specific Bates-number references to the documents in question.

Plaintiff argues that in addition to information about advertising activities within the United States, Unisys should provide discovery about advertising outside the country that is "accessible in" or "ha[s] circulation in" the United States—though plaintiff appears to concede, as it must, that given the principle of "territoriality" of trademark rights, use of a mark exclusively outside the United States generally has little or no relevance to acquisition of trademark rights within the country.[27]  As Unisys has previously made clear to plaintiff, it does not dispute that if it engaged in advertising activities that were directed to relevant potential purchasers within the United States, such activities would not be excludable from discovery merely because they happened to originate or occur outside the country.  But to the extent plaintiff seeks to have Unisys respond to its inquiries about advertising by imagining whether and how advertising in any of the more than 100 countries in which Unisys does business might hypothetically be "accessible to" potential purchasers  within the United States, this is not a workable formulation.

Interrogatory No. 4.    This interrogatory seeks information about other uses of the word "visible" by Unisys.  The issues raised are discussed in Section C above.  As noted there, notwithstanding its legitimate objections, Unisys agreed in discussions to provide additional information in response to this interrogatory.

Interrogatory No. 5.    This interrogatory relates to the "channels of trade" in

---

[27]  *See, e.g., Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 636 (1st Cir. 1992); *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisa*, 754 F.2d 591, 599 (5th Cir. 1985).

which Unisys has marketed services under the 3D VISIBLE ENTERPRISE mark. The subject of the industry categories in which Unisys operates is hardly a secret: it is discussed in detail on Unisys's public website.[28] Nonetheless, and notwithstanding its legitimate objections to this interrogatory, Unisys agreed in discussions to provide additional responsive information.

      Interrogatory No. 6.     This item seeks information about persons to whom Unisys has "marketed or sold" services under the 3D VISIBLE ENTERPRISE mark. Notwithstanding its legitimate objections, Unisys agreed in discussions to provide additional information in response to this interrogatory.

      Interrogatory No. 7.     This interrogatory relates to use of the mark BUSINESS BLUEPRINTING. The issues raised are discussed in Section E above. As noted there, notwithstanding its legitimate objections, Unisys agreed in discussions to provide additional information in response to this interrogatory.

      Interrogatory No. 8.     No issues raised in plaintiff's motion.

      Interrogatory No. 9.     No issues raised in plaintiff's motion.

      Interrogatory No. 10.     This item concerns the history of the use of 3D VISIBLE ENTERPRISE and the word "visible" on websites. Notwithstanding its legitimate objections, Unisys agreed in discussions to provide additional information in response to this interrogatory.

      Interrogatory No. 11.     No issues raised in plaintiff's motion.

      Interrogatory No. 12.     This interrogatory relates to the issue of Unisys

---

[28] *See, e.g.*, the page entitled "Industries: Expertise in Your Specific Market" at http://www.unisys.com/industries/index.htm. Indeed, plaintiff's discovery requests make clear that it was already perfectly aware of this information even before the requests were served. *See, e.g.*, Request No. 26.

"partners" and the services provided under the 3D VISIBLE ENTERPRISE mark.  The issues raised are discussed in Section B above.  As noted there, notwithstanding its legitimate objections, Unisys agreed in discussions to provide additional information in response to this interrogatory.

Interrogatory No. 13.    No issues raised in plaintiff's motion.

Interrogatory No. 14.    This item seeks data concerning "sales... related to Defendant's '3D Visible Enterprise' offering."  Notwithstanding its legitimate objections, Unisys agreed in discussions to provide additional information in response to this interrogatory.

Interrogatory No. 15.    No issues raised in plaintiff's motion.

Interrogatory No. 16.    No issues raised in plaintiff's motion.

Interrogatory No. 17.    No issues raised in plaintiff's motion.

Interrogatory No. 18.    No issues raised in plaintiff's motion.

Interrogatory No. 19.    No issues raised in plaintiff's motion.

Interrogatory No. 20.    This item relates to recruiting activities at universities, and is discussed above in Section G.  As noted, notwithstanding its legitimate objections, Unisys agreed in discussions to provide additional information in response to this interrogatory.

Interrogatory No. 21.    No issues raised in plaintiff's motion.

Interrogatory No. 22.    No issues raised in plaintiff's motion.

Interrogatory No. 23.    No issues raised in plaintiff's motion.

General Objections.

Plaintiff challenges two of the general objections asserted in the introduction to Unisys's responses to plaintiff's interrogatories.[29]

Objection (i) (Attorney-Client and Related Privileges). Plaintiff obliquely asserts that Unisys did not make this objection "timely." This appears to be a reference to the earlier disingenuous assertion that Visible Systems did not consent to Unisys providing its answers to interrogatories on February 22 rather than February 13 as had been earlier tentatively agreed. The facts of this matter are addressed above in footnote 4. There is no basis for plaintiff's position.

Objection (iii) (Activities Outside the United States). This issue is discussed in reference to Interrogatory No. 3 above and, in connection with plaintiff's document requests, in the following section.

**I.      Itemized Discussion of Issues—Document Requests**

Request No. 1. No issues raised in plaintiff's motion.

Request No. 2. No issues raised in plaintiff's motion.

Request No. 3. No issues raised in plaintiff's motion.

Request No. 4. No issues raised in plaintiff's motion.

Request No. 5. No issues raised in plaintiff's motion.

Request No. 6. No issues raised in plaintiff's motion.

Request No. 7. This request seeks documents relating to whether Unisys was on notice, when it adopted the 3D VISIBLE ENTERPRISE mark, that it might infringe plaintiff's trademark. As was explained in the discussions between counsel, the subject

---

[29] Plaintiff's discussion of these matters begins at the bottom of page 22 of "Annex A" to its motion.

of possible infringement issues connected with the 3D VISIBLE ENTERPRISE mark

has arisen on two occasions: first, when a trademark search was conducted prior to the

adoption of the mark; and second, when Visible Systems first made known to Unisys

the claims that are the subject of this lawsuit.  As to the first occasion, Unisys has agreed

that notwithstanding its legitimate objections to the wording of this request, it will

produce all responsive and non-privileged documents concerning the trademark search

and the decision to adopt the 3D VISIBLE ENTERPRISE mark—this is the point of the

statement appearing at the end of Unisys's response.  Not surprisingly, the great

majority of documents pertaining to the second occasion—when Visible Systems raised

its infringement claim—are privileged, or to the extent they reflect communications

between the parties about potential resolution of the claim, are already in the possession

of the plaintiff.  Nonetheless, Unisys does not dispute that to the extent it identifies non-

privileged documents from any time period reflecting notice to Unisys that it might be

infringing plaintiff's trademark, such documents would be discoverable.

    The subject of Unisys's other uses of the word "Visible" is discussed above in

Section C.  As noted, plaintiff's assertion that Unisys has adopted a "family" of

trademarks with "Visible" as the unifying theme is not supported by the evidence.

Nonetheless, Unisys does not dispute that if non-privileged documents existed reflecting

notice to Unisys that any use of the term Visible might infringe plaintiff's trademark

rights, such documents would be discoverable.

    Request No. 8.  This request principally seeks documents concerning Unisys's

"decision to use" the 3D VISIBLE ENTERPRISE mark and the abbreviation 3D-VE.

In its response and in discussions with counsel, Unisys sought to make clear that it

understood the request to focus on the decision to *adopt* the mark, which occurred in early 2004, as opposed to each and every "decision" on any occasion by any one of the company's 36,000 employees to "use" the trademark in some way—in a communication with a client, for example, or in a conversation within the company: the list of circumstances covered by this request as worded is potentially endless, and thus to this extent the request is not reasonably calculated to lead to the discovery of admissible evidence.

The subject of Unisys's other uses of the word "Visible" is discussed above in Section. C. As has been made clear in discussions of counsel, Unisys does not dispute that if non-privileged documents existed reflecting what plaintiff supposes is a program to create a family of "Visible" trademarks, such documents would be discoverable in this case.

Request No. 9. This request seeks documents concerning "types and classes of consumers" and "markets and channels of trade" to whom Unisys has marketed or sold services under the 3D VISIBLE ENTERPRISE mark. As noted above, the subject of the industry categories Unisys serves is no secret; it is discussed in detail on Unisys's public website,[30] and is the subject of detailed disclosure in the agreed-upon supplemental response to plaintiff's interrogatories. In addition, as also noted above, Unisys has produced business records detailing its advertising activities surrounding the mark. With Unisys having sufficiently identified the relevant categories of purchasers and "markets and channels of trade" (as Unisys understands plaintiff's intended use of

---

[30] *See, e.g.*, the page entitled "Industries: Expertise in Your Specific Market" at http://www.unisys.com/industries/index.htm. Indeed, plaintiff's discovery requests make clear that it is already perfectly aware of this information. *See, e.g.*, Request No. 26.

24

these terms) on its side of this case, and plaintiff having offered no basis for supposing that this information is somehow substantively incomplete or in dispute, plaintiff's demand that the company nonetheless produce "all documents concerning" these subjects is vague and potentially limitless, and therefore exceeds the scope of permissible discovery.

Request No. 10.    This request relates to the subject of contracts with companies identified as "partners" of Unisys, as discussed above in Section B.

Request No. 11.    The subject of Unisys's other uses of the word "Visible" is discussed above in Section C.

Request No. 12.    No issues raised in plaintiff's motion.

Request No. 13.    This request seeks "all documents showing, concerning, evidencing, relating or referring to Defendant's unit and dollar sales associated with" the 3D VISIBLE ENTERPRISE mark.  As noted above, notwithstanding its legitimate objections to Visible Systems' interrogatory seeking information on this topic, Unisys agreed in discussions to provide additional information on the subject.  Likewise, Unisys has no objection to producing documents kept in the ordinary course of business that reflect the sales data it has consented to provide.  The issue, here as elsewhere, is one of scope: plaintiff is not entitled to every document the company may have that may in some way be seen to "relate to," for example, "sales associated with" the 3D VISIBLE ENTERPRISE mark.

Request No. 14.    This request seeks "all documents showing, concerning, evidencing, relating or referring to" services offered by Unisys under the 3D VISIBLE ENTERPRISE mark.  The nature of these services is, here again, no secret, as they are a

major subject of discussion on the company's extensive public website.[31] Nonetheless, in discussions about plaintiff's interrogatory on this subject, and notwithstanding its legitimate objections, Unisys agreed to provide additional information on the subject. Plaintiff's demand that the company nonetheless produce "all documents concerning" the subject suffers from the same problems of ambiguity and apparent boundlessness found in many of the other requests, and exceeds the scope of permissible discovery.

<u>Request No. 15.</u>   No issues raised in plaintiff's motion.

<u>Request No. 16.</u>   No issues raised in plaintiff's motion.

<u>Request No. 17.</u>   No issues raised in plaintiff's motion.

<u>Request No. 18.</u>   No issues raised in plaintiff's motion.

<u>Request No. 19.</u>   No issues raised in plaintiff's motion.

<u>Request No. 20.</u>   This request, pertaining to e-mail and electronic documents using the word "visible," is discussed above in Section C.

<u>Request No. 21.</u>   No issues raised in plaintiff's motion.

<u>Request No. 22.</u>   No issues raised in plaintiff's motion.

<u>Request No. 23.</u>   No issues raised in plaintiff's motion.

<u>Request No. 24.</u>   No issues raised in plaintiff's motion.

<u>Request No. 25.</u>   No issues raised in plaintiff's motion.

<u>Request No. 26.</u>   This request assumes that there exists such a thing as a "typical '3D Visible Enterprise' output document" in each of eleven "markets" plaintiff contends are served by Unisys.  There is simply no foundation for this assumption. Unisys has elsewhere provided extensive information about the nature of the services it

---

[31] *See, e.g.*, the pages reachable from the "3D Visible Enterprise" link on the website's home page (www.unisys.com).

provides to its clients, and in discussions between counsel agreed to consider a compromise position on the production of work product delivered in client engagements conducted under the 3D VISIBLE ENTERPRISE mark.  Having considered the issue as discussed, Unisys agrees to produce work product from several engagements, without any representation or assumption that the engagements or the work product are in some way "typical" as that term is used in the request.

General Objections.

Plaintiff challenges several of the general objections asserted in the introduction to Unisys's responses to plaintiff's document requests.[32]

Objection (i) (Attorney-Client Privilege).  Unisys has never disputed its obligation to provide a privilege log identifying documents it has withheld from production on the basis of privilege.  Between communications with the company's in-house trademark counsel on various issues related to the subject mark, and discussions surrounding the subject dispute and the lengthy settlement negotiations between the parties before this litigation commenced in earnest, the number of documents is not insignificant.  Nonetheless, only the more pressing need to address the numerous other discovery issues in this case has prevented the defendant's log from having already been completed.  It will be delivered shortly, and plaintiff cannot sensibly claim that the delay has in any way materially or unfairly prejudiced its position in this case.  There is thus no legitimate substantive basis for this complaint.

Objection (iii) (Activities Outside the United States).  As noted above, under the

---

[32] *See* page 12 of "Annex A" to plaintiff's motion.

principle of territoriality that is a cornerstone of trademark law, matters such as how potential purchasers outside the United States may perceive the 3D VISIBLE ENTERPRISE mark, or what services Unisys may have provided to such foreign customers under the mark, are immaterial to this case, which involves only the question of plaintiff's asserted exclusive rights in the name VISIBLE in the United States. Nonetheless, Unisys does not dispute that if there were a specific basis for believing that some particular set of activities outside the country has created a likelihood of purchaser confusion within the United States, such activities would be a proper field of reasonable discovery. Plaintiff did not in conference between counsel coherently articulate any such theory, and it does not here make clear what it contends is the proper scope of discovery into non-United States activities. Its general complaint about this general objection should therefore be dismissed.

Objection (iv) (Relevant Business Activities of Unisys). As explained in the Background section of this memorandum, the 3D VISIBLE ENTERPRISE mark has not been used by Unisys as the name of a specific product or service Unisys sells, but rather to describe, from a client's perspective, an overall goal and approach that in various ways informs much of the consulting services it provides to clients. The thrust of this general objection is that to the extent plaintiff's inquiries are based on the false factual assumption that 3D VISIBLE ENTERPRISE acts as a traditional trademark to identify a specific product or service, this renders the requests meaningless, whereas to the extent some more general, unstated meaning is intended, the requests are potentially overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, Unisys has agreed to produce information detailing its

business activities related to the 3D VISIBLE ENTERPRISE mark. Absent a showing by plaintiff that some category of information has been improperly withheld, this complaint is at best premature.

Objection (v) (Relevant Classes of Potential Purchasers). The relevant inquiry as to the likelihood of confusion in any trademark case, of course, must focus on the potential for confusion among relevant persons—that is, purchasers or potential purchasers of the parties' products. At least insofar as Visible Systems contends in this case that Unisys's use of the 3D VISIBLE ENTERPRISE mark has diverted sales from the plaintiff, it must make a threshold showing that an overlap exists between the markets served by the parties. This is the essence of this objection. But notwithstanding the objection, Unisys has agreed to produce information identifying its clients for services under the 3D VISIBLE ENTERPRISE mark. Thus, plaintiff's exception to this objection, here again, is at best premature.

Objection (vi) (Documents Available on Unisys Website). Since the website is clearly organized and fully searchable, they can be located as easily by Visible Systems as by Unisys. Nonetheless, this issue has been discussed between counsel, and in several instances Unisys has agreed to provide specific page references to responsive documents.

## III.  Discovery Issues Raised by Plaintiff's Motions: The Rule 30(b)(6) Notice

### A.  Pertinent Procedural History

As plaintiff notes, on March 6, 2006, it served Unisys with a notice of Rule 30(b)(6) deposition—a notice listing 27 major topics and 47 numbered subparts, and demanding that Unisys produce its witness(es) in Boston on March 22, just over two weeks after service of the notice. By this point, counsel were engaged in discussions

about the parties' respective written discovery responses and document production, in the course of which Visible Systems' counsel had provided lengthy written comments on Unisys's responses. Following a similar procedure, and as a framework for discussion intended to avoid where possible any unanticipated disagreements during the deposition itself, Unisys offered to provide a written statement of its position on each of the items in plaintiff's 30(b)(6) notice, and it did so on March 16.

Visible Systems must have understood in serving its notice that the contemplated deposition would easily exceed the single-day limit imposed by Fed. R. Civ. P. 30(d)(2). Plaintiff must also have been aware that it was unreasonable to expect any opponent in Unisys's position to designate witnesses, re-arrange their schedules and prepare them to testify on all the detailed subjects covered by plaintiff's notice in the two-week period allowed. And Visible Systems must have known that it was improper to demand that an out-of-state defendant corporation produce designees for deposition in Massachusetts.[33] But had plaintiff been in any doubt about these threshold matters, the need to resolve the other issues Unisys had now raised made it obviously impossible for the deposition to proceed on March 22, as plaintiff's counsel indicated that he understood..

While the discussions between counsel were going on, Unisys proceeded to identify two witnesses whom it would designate to respond the items in the notice, and informed Visible Systems' counsel that this had occurred. Unisys's counsel suggested, however, that it would make sense to complete the written and documentary discovery

---

[33] The standard rule is that the deposition of an organization should take place in the jurisdiction where it has its principal place of business, unless the interests of justice or other relevant factors require otherwise. *See, e.g., Fortune Management, Inc. v. Bly*, 118 F.R.D. 21, 22 (D. Mass. 1987) (Alexander, M.J.); *cf. Smith v. Shoe Show of Rocky Mount, Inc.*, 2001 WL 1757184 (D. Mass. 2001) (Neiman, M.J.) (weighing factors).

before beginning this or other depositions in the case, to avoid any issue about a party's right to re-depose a witness after obtaining more documents. Plaintiff's counsel appeared to agree with this view, and indeed when Unisys offered to fix dates and places for the 30(b)(6) deposition in early May (so as to allow a reasonable time for completing the paper discovery), Visible Systems' counsel declined, suggesting that he first wanted to get a more definite sense of when the paper discovery would in fact be finished. Since then, Visible Systems has taken no further steps to schedule the deposition.

As of the time the present motions to compel were filed on April 5, 2006, Unisys understood that counsel on both sides were continuing their good-faith efforts to resolve the discovery issues between them—with many of the same issues arising in the context of paper and deposition discovery, and Unisys having agreed to supplement the former in an effort to resolve or narrow at least some issues applicable generally. Unisys had thus not yet abandoned these negotiations to seek a protective order limiting the scope of the as-yet-unscheduled Rule 30(b)(6) deposition. But this is not, as plaintiff has it, because Unisys has "radically misconstrued" its obligations under the Rule. Unisys understands those obligations fully, and is of course prepared to meet them.

### B. Substantive Issues

Many of the objections of which Unisys sought to notify Visible Systems in the March 16 document pertain to matters that would ordinarily arise for the first time during the course of a deposition: for example, the appropriate scope of inquiry by the questioner even in subject-matter areas that include, or may include, issues material to the case, and whether the questioning is unnecessarily duplicative of matters already fully addressed in paper discovery. With the Rule 30(b)(6) deposition of Unisys not having

even commenced, it would be premature at this point for the Court to consider such matters in the abstract, outside the context of actual lines of questioning, objections, and instructions by counsel.  The more immediate and specific issues pertain to those items in Visible Systems' notice as to which Unisys has taken the position it should not be required to produce any witness at all.  These items are discussed in order below.[34]

In Items 3(d) and 4(d), Visible Systems seeks to have a deponent identify every Unisys employee who has ever been "responsible for the design, development, sale [or] delivery" of any "products [or] services marketed, promoted, advertised, sold or delivered" under the 3D VISIBLE ENTERPRISE mark (or any other mark containing the word "Visible").  This is obviously overbroad and seeks potentially massive quantities of irrelevant information.  Unisys has properly objected to it.

Item 4(c), relating to identification of Unisys clients, has been addressed by the supplemental interrogatory responses Unisys agreed to provide, and likewise Unisys does not object to producing a witness to testify on the subject.

Item 7(a) seeks to have a Unisys witness identify every current or former Unisys employee who has or had any knowledge of the "designs, functions, purposes, methodologies, outputs [or] intended uses" of any product or service "marketed, promoted, advertised, sold or delivered" under the 3D VISIBLE ENTERPRISE or BUSINESS BLUEPRINTING marks.  Item 7(b) seeks identification of anyone who has "made public statements" on behalf of Unisys on any of these topics.  These proposed topics are, among other things, vastly overbroad, and would appear to require Unisys to

---

[34]  The full text of the topics listed in the deposition notice, and Unisys's written responses, is set forth in an attachment to plaintiff's motion on this subject, beginning at page 28.

survey its 36,000 employees, and all former employees, to determine what knowledge each had on the subjects listed. The topics are not reasonably calculated to lead to the discovery of admissible evidence. Unisys should not be required to respond to them.

Items 8(b) and 8(c) seek to have a deponent identify every current or former Unisys employee who has or had any knowledge of the company's "purpose(s) in employing" the 3D VISIBLE ENTERPRISE mark, and everyone who has ever "made public statements" on these subjects. These proposed topics suffer from the same problems as those discussed in the preceding paragraph. Unisys has properly objected.

Item 9 evidently refers to a typographical error in the Local Rule 16.1 Joint Statement filed by the parties in this case in September 2005. On the first page of the document, the Unisys trademark was given as 3D VISIBLE SYSTEMS rather than 3D VISIBLE ENTERPRISE. Neither counsel spotted the error until just before the conference. Plaintiff apparently attaches some relevance for purposes of this case to this scrivener's lapse, and seeks to inquire about who at Unisys may have seen the typo, and their "education, training and employment history." The matter is not conceivably material to any issue in this case, and thus the proposed inquiry is improper.

Items 12-16 seek to have a deponent testify about the basis for various legal positions and defenses Unisys has taken and asserted in this case—for example, the basis for Unisys's contention that the term "visible" as used by the plaintiff is entitled to little trademark protection because of its inherently descriptive and non-distinctive nature. Since the formulation of such positions and the marshaling of facts to support them are functions performed by and at the behest of a party's litigation counsel, such requests represent a thinly disguised attempt to inquire into an opponent's litigation strategy.

Unisys's objections are proper.

Item 17 proposes that a witness testify about "whether... any of Unisys' corporate parents or affiliates... used or employed the phrase '3D Visible Enterprise' prior to July 2004," and if so to inquire further on this topic. Unisys is willing to produce a witness on this topic.

Item 21 demands that a witness appear to testify about Unisys's involvement in "academic scholarships, courses, programs or competitions." Item 22 seeks testimony on Unisys employees' attendance at trade shows over a seven-year period from 1997 to 2004. Plaintiff has failed to demonstrate that either of these lines of inquiry is reasonably calculated to lead to the discovery of admissible evidence. Here again, Unisys has properly objected to the proposed topics.

Items 24-25 seek to have the witness identify "every person who provided information included in" Unisys's written discovery responses, and every person who has "possession, custody or control of any and all documents which evidence or memorialize such information." Without conceding that the listing of such individuals is a method reasonably calculated to lead to the discovery of admissible evidence, it is more properly and efficiently done via written discovery, rather than seeking production of a witness who has memorized a list of names.

Item 26, concerning Unisys's document retention policy, has been partially addressed by Unisys's agreement to produce a copy of the applicable policy. Plaintiff has failed to show that this case raises any issue concerning the policy or its "enforcement," and thus its proposed inquiry on these matters is improper.

**IV.   Conclusion**

For the foregoing reasons, plaintiff's precipitous decision to interrupt the discovery process with its lengthy and disjointed motions to compel is not warranted either by the true factual history of the parties' discovery negotiations and Unisys's reasonable and diligent efforts to supply properly discoverable information, or by a careful and fair examination of the remaining disputed requests and Unisys's valid objections to them.  The Court should deny plaintiff's motions as premature and unfounded, and return the parties to the task of cooperatively advancing discovery on the material issues in this case.


REQUEST FOR ORAL ARGUMENT

Unisys hereby requests a hearing on the issues raised by plaintiff's motions and this opposition.


**Defendant,**
**UNISYS CORPORATION**,
By Its Attorneys,


_____/s/ William L. Boesch_____
Anthony M. Doniger, BBO No. 129420 (doniger@srbc.com)
William L. Boesch, BBO No. 558742 (boesch@srbc.com)
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street
Boston, MA 02114
617-227-3030


Dated: April 19, 2006

376399.5