UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VISIBLE SYSTEMS CORPORATION,

        Plaintiff

v.

UNISYS CORPORATION,

        Defendant

Civil Action No. 04-CV-11610-RGS

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
FOR PROTECTIVE ORDER CONCERNING PROPOSED
DEPOSITION OF JOSEPH W. MCGRATH**

      At the close of discovery in this trademark case, the plaintiff seeks to take the oral deposition of Joseph W. McGrath, the President and Chief Executive Officer of the defendant. Plaintiff has failed to demonstrate, however, that this proposed deposition satisfies the standards set forth in Fed. R. Civ. P. 26(b)(2) with respect to the necessity, reasonably expected benefits, and burdens of such an extraordinary discovery request. Accordingly, pursuant to Rules 26(b)(2) and (c), the defendant moves that the Court enter a protective order requiring that, as a preliminary step, plaintiff take Mr. McGrath's deposition upon written questions, as provided in Fed. R. Civ. P. 31. Such a deposition will provide the plaintiff with a full and fair opportunity to develop whatever basis may exist for showing that the much more time-consuming and logistically complicated step of an oral deposition of Mr. McGrath is appropriate under the circumstances of this case.

**I.     Background**

    **A.     Unisys and 3D VISIBLE ENTERPRISE**

This case involves a dispute over the right of Unisys to use the service mark 3D VISIBLE ENTERPRISE in connection with its business.  Unisys, based in Blue Bell, Pennsylvania, is a leader in the field of information technology (IT) consulting, providing services in such areas as computer system integration, outsourcing, and infrastructure.  It has more than 33,000 employees serving clients in over 100 countries around the world.  The company is among the largest government IT contractors, serving local, state, and federal agencies, as well as foreign governments.  Other groups within Unisys focus on such sectors as communications, financial services, and transportation.  The company's consulting services are designed to assist clients in areas such as business transformation, customer-relationship management, supply-chain management, and security.  The company also manufactures high-end computer servers.

In recent years, a major focus of Unisys's consulting business has been on a methodology known as "blueprinting," which involves capturing and expressing in computer-based blueprints—that is, models or "virtual maps"—Unisys's analysis of a client's business and technology processes.  The methodology enables Unisys consultants to clearly depict a process or problem to decisionmakers within an organization; enables decisionmakers at various levels of the organization to communicate about a process or problem in a single, clearly defined "language"; enables Unisys and the client to analyze problems and risks through modeling of "what if" scenarios; and enables Unisys to deliver consulting services more efficiently by capturing, in transferable form, the intellectual property developed in a consulting engagement.

Unisys began promoting its particular methodology under the name Business Blueprinting in 2003. In early 2004, on the advice of an outside advertising agency, Grey Worldwide, Unisys adopted the phrase 3D VISIBLE ENTERPRISE to refer to the goal, from the client organization's perspective, of obtaining Unisys's blueprint-based consulting: to give three-dimensional transparency to the organization's assets, challenges, and processes, and to allow the enterprise to adapt to constant and simultaneous changes in market, automation, and technological demands. The evidence developed in discovery has shown that the name 3D VISIBLE ENTERPRISE was developed by Grey, whose outside trademark counsel conducted a search to ensure that the name could be used. 3D VISIBLE ENTERPRISE was publicly launched as a Unisys service mark in the United States in June 2004.

### B. Visible Systems

Visible Systems, based in Lexington, Massachusetts, describes itself as "a boutique IT company, specializing in mainstreaming framework-based software engineering throughout the enterprise."[1] The business reporting service Dun & Bradstreet identifies the company as a manufacturer and seller of "computer-aided software development tools," which it provides "for software engineers, data warehouse architects, analysts and designers."[2] In 1985, Visible Systems registered the trademarks VISIBLE SYSTEMS and VISIBLE SYSTEMS CORPORATION for "computer programs recorded on magnetic disks." The company has more recently separately registered VISIBLE for certain kinds of "computer programs," for "training in the field of

---

[1] With one or two possible exceptions, the plaintiff here is apparently unrelated to some 43 other existing companies with identical or similar "Visible Systems" names, as shown in a recent Dun & Bradstreet report. *See* Exhibit A hereto.

[2] *See* Dun & Bradstreet Report, Exhibit B hereto.

3

information technology" and for "advice" in the same field.[3] In so doing, it has joined the ranks of some 140 other registrants of federal trademarks incorporating the word VISIBLE.[4]

As in many trademark matters, a central issue in this case is whether the use by Unisys of its 3D VISIBLE ENTERPRISE mark in connection with its consulting services is likely to cause confusion among relevant categories of purchasers and potential purchasers about whether those services are somehow associated with the software, or any other products or services, offered by Visible Systems. Plaintiff has been unable to identify even a single instance in which such confusion has actually occurred, and has been unable to show any adverse effect on its business—much less any actual damages—resulting from Unisys's use of the name 3D VISIBLE ENTERPRISE.

### C. Joseph McGrath and the 3D VISIBLE ENTERPRISE Mark

Mr. McGrath, now the President and Chief Executive Officer of Unisys and a member of its Board of Directors, was in early 2004 the president of the company's Enterprise Transformation Services business unit. Unisys's blueprinting methodology originated within the ETS unit, and, the evidence in discovery has indicated, Mr. McGrath was an advocate of the methodology as a valuable part of his group's and the company's business strategy.[5]

The evidence has been that Lawrence Weinbach, then the company's Chairman, President and CEO, and Richard Badler, Senior Vice President of Corporate Communications, gave the assignment in 2003 to the outside marketing firm Grey

---

[3] *See* Registration Documents, Exhibit C hereto.
[4] *See* USPTO Listing, Exhibit D hereto.
[5] *See, e.g.,* Rule 30(b)(6) Deposition of Unisys (Ralph Welborn), Exhibit E hereto, at 150 (McGrath "has been a champion" of the 3D Visible Enterprise strategy).

4

Worldwide to develop a new marketing approach for the methodology, which led to Grey's formulation of the 3D VISIBLE ENTERPRISE name.[6] Grey developed the name based on a desire to shift the focus of the marketing of Unisys's consulting services away from the technical methodology and toward the goal or anticipated result from the client's perspective. Grey's outside counsel conducted a trademark search, and provided an opinion letter to Grey in December 2003.[7] Grey gave a presentation about the proposed 3D VISIBLE ENTERPRISE mark at a meeting in late 2003 attended by some ten or more Grey and Unisys representatives—including at least two Unisys executives who have already been deposed in this case, as well as Mr. McGrath.[8] The Grey presentation was repeated at a further meeting held in early 2004, attended by Unisys marketing executives and senior staff of the ETS unit, two of whom have been deposed in this case, along with Mr. McGrath.[9] The Grey proposal was subsequently approved by then-CEO Weinbach, presented at an internal company event in January or February 2004, and publicly launched in the United States in June 2004.[10]

### D. Plaintiff's Discovery

Plaintiff's opportunities for discovery from Unisys concerning the material issues in this case—e.g., the nature of the consulting services offered by Unisys with which the 3D VISIBLE ENTERPRISE mark has been associated, the technical details of the blueprinting methodology and its relationship (or lack of relationship) with the software "tools" used to communicate the results, and the company's efforts to market its

---

[6] *See* Deposition of Ellyn Raftery, Exhibit F hereto, at 26-27; Rule 30(b)(6) Deposition of Unisys (David Wright), Exhibit G hereto, at 13-14.
[7] Wright at 11.
[8] Raftery at 24-29; Wright at 12-15.
[9] Welborn at 151-52; Raftery at 59-62; Wright at 15.
[10] Raftery at 43-44; Wright at 11.

5

consulting services and the blueprinting methodology as part of the UNISYS brand—have been ample. Thousands of pages of Unisys e-mail and other documents have been produced, and plaintiff's counsel has taken several days of deposition of executives in the highest ranks of the company, including, among others, Unisys's Chief Technology Officer, its Vice President of Worldwide Marketing and Communications, and the Managing Partner of its Business Transformation group. The last of these plaintiff deposed for a full day as one of two Rule 30(b)(6) corporate representatives, designated in response to a notice containing 27 major topics and 47 numbered subparts, and is scheduled to depose again for a second session later this week. Plaintiff is also scheduled to depose in the coming days Unisys's Vice President of Worldwide Services Operations. In all, plaintiff has taken or noticed eight depositions of Unisys employees other than Mr. McGrath. As noted, these include several witnesses who were present at one or both of two identified meetings in late 2003 and early 2004 preceding Unisys's adoption of the 3D VISIBLE ENTERPRISE trademark, and who are presumably as knowledgeable as Mr. McGrath about what transpired at those meetings. Thus, to the extent any internal Unisys discussions about Grey's proposal may be potentially relevant to some issue in this case, there has been a full and fair opportunity for plaintiff to inquire on the subject. Plaintiff has also requested and obtained documents from Grey—but has not sought the deposition of any of the various Grey representatives involved in the actual creation and selection of the 3D VISIBLE ENTERPRISE mark.

**II.     Argument**

      **A.     Plaintiff has failed to demonstrate that the proposed deposition of McGrath satisfies the standards embodied in Fed. R. Civ. P. 26**

While the scope of discovery is necessarily broad, it is of course not unlimited.[11] The limitations begin with Fed. R. Civ. P. 26(b)(1), which requires that a request for discovery must be reasonably calculated to lead to the discovery of admissible evidence.[12] Rule 26(b)(2), which was adopted more recently "to deal with the problem of over-discovery,"[13] specifically authorizes a district court to limit discovery—including the number of depositions available to a party—and provides that such limits "shall" be imposed if the court

> "determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."[14]

Rule 26(c), likewise, authorizes the court, for "good cause shown," to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including ordering "that the... discovery not be had," or be conducted by another means.[15]

---

[11] *See, e.g., Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001).
[12] Fed. R. Civ. P. 26(b)(1).
[13] *See Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989) (discussing earlier version of Rule, denominated as Rule 26(b)(1)).
[14] Fed. R. Civ. P. 26(b)(2).
[15] Fed. R. Civ. P. 26(c).

In applying these rules in a particular case, the court engages in "a largely empirical exercise,... balanc[ing] the inquirer's right to know against the responder's right to be free from unwarranted intrusions, and then... factor[ing] in systemic concerns."[16] A party seeking discovery "ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up."[17] Federal courts have long recognized that they must "be alert to see that the liberal deposition procedure provided in the Federal Rules is used only for the purposes for which it is intended and is not used as a litigation tactic to harass the other side and cause it wasteful expense."[18] For this reason, courts have suggested that in a case involving organizational parties, "when a party seeks to depose high-level decisionmakers who are removed from the daily subjects of the litigation, the party must first demonstrate that the would-be deponent has 'unique personal knowledge' of the matter in issue."[19]

---

[16] *See Mack, id.*

[17] *Id.*

[18] *See Armstrong Cork Co. v. Niagara Mohawk Power Corp.*, 16 F.R.D. 389, 390-91 (S.D.N.Y. 1954).

[19] *See, e.g., FMR Corp. v. Alliant Partners*, 1999 WL 696008 (Trademark Trial & Appeal Board July 15, 1999); *Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991) (citing with approval *Community Federal Sav. & Loan Ass'n v. FHLBB*, 96 F.R.D. 619 (D.D.C. 1983)). *Accord, Devlin v. Chemed Corp.*, 2005 WL 2313859, at * 2 (E.D. Mich. Sept. 21, 2005); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518-19 (N.D. Okla. 2003); *Cardenas v. The Prudential Ins. Co. of America*, 2003 WL 21293757, at **1-2 (D. Minn. May 16, 2003). *Cf. Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (upholding order quashing deposition subpoenas directed to three corporate employees, where issuing party had already deposed other representatives of same company); *Pedraza v. Holiday Housewares, Inc.*, 203 F.R.D. 40, 42 (D. Mass. 2001) (limiting inadequately supported requests for depositions as "bespeak[ing]... a possible fishing expedition"); *Prozina Shipping Co. Ltd. v. Thirty-Four Automobiles*, 179 F.R.D. 41 (D. Mass. 1998) (denying corporate party's "conclusory" and "cavalier" request that opponent's discovery be limited to documentary evidence); *Travelers Rental Co., Inc. v. Ford Motor Co.*, 116 F.R.D. 140 (D. Mass. 1987) (Collings, M.J.) (permitting depositions in antitrust case, where requesting party made "a strong

In the present case, plaintiff has failed to show that Mr. McGrath is likely to have "unique personal knowledge" concerning any material and disputed issue in this case. Those issues, as the First Circuit has recognized as the key factors generally applicable to a trademark case, include the similarity of the marks at issue; the similarity of the parties' goods or services; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendant's intent in adopting its mark; and the strength of the plaintiff's mark.[20] There is no basis in the record for concluding that Mr. McGrath has unique knowledge of facts relevant to any of these issues. And indeed, plaintiff has had ample opportunity to inquire about all of the issues from other very senior Unisys executives who are fully knowledgeable sources. The fact that Mr. McGrath was the head of the business unit from which Unisys's blueprinting methodology and business strategy initially emerged, that he not surprisingly championed the methodology as a way to differentiate Unisys from its competitors, that he attended meetings along with others at which the Grey presentation was given—and even that his opinion of Grey's proposal may have been sought and valued—all have little if any bearing on the actual disputed issues in this case, which again have much more to do with what Unisys and Visible Systems do under their respective trademarks and whether any relevant consumer is likely to be confused by Unisys's mark.

---

showing" of corporate employees' "personal involvement in the implementation and administration" of disputed resale plans, and employees' affidavits "profess more a failure of recollection rather than a lack of knowledge" about the issues).

[20] *See, e.g., Beacon Mutual Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 15 (1st Cir. 2004).

Plaintiff has likewise failed to demonstrate that an oral deposition of Mr. McGrath satisfies the standards set forth in Fed. R. Civ. P. 26(b)(2)—that taking into account "the needs of the case," "the amount in controversy," "the importance of the issues at stake in the litigation," "the importance of the proposed discovery in resolving the issues," or any other relevant factors, the likely benefit of this particular discovery step outweighs the obvious burden involved in sidetracking the leader of a large enterprise such as Unisys from the significant daily responsibilities of running the company. Rather, it is clear that "the discovery sought is unreasonably cumulative or duplicative," and "is obtainable from... other source[s] that [are] more convenient, less burdensome, [and] less expensive," and that plaintiff, again, "has had ample opportunity by discovery in the action to obtain the information sought."[21]

      **B.**     **Under the circumstances presented, plaintiff should at least be required, as a preliminary step, to take a Fed. R. Civ. P. 31 deposition on written questions of Mr. McGrath**

As noted, to combat the risk of harassment-by-deposition, and to prevent a party from trying to "wear out" a corporate opponent, courts have required that a party seeking the oral deposition of a senior executive first exhaust other reasonably available and less-intrusive means of obtaining the information sought from the executive.[22] For example, some courts have required that the discovery-seeking party take a preliminary deposition of a senior executive on written questions, as provided in Fed. R. Civ. P. 31. In this way, the party is given a less burdensome opportunity to discover whether the executive

---

[21] Rule 26(b)(2).
[22] *See, e.g., Folwell v. Hernandez*, 210 F.R.D. 169, 173-74 (M.D.N.C. 2002); *Harris v. Computer Assoc. Int'l, Inc.*, 204 F.R.D. 44 (E.D.N.Y. 2001).

indeed has some unique knowledge that should then, under the circumstances of the case and in light of the Rule 26(b)(2) factors, make him subject to oral deposition.[23]

While Unisys maintains that no deposition of Mr. McGrath is warranted in this case, for the reasons set forth above, in the interest of compromise it has suggested to plaintiff that this is the approach that should be adopted here. Plaintiff should be required to follow the procedure set forth in Rule 31, after which the parties (and, if necessary, the Court) can evaluate, based on a properly developed record, whether despite all appearances from the evidence to date, the proposed oral deposition of Mr. McGrath is indeed justified under the circumstances of this case because of his unique knowledge about one or more material issues. This procedure will not result in any unfair prejudice to the plaintiff, or, if expeditiously accomplished, any undue interference with the orderly disposition of this case. Unisys therefore respectfully requests that the Court issue an order precluding plaintiff from taking the proposed oral deposition of Mr. McGrath, without prejudice to plaintiff's seeking a further order permitting the deposition, based on a showing that a deposition on written questions has revealed areas of unique personal knowledge.

---

[23] *See Consolidated Rail Corp., v. Primary Industries Corp.*, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993). *See also B & L Drilling Elec. v. Totco*, 87 F.R.D. 543, 545 (W.D. Okla. 1978); *DBMS Consultants Ltd. v. Computer Assoc. Int'l, Inc.*, 131 F.R.D. 367, 370 (D. Mass. 1990) (deposition on written questions was appropriate where oral deposition would be expensive and burdensome).

**Defendant,**
**UNISYS CORPORATION**,
By Its Attorneys,

__/s/ William L. Boesch_____
Anthony M. Doniger, BBO No. 129420 (doniger@srbc.com)
William L. Boesch, BBO No. 558742 (boesch@srbc.com)
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street
Boston, MA 02114
617-227-3030

Dated: September 19, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document is being filed through the ECF system, and that I am therefore relying on the system to complete service by sending copies of the filing electronically to the necessary counsel, who are registered participants.

__/s/ William L. Boesch_____

381648.6