UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VISIBLE SYSTEMS CORPORATION,<br><br>Plaintiff<br><br>v.<br><br>UNISYS CORPORATION,<br><br>Defendant | Civil Action No. 04-CV-11610-RGS |

**VISIBLE'S OPPOSITION TO DEFENDANT'S
MOTION FOR PROTECTIVE ORDER**

Unisys has moved for a protective order to block the deposition of Joseph McGrath, the one person still at Unisys who was centrally involved in corporate decisions to select and use the infringing mark "3D Visible Enterprise." Joseph McGrath has been identified by Unisys witnesses in depositions as:

**(a) One of Unisys' key decisionmakers in selecting the name "3D Visible Enterprise"**

According to Unisys' Rule 30(b)(6) designee David Wright, the final decisionmaker was then-CEO Lawrence Weinbach; and the two key decisionmakers involved with Weinbach were "probably Joe McGrath and Fred Dillman."[1] Weinbach has retired.[2] Dillman denies involvement in selecting the name.[3]

Plaintiff thus needs to examine Joseph McGrath as to one of the key factors in this trademark action: the intent of Unisys in adopting and using the name "3D Visible Enterprise."

---

[1] *See* Deposition of David Wright at 11, attached as Exhibit G to defendant's motion.
[2] *See* Deposition of Ellyn Raftery, Exhibit A hereto, at 51 (to be filed separately under seal).
[3] *See* Deposition of Fred Dillman, Exhibit B hereto, at 14 (to be filed separately under seal).

Further, Ellyn Raftery, head of worldwide communications and marketing for Unisys, identifies McGrath as an "influencer" of the decision to use the name, along with Dick Badler.[4] Badler has also left Unisys.[5] Raftery could not name anyone currently at Unisys, other than McGrath, with knowledge of how Unisys decided to use the name "3D Visible Enterprise."[6]

Unisys misses the point when it fingers Grey Advertising as the one who suggested the name. It is Unisys, not Grey Advertising, that uses "3D Visible Enterprise" as its flagship mark. The relevant issue concerns decisions of Unisys and intent of Unisys. Joseph McGrath, not Grey Advertising, is the one with relevant knowledge.

**(b) The person responsible for the public launch of "3D Visible Enterprise"**

When Unisys' 30(b)(6) designee Ralph Welborn was asked who was responsible for the launch of 3D Visible Enterprise in 2004, he identified Joseph McGrath and no other person. Welborn testified that McGrath directed those who carried out all aspects of the launch, including marketing, tooling/methodology, and sales.[7] Plaintiff has deposed the each of McGrath's three subordinates in these areas, Raftery, Dillman, and Welborn. None of them was present at a decisional meeting. McGrath is the only person still at Unisys who was likely present at such a decisional meeting. McGrath has submitted nothing to deny involvement or knowledge of any of these matters.

**(c) The champion of "3D Visible Enterprise" as a company-wide mark**

Unisys admits that the methodology and toolset that took on the name "Business Blueprinting" in 2003 and the new name "3D Visible Enterprise" in 2004, were

---

[4] *See* Raftery at 42-45.
[5] Raftery at 51.
[6] *Id.*
[7] *See* Deposition of Ralph Welborn at 150-51, Exhibit E to defendant's motion.

developed and implemented in Enterprise Transformation Services unit headed by Joseph McGrath. *See* Defendant's Memorandum at 4. As McGrath became Chief Operating Officer in 2004 and then Chief Executive Officer of Unisys in 2005, the "3D Visible Enterprise" mark and the associated methodology and tools expanded from an initiative of McGrath's business unit to an initiative of the entire company. *See* Raftery at 45-50.

By 2004, McGrath as Chief Operating Officer was able to describe 3D Visible Enterprise in an interview as a methodology "which we employ throughout the Unisys organization" and "a very demonstrable means of distinguishing ourselves to our clients."[8]

The evidence thus far developed in this case shows McGrath to be the central player at Unisys for many of the key decisional aspects related to Unisys' use of "3D Visible Enterprise" – the development of the methodology in McGrath's business unit, the selection and announcement of the name, and the expanded use of the methodology and the name as a market differentiator. Visible needs to examine McGrath as to Unisys' intent in adopting, using, and expanding the use of "3D Visible Enterprise."

In addition, Joseph McGrath's knowledge, decisions, motivation, and intent are relevant to an issue that surfaced during the deposition of 30(b)(6) designee David Wright: deliberate, willful infringement. Wright testified that as Director of Corporate Identity, he is responsible for controlling the use of names/marks by all of Unisys.[9] Wright ensures compliance with standards of usage and, in coordination with Unisys' trademark counsel, attempts to avoid infringement of the marks of others.[10] Wright explained in detail that he has disapproved and acted to prevent the use of marks by

---

[8] "What's a 3-D Visible Enterprise?" *Leaders* Vol. 27, No. 4, Exhibit C hereto, at 47-48.
[9] Deposition of David Wright, Exhibit D hereto, at 8-9.
[10] *Id.* at 74-75.

Unisys which include the word "Visible" – that he has approved only the mark "3D Visible Enterprise" and the use of "visible" in limited contexts such as ordinary descriptive usage.[11]  Wright dep. at 30-46, Ex. A.

When confronted with a Unisys document indicating that Unisys is offering "solutions" named Right Time Visible Bank, Visible Client, Visible Process, Visible Infrastructure, Visible Security, and Visible Deployment, Wright testified that "we have tried to kill this several times, and it keeps popping up."[12]

When plaintiff deposed Unisys' vice president in charge of worldwide services operations, he admitted that at least one of these disapproved "Visible" names has been used with clients,[13] but denied that others were solutions offered to clients, or were otherwise used by Unisys.  Plaintiff is entitled to inquire of Joseph McGrath the extent to which Unisys has deliberately used new infringing "Visible" names in contravention of the position of Unisys' Director of Corporate Identity.  The relevant issues include intent, willfulness, exceptional circumstances, and matters of corporate governance and accountability.

Plaintiff also wishes to examine McGrath as to his state of knowledge about Visible Systems Corporation and its products and services as of the time Unisys took out the advertisement appended hereto as Exhibit F – a fullpage ad  in the June 5, 2006 issue of Forbes, prominently featuring the names "visible" and "visible advantage" as the large type centerpiece of the ad.

The above-described matters within the probable knowledge of Joseph McGrath are relevant to the motivation and intent of Unisys, which is one of the eight factors in

---

[11] *Id.* at 30-46.
[12] *Id.* at 87-90.
[13] Deposition of Dominick Cavuoto, Exhibit E hereto, at 58 (to be filed separately under seal).

this Circuit for assessing likelihood of confusion.  These matters are also relevant to issues of willful infringement and exceptional circumstances.  McGrath's central role makes it likely that he will also have knowledge relevant to issues of similarity of products and services, confusing similarity of names, and channels of trade.

Magistrate Judge Collings' decision in <u>Travelers Rental Co. v. Ford Motor Co.</u>, 116 F.R.D. 140 (D. Mass. 1987), which Unisys cites in a footnote, makes it clear that Unisys has no possible basis for its motion.  When a corporate executive was personally involved in matters relevant to the case, it would be "extremely rare" to protect him from deposition based on his lack of knowledge or lack of recollection as asserted in an affidavit.  *Id.* at 143-44.  As in <u>Travelers</u>, forms of discovery other than deposition are "ill-suited" to probe either matters of recollection or motivation.  *Id.* at 144.

When the intent of corporate decisions is at issue, the rationale for taking an oral deposition of the responsible corporate officer is at its strongest.  *See id.*, *cited in* <u>Baine v. General Motors Corp.</u>, 141 F.R.D. 332, 335 (M.D. Ala. 1991).

Unisys' suggestion of written questions would cause pointless delay.  Plaintiff is entitled to take McGrath's deposition verbally and face-to-face, in time to use the transcript in opposition to any dispositive motion that Unisys may file.  The Court's amended Scheduling Order has such opposition due on December 1, 2006.  There is no need to change any dates in the Scheduling Order, so long as Unisys is required to produce Mr. McGrath for deposition by mid-November.

Unisys' memorandum cites nothing to support its position.  Of the three cases that Unisys claims are supportive of deposition by written questions for an executive, two of them involve letters rogatory for depositions in foreign countries where the burden is of a

different nature and extent than in the present case.  *See* DBMS Consultants Ltd. V. Computer Associates International, Inc., 131 F.R.D. 367, 368-70 (D. Mass. 1990) (non-party witness in Australia, deposition to proceed by written questions); B & L Driling Electronics v. Totco, 87 F.R.D. 543, 545 (W.D. Okla. 1978) (depositions of seven persons in Alberta, Canada, to proceed by written questions).

The third case cited by Unisys, Consolidated Rail Corp. v. Primary Industries Corp., 1993 WL 364471 (S.D.N.Y., Sept. 10, 1993), is an unreported one-page memorandum and order.  Conrail moved for a protective order to preclude the depositions of three executive officers:  the President, Chairman and CEO; a VP of Labor Relations; and a Senior VP of Operations.  Each of these three executives submitted an affidavit to the court attesting that they had no personal knowledge of the facts underlying the claims and counterclaims in the case, except what they may have learned from other Conrail employees.  To the extent this case has precedential value at all, it stands for the proposition that a party may propound written questions under Rule 31 to a corporate executive who has no personal knowledge or involvement in the matters at issue; it certainly does not stand for the proposition that an executive with personal involvement and knowledge may be protected from oral deposition.

In a further case cited by Unisys, Amherst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121 (D. Conn. 1974), the subordinate of a corporate executive lacked information in a number of relevant areas when deposed.  In that situation, the executive "should have to establish his ignorance at his deposition rather than through affidavit.  The wide scope of discovery afforded by the federal rules, *see* Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Fed. R. Civ. P., 26(b)(1), demands no less."  Id. at 123.

Finally, the instant case is quite similar to <u>Prozina Shipping Co. v. Thirty-Four Automobiles</u>, 179 F.R.D. 41 (D. Mass. 1998), in the utter lack of support for a motion for a protective order to avoid a deposition.

For these reasons, plaintiff respectfully requests that the Court deny defendant's motion for protective order; order that defendant make Joseph McGrath available for deposition not later than November 15, 2006; and award plaintiff its costs and expenses opposing this motion.

### Request for Oral Argument

Plaintiff requests oral argument on this motion.


Plaintiff VISIBLE SYSTEMS CORPORATION,

By its attorneys:

_____/s/ Stephen H. Galebach_____
Stephen H. Galebach, BBO#653006 (galebach@galebachlaw.com)
Joseph E. Rendini, BBO#542746 (rendini@galebachlaw.com)
GALEBACH LAW FIRM
One Knollcrest Drive
Andover, MA 01810
978-258-5300

and

Lawrence M. Kraus, BBO # 564561 (lkraus@foley.com)
Carrie J. Fletcher, BBO # 642369
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
617-342-4000


Dated: October 4, 2006

### Certificate of Service

- 7 -

- 8 -

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electonic Filing (NEF).

                                                _____/s/__Stephen H. Galebach_____
Stephen H. Galebach