UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VISIBLE SYSTEMS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>UNISYS CORPORATION,<br><br>Defendant. | C.A. No. 04-CV-11610-RGS |

**PLAINTIFF'S OPPOSITION TO MOTION OF UNISYS CORPORATION
TO STRIKE SUMMARY JUDGMENT EXHIBITS SUBMITTED BY PLAINTIFF**

Defendant Unisys Corporation ("Unisys") has moved to strike the following exhibits submitted by Plaintiff Visible Systems Corporation ("Visible") in opposition to Unisys' motion for summary judgment:

(a) the Affidavit of Visible's testifying expert Dr. Malcolm G. Lane

(b) the Affidavit of Clement Cote

(c) the Affidavit of Clive Finkelstein

(d) an article from the *Journal Marketing Research*

For reasons stated below, Unisys' motion to strike should be denied as to (a), (b) and (c).

**A. The Lane Affidavit and Expert Supplementation Are Reasonably Justified --
Indeed Necessitated -- by Unisys' Late Production of the PITO Documents**

After producing centrally relevant documents 45 days after the close of fact discovery and two weeks after the close of expert discovery, defendant Unisys Corporation tries to pin the

blame on plaintiff Visible Systems Corporation for Visible's need to file an affidavit from its expert Dr. Malcolm Lane as to the late-produced PITO Documents and concomitantly seek leave for Dr. Lane to supplement his expert disclosure as to the same. Having withheld the most significant of Unisys' internal documents until the last possible moment, Unisys now argues that Visible is using the PITO Documents as a "pretext,"[1] and accuses Visible of unjustified delay.[2]

On the contrary, Visible's persistent efforts to bring Unisys to comply with its discovery obligations are summarized in the three-page letter of counsel dated September 22, 2006, the final day of fact discovery, and submitted herewith as Exhibit A. Unisys' counsel repeatedly promised compliance, and based on those promises, Visible held back from filing a further motion to compel. Visible followed up with multiple telephone conferences until Unisys finally produced the Louise Till emails, with the PITO Documents, on November 6, 2006.

That the PITO Documents are anything but a "pretext" is amply attested by Dr. Lane's Affidavit and by the PITO Documents themselves, as discussed in Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 11-14. Dr. Lane explains in his Affidavit that the PITO Documents give him the ability to show a systematic comparison of the functions and features of Unisys' 3D Visible Enterprise with Visible's products and services, with reference to the Zachman Framework. Lane Aff. at 3, Ex. 4 to Plaintiff's Opposition to Summary Judgment. Dr. Lane explains how the PITO Documents enable him to opine systematically as to the degree of product/service similarity in the relevant market, in a manner that prior fragmentary excerpts from Unisys did not enable him to do. *Id.* at 4-5.

The degree of product similarity and use of same name in same market are crucially

---

[1] *See* Unisys' Opposition to Plaintiff's Motion to Suppment Expert Disclosure and Take Deposition Out of Time, at 2, filed by Unisys on January 26, 2007.
[2] Unisys' Motion to Strike at 3.

established by the PITO Documents.  Visible is seeking nothing more than the basic ability to present a vital part of its case to the jury, without being handicapped by Unisys' delay in producing documents that were first requested on November 23, 2005, almost a full year before they were finally produced.

The PITO Documents were withheld not only long after they were requested, but well after they were received by Unisys' counsel.  As appears in the letter of September 22, 2006, Exhibit A hereto, Unisys' counsel said he had received the Till emails before September 22, 2006. [3]

By withholding the PITO Documents until four days before the newly agreed summary judgment filing deadline, Unisys placed Visible in a very difficult position.  Visible promptly reviewed the 1900 pages of documents and called Unisys' counsel on November 8 to state that expert supplementation would be necessary in light of the significance of the documents. Unisys refused to agree.

Visible opposed the summary judgment motion based on the PITO Documents and the other evidence that Visible had developed, rather than seeking delay under Rule 56(f).  Visible has consistently sought to minimize delays and adjournments, in order to have a trial at the earliest possible time.  Visible seeks leave to supplement Dr. Lane's report in time to use his testimony related to the PITO Documents at trial. Visible has thus accepted that its opposition to summary judgment, as to the PITO Documents, is based on the documents themselves and the brief synopsis of Dr. Lane in his Affidavit, rather than on reopened discovery.

By following this course, Visible avoided in November 2006 the extensive distraction of

---

[3] Visible's Septeber 22, 2006 letter invited Unisys' counsel to comment on any points where he disagreed, and he did, as to two points, neither relevant to the Till email production.  *See* email of September 27, 2006 from William Boesch to Stephen Galebach, submitted herewith as Exhibit B.

emergency motion practice and the need to request months of delay. Visible as a company needs to protect its trademarks at trial without further delay, and Visible's counsel needed to avoid major distraction from the essential task of responding to the 66 pages of briefing and fact statements in Unisys' summary judgment motion.

Visible submits that Unisys was not prejudiced by Visible attending to the response to the summary judgment motion first, and seeking leave to supplement after. Unisys created the pretrial problems attendant upon the PITO Documents; and Unisys should not be allowed to profit from its late production.

The substance of the Lane Affidavit, moreover, is exactly what Unisys had reason to expect, given that Lane's expert disclosure opines on the similarity of products and services, and the PITO Documents demonstrate that similarity in a more direct and convincing manner than the previously disclosed documents. The Lane Affidavit focuses entirely on the PITO Documents that Unisys produced after the close of fact and expert discovery, and nothing more.

Even if Visible had never designated an expert in this case, the disclosure of new facts of this significance, in a tardy manner by defendant, would fully justify the designation of an expert before trial under Rule 37, Fed. R. Civ. P. Here, where Visible had put Unisys on notice of the areas on which Dr. Lane would opine, and the documents are centrally relevant to those exact areas, there is all the more compelling case for allowing Dr. Lane to supplement. Otherwise, Unisys would profit by hiding the ball until the last minute, then dropping 1900 pages of documents on Plaintiff in the same week as 66 pages of briefing and fact statements accompanied by hundreds of pages of exhibits.

### B. The Cote Affidavit Stands as the Observations of a Percipient Witness and Should Not Be Stricken

Defendant moves to strike the Affidavit of Clement Cote, Ex. 3 to Plaintiff's Opposition to Summary Judgment, characterizing it as "new proposed expert testimony." Motion to Strike at 4. Defendant's argument is doubly flawed.

First, the statements in Mr. Cote's Affidavit material to the summary judgment motion are factual, reflecting his personal observations in the course of his work in the modeling field. Visible identified Mr. Cote to Unisys as a material fact witness with relevant factual knowledge.[4]

Specifically, Mr. Cote observes in paragraph 10 of his affidavit: "In none of my professional or teaching activities in the modeling field have I ever heard or seen the word 'visible' used as a term of art to refer to any particular concept or procedure." Affidavit of Clement Cote, submitted herewith as Exhibit A.

Mr. Cote continues with his personal observation: "In my experience, 'visible' is not used as a common word in the field. In the modeling field, I have heard and seen the word 'visible' used only to refer to Visible Systems Corporation or its products." *Id.* The preceding nine paragraphs of the Cote Affidavit describe the extent of his relevant personal experience and provide the foundation for his material percipient witness testimony in paragraph 10.

Second, the material observations in paragraph 10 are identical in substance to the factual statements in Mr. Cote's expert report. *See "*Basis and Reasons for Opinion No. 2," Expert

---

4   *See* Plaintiff Visible Systems' First Supplemental Answers to Defendant Unisys' First Set of Interrogatories, at 6, Ex. C to Unisys' Motion to Strike.

Witness Report of Clement Cote, Ex. B to Unisys' Motion to Strike. Defendant cannot complain that it was surprised by the material factual statements in Mr. Cote's Affidavit. Defendant had full opportunity to depose Mr. Cote as a fact witness or an expert witness, and it did not do so.

While Mr. Cote admittedly has the experience and qualifications to serve as an expert, it is difficult to imagine any fact witness in the enterprise architecture - modeling market where Visible sells its products and services, who does not possess such qualifications. The relevant market is a community of experts in the modeling field. But this does not mean that Plaintiff must qualify all such witnesses as experts under Rule 26(a)(2)(B). "[T]he triggering mechanism of Rule 26's expert requirements is not the status of the witness, but, rather, the essence of the proffered testimony." *Gomez v. Rivera Rodriguez*, 344 F.2d 103, 113 (1st Cir. 2003). The Rule 26 definition of an expert "does not encompass a percipient witness who happens to be an expert," and thus "a party need not identify a witness as an expert so long as the witness played a personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit the witness's knowledge of those events." *Id.* at 113-14.

In the instant trademark litigation, the events at issue include occurrences over many years in many places. The use of the word "visible" as descriptive, or rather as distinctive of Visible and its products and services, is a factual matter known only to persons of wide and long experience. Mr. Cote is well-situated to testify based on personal observation. He is, in Judge Selya's phrase, "an actor with regard to the occurrences from which the tapestry of the lawsuit was woven." *Id.* at 113.

The factual tapestry of the instant case is intricate and extensive. The extensive relevant experience, and factual observations based on personal experience, of a witness such as Mr.

Cote, should serve as a qualification, not a disqualification, for his ability to testify as to a percipient witness in this case with respect to a summary judgment issue.[5]

### C. The Finkelstein Affidavit Contains Personal Factual Observations as to Multiple Disputed Fact Issues and Should Not Be Stricken

The Clive Finkelstein Affidavit, Exhibit 6 to Plaintiff's Opposition to Summary Judgment, is replete with the type of testimony, essentially factual in nature, discussed by the First Circuit in *Gomez v. Rivera Rodriguez*, 344 F.3d 103 (1st Cir. 2003). Mr. Finkelstein gives first-hand factual testimony based on his personal involvement and personal observations of facts relevant to multiple issues in this suit -- the nature of products and services associated with the Visible name; the way in which he has observed the term "visible" used in his many interactions with persons involved in modeling - enterprise architecture; the use of the Zachman Framework by himself and people he works with; and changes in nomenclature of modeling tools that he has observed, in which Rational became IBM Rational, Visio became Microsoft Visio, Popkin System Architect became Telelogic System Architect, and ERWin became CA Allfusion Erwin.

All of Mr. Finkelstein's observations are of factual matters in which he was personally involved before the commencement of this litigation -- *cf. Gomez*, 344 F.3d at 113-14 -- with the exception of paragraph 23, discussed below. Finkelstein was "an actor with regard to the occurrences from which the tapestry of the lawsuit was woven," *id.* at 113. The issues of distinctiveness, similarity of products and services, and channels of trade involve a complex tapestry of factual occurrences over a period of many years. Mr. Finkelstein's personal

---

5  *Cf. Long v. Cottrell, Inc.*, 265 F.3d 663, 668-69 (8th Cir. 2001) (upholding the allowance of fact testimony based on personal knowledge and experience of witness, including his testimony about practices of other manufacturers in the relevant industry, when the witness had previously filed an expert disclosure under Rule 26 that was open to challenge as untimely).

involvement and observations through those years are the foundation of his percipient witness testimony in each substantive paragraph of his Affidavit:

Paras. 1-3:  States the nature of his personal involvement.

Paras. 4-5:  How he started his US company, Information Engineering Systems Corp. (IESC).

Para. 6:  Describes the modeling tool, consulting services and training offered by IESC.

Para. 7:  Observation of CASE tools being, in his experience, more frequently called "modeling tools" during recent years.

Para. 8:  Description of the business approach of IESC, equipping the customer to do the job so that the least possible amount of work need be done by an outside consulting firm.

Paras. 9-11:  Description of the methodology and modeling tools he developed for business-driven information engineering, which he also called "enterprise engineering."

Para. 12:  Finkelstein's development of customer workshops, Strategic Modeling Workshop and others.

Paras. 13-14:  Merger of IESC with Visible Systems Corporation, with IE: Advantage and Business Templates taking on the Visible name.

Para. 15:  Personal observation of names of modeling tools changing, in his personal observation of modeling tools that he reviews in the course of his work.

Para. 16:  Observation of other names of CASE/modeling tools passing from the scene, leaving Visible as one of the very few names still standing as an independent company name associated with modeling tools.

Paras. 17-18:  Description of his work from 1997 to present.

Para. 19:  Personal observation of names used in his experience for CASE/modeling tools and the methods of IESC that took on the Visible name.

Para. 20:  Personal observation of the use of the word "Visible" by several hundred relevant persons per year over the past 20 years.

Para. 21:  Personal observation of the nature and use of the Zachman Framework for Enterprise Architecture.

Para. 22:  Personal observation of the personnel in the IT (information technology) departments of enterprises making or influencing purchasing decisions as to modeling-enterprise architecture tools and services.

Para. 23:  Observations about aspects of Unisys' "3D Visible Enterprise" as described on Unisys' website.

Defendant tries to make much of Clive Finkelstein's 45 years of experience in the field to turn him into an expert whom they can hope to disqualify.[6]  But Mr. Finkelstein's testimony is to be assessed not by whether he has a particular degree of personal expertise, but rather by whether his testimony is essentially factual -- with inferences and opinions only as closely pertain to the understanding of the facts, rather than offering expert opinions.  *See Gomez*, 344 F.3d at 113-14.  Finkelstein's testimony does not purport to be expert in nature -- he has only a bachelor's degree, and he puts forth no methodology, but only his observations.

As to paragraph 23, Mr. Finkelstein does comment here, and here alone, on factual matters that came to his attention after the start of the litigation -- namely two Unisys whitepapers.  Yet even here, Finkelstein offers observations of the type of methodology Unisys

---

6  Defendant also raises the issue of whether Mr. Finkelstein has been compensated as an expert in connection with his affidavit. Motion to Strike at 6 n.20.  He has not.  He has been treated consistently as a fact witness.

has adopted, and the identical methodology Finkelstein developed and transferred to Visible in 1997.

Visible has amply identified Finkelstein as a person with knowledge relevant to this action. Finkelstein was so identified from the outset in Plaintiff's Initial Disclosures. The deposition excerpts submitted by Unisys as Exhibits D and E to its Motion to Strike show Visible employees John Nash and Stuart Nash answering forthrightly about Finkelstein's role. Even before those depositions, Visible's counsel asked Ralph Welborn, a 30(b)(6) witness of Unisys, about his knowledge of Clive Finkelstein. Unisys has no grounds to complain of surprise or undue prejudice as to Mr. Finkelstein's testimony.

Defendant cites four cases in support of its contention that the Cote and Finkelstein affidavits be striken. All of them deal with the distinction between lay opinion testimony under Fed.R.Evid 701 and expert opinion testimony under Fed.R.Evid. 702. As mentioned above, Plaintiff contends that the statements contained in the affidavits in issue are statements of factual observations by percipient witnesses who happen to be experts, so neither Rule 701 nor 702 apply. But, assuming arguendo, that the statements do fall under one or the other rule, the cited cases do not support Defendant's contention.

In *Bank of China v. NBM, LLC*, 359 F.3d 171 (2nd Cir. 2004), the Second Circuit overturned the trial court's admission of testimony by an employee of the plaintiff bank whom the bank had assigned to investigate the alleged fraud which formed the subject matter of the action. The employee, who had extensive experience in international banking, had been allowed to testify regarding whether certain transactions comported with the business community's understanding of "normal" transactions; the concept of a "trust receipt" and how it worked in the

community; and whether a certain transaction would be considered fraudulent in the community. The Second Circuit concluded that the contested testimony was not properly admitted under Rule 701 because it reflected "specialized knowledge" the employee had "because of his extensive experience in international banking" and "were not a result of his investigation." *Id*., at 182. However, "to the extent [the employee's] testimony was grounded in the investigation he undertook …, it was admissible pursuant to Rule 701 of the Federal Rules of evidence because it was based on his *perceptions*." *Id*., at 181. [citation omitted, emphasis in original]

Even if the contested testimony set forth in the Cote and Finkelstein affidavits is characterized as opinion testimony, under *Bank of China* it is admissible under Rule 701 because the testimony is based on the witnesses' perceptions, i.e., whether they have seen or heard the word "visible" used in the relevant market in a generic or descriptive sense or in reference to Plaintiff Visible Systems Corporation and its products. A lay witness uneducated in computer or software modeling but somehow placed in the same specialized market would have the same perceptions as Mr. Cote or Mr. Finkelstein. It is not their specialized knowledge or work experience which enables them to perceive the use of the word in question; rather, their specialized knowledge or work experience leads them be in a position where they are likely to perceive the use of the word "Visible." Their qualifications serve merely to show the foundation of their testimony, *i.e.*, as evidence of their opportunity to observe.

In *Bransford & Petz v. Bank of America Commercial Finance Corporation,* 2005 WL 1668224 (D. Mass.), plaintiff, in opposition to defendant's summary judgment motion, submitted the affidavit of its office manager describing standard collection industry practices and stating that the transaction in issue comported with said practices. After quoting extensively

from *Bank of China*, Magistrate Judge Collings applied it to the facts at hand, stating:

> While testimony by [the office manager] with respect to his participation in this transaction with [defendant] may be admissible, any testimony offered by him regarding custom and practice in the collections industry … is inadmissible under Rule 701.

*Id.* at *9. Here, neither Cote nor Finkelstein opine on any custom or practice in the relevant market, but merely state what they have and have not perceived. While the "transaction" pertinent here is the use of the word "Visible" in the relevant market over a number of years, their testimony is still based on their personal perceptions and thus is admissible either as purely factual testimony or under Rule 701.

In *Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, 369 F.Supp.2d 155 (D. Mass. 2005), the trial court determined to exclude portions of a lay witness' deposition testimony as improper expert witness testimony under Rule 702 because "they contained opinions based on highly technical and specialized knowledge," *Id.*, at 156, specifically that:

> it would have been "obvious" and/or "trivial" to use his [the witness'] call-processing invention (1) to process prepaid cellular calls, (2) to use the ANI instead of the debit card number to identify calls, and (3) to combine his invention with CSI's cellular switch proposal.

*Id.* at 157. The court determined that the testimony described was so technical that it could not be characterized as lay opinion testimony under Rule 701:

> [I]t is undisputed that [the witness'] opinions were not based on his prior experience of actually processing prepaid cellular calls, using an ANI to identify calls, or combining his invention with CSI's cellular switch proposal. Instead, they were derived from his specialized knowledge of telecommunications. Applying his specialized knowledge to the aforementioned topics, [the witness] was then able to conjecture an opinion with respect to their triviality or obviousness. This type of abstract opinion, which is several degrees removed from [the witness'] actual experience, is the classic type of expert testimony contemplated by Rule 702.

*Id*. However, it is not the type of testimony offered by the Cote and Finkelstein affidavits, which does not apply specialized knowledge in order to "conjecture an opinion," but merely states what the affiant has directly perceived or not based upon his personal observations.

Finally, in *Victor G. Reiling Associates v. Fisher-Price, Inc.*, 406 F.Supp. 171 (D.Conn. 2005), plaintiff, in opposition to defendant's summary judgment motion, offered the declaration of its principal who opined on (1) customs and practices in the toy industry and what was typical or standard in said industry, and (2) his own expectations and understandings based upon his "actual personal experience" with the defendant. *Id*., at 174. Citing *Didzbalis v. Sheridan Transport Co.*, 2002 WL 31619071, *1 (S.D.N.Y.) for the proposition that "expert testimony is necessary for the introduction of [any] custom and practice evidence," the court struck the former testimony. But, citing *Bank of China*, 359 F.3d at 181, for the propositions that "[t]estimony admitted pursuant to Rule 701 must be rationally based on the perception of the witness" and "[t]his requirement is the familiar requirement of first-hand knowledge or observation," admitted the latter testimony. Here, the statements in the Cote and Finkelstein affidavits are based on "first-hand knowledge or observation" and so should not be stricken.

### D.  The Journal of Marketing Article

The article from the *Journal of Marketing Research*, Ex. 50 to Visible's Opposition to Summary Judgment, was included in exhibits send out to be bound, as a learned treatise of which the Court could take judicial notice under Rules 201 and 803(18), Fed. R. Evid. However, due to limitations of space and time, discussion of this article was omitted from Plaintiff's Memorandum, and Visible does not seek to rely on the article.

                                                                Plaintiff, VISIBLE SYSTEMS CORPORATION,

                                                                By its attorneys,

                                                                _____/s/Stephen H. Galebach_____
                                                                Stephen H. Galebach, BBO #653006
                                                               GALEBACHLAW
                                                               9-11 Touro Avenue
                                                               Medford, MA 02155
                                                               781-874-2239

                                                               and

                                                               Lawrence M. Kraus, BBO # 564561
                                                               Carrie J. Fletcher, BBO # 642369
                                                               FOLEY & LARDNER LLP
                                                               111 Huntington Avenue
                                                               Boston, MA 02199
                                                               617-342-4000

February 2, 2007

## Certificate of Service

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

_____/s/Stephen H. Galebach_____                     Date:  February 2, 2007
Stephen H. Galebach