UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VISIBLE SYSTEMS CORPORATION,<br><br>Plaintiff<br><br>v.<br><br>UNISYS CORPORATION,<br><br>Defendant | Civil Action No. 04-CV-11610-RGS |

## DEFENDANT'S PROPOSED JURY INSTRUCTIONS

1.    Evidence

    1.1    You must make your decision based only on the evidence that you saw and
            heard here in court.  The evidence in this case includes only what the
            witnesses said while they were testifying under oath, and the exhibits that I
            allowed into evidence.  Nothing else is evidence.  The lawyers' statements
            and arguments are not evidence. Their questions and objections are not
            evidence.  My legal rulings are not evidence.  Any of my comments and
            questions are not evidence.

    1.2    During the trial I may have not let you hear the answers to some of the
            questions that the lawyers asked, I also may have ruled that you could not
            see some of the exhibits that the lawyers wanted you to see.  And sometimes
            I may have ordered you to disregard things that you saw or heard, or I struck
            things from the record.  You must completely ignore all of these things.  Do
            not even think about them.  Do not speculate about what a witness might
            have said or what an exhibit might have shown.  These things are not
            evidence, and you are bound by your oath not to let them influence your
            decision in any way.

    1.3    Make your decision based only on the evidence, as I have defined it here,
            and nothing else.[1]

    1.4    You should use your common sense in weighing the evidence.  Consider it
            in light of your everyday experience with people and events, and give it
            whatever weight you believe it deserves.  If your experience tells you that

---

[1]    *See* 4 Sand *et al.*, *Modern Federal Jury Instructions (Civil)*, 74-1 (Matthew
Bender & Co. 2007) [hereinafter "Sand"]; 3 O'Malley *et al.*, *Federal Jury Practice and
Instructions* §§ 101.40, 101.44 (5th ed., West Group 2000) [hereinafter "O'Malley"].

certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.[2]

1.5    During the course of the trial you have heard certain statements, arguments and remarks from counsel. These are intended to help you in understanding the evidence and in applying the law to this case. However, in the event that counsel made any statements concerning the evidence that are contrary to your recollection of the evidence, then the jury must take its own recollection as to the evidence.

1.6    From time to time during the course of the trial counsel have made objections. This is a proper function to be performed by counsel on behalf of their respective clients. You should not concern yourself with the fact that objections have been made, nor with the court's rulings on those objections. It is the responsibility of the court to rule on objections and the court has not intended to indicate in any way by its rulings or by what it has said what the verdict should be in this case. The court in this case, as in all cases, is completely neutral and impartial and leaves it to the jury to decide the case based on the facts as you find them to be and the law as the court will give it to you.[3]

2.    Burden and Standard of Proof

2.1    This is a civil case and as such the plaintiff, Visible Systems, has the burden of proving the material allegations of its claim of trademark infringement.[4]

2.2    As I will explain, a claim of trademark infringement such as the one asserted by Visible Systems in this case consists of several separate parts or "elements." To succeed on its claim, Visible Systems is required to prove every disputed element of its claim "by a preponderance of the evidence."

2.3    If you conclude that Visible Systems has failed to establish any one or more essential elements of its claim by a preponderance of the evidence, you must decide in favor of the defendant, Unisys.

2.4    What does a "preponderance of evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more probably true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

2.5    In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses,

---

[2]  *See* 4 Sand 75-1; 3 O'Malley § 104.05.
[3]  *See* 4 Sand 71-4; 3 O'Malley § 101.49.
[4]  *See* 4 Sand 73-1.

regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

2.6     If you find that the credible evidence on a given issue is evenly divided between the parties--that it is equally probable that one side is right as it is that the other side is right--then you must decide that issue against the party having this burden of proof.  That is because the party bearing this burden must prove more than simple equality of evidence--it must prove the element at issue by a preponderance of the evidence.[5]

3.     Witnesses

3.1     In determining what the facts are, what the truth is, you must necessarily assess the credibility of each witness and determine what weight you will give to each witness's testimony.  By credibility we mean the believability or the truthfulness of the witness.  You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief or not worthy of belief.  Consider each witness's intelligence, motive and state of mind, and demeanor and manner while testifying.  Consider the witness's ability to observe or to know the matters about which that witness has testified and whether the witness impresses you as having an accurate recollection of those matters.  Consider whether the witness had any reason for telling the truth or not telling the truth, case, whether the witness had an interest in the outcome of whether the witness had any friendship, relationship, or animosity towards other individuals involved in the case, whether the witness's testimony was consistent or inconsistent with itself or with the testimony of other witnesses.

3.2     Consider the extent to which, if any, the testimony of each witness is either supported or contradicted by other evidence in the case.  After assessing the credibility of each witness you will assign to the testimony of each witness, both under direct and cross-examination, such weight as you deem proper.  You are not required to believe the testimony of any witness simply because that witness was under oath.  You may believe or disbelieve all or part of the testimony of any witness.  It is within your province to determine what testimony is worthy of belief and what testimony may not be worthy of belief.[6]

4.     Experts

4.1     When a case involves a matter requiring special knowledge or skill not ordinarily possessed by the average person, a person qualified as a so-called "expert witness" may be permitted to state his opinion for the information

---

[5]  *See* 4 Sand 73-2; 3 O'Malley § 101.41.
[6]  *See* 4 Sand 76-1; 3 O'Malley § 105.01.

and assistance of the court and jury.  You have heard testimony from such expert witnesses in this case.

4.2    An expert witness's opinion is subject to the same rules as the testimony of any other witness.  You may also reject an expert's opinion if, after careful consideration of all the evidence, you disagree with the opinion.  In other words, you are not required to accept an expert's opinion.  You may accept all, part, or none of the testimony of an expert.[7]

4.3    An expert witness's testimony may be based on facts he observed or learned from others, or facts that counsel asked the expert to assume.  You may reject an expert's opinion, in whole or in part, if you decide that the true facts are different from the facts that formed the basis of the expert's opinion, or if you decide the expert's opinion is based upon misinformation.

4.4    You may also disregard an expert's testimony if you decide the expert lacks the qualifications to render a reliable opinion.

4.5    You may consider whether or not the expert took advantage of the opportunity to make a thorough investigation before rendering an opinion.

5.    Visible Systems' Claims

5.1    In this case, as you have heard, the plaintiff, Visible Systems Corporation, claims that the defendant, Unisys Corporation, infringed the trademark rights of Visible Systems.

5.2    To prove its claim, Visible Systems must establish each of the following elements: (a) that it has a valid and protectible trademark; (b) that it has acquired exclusive rights to use of the mark for relevant purposes; and (c) that the defendant, Unisys, has used a similar mark, and (d) that Unisys's use of its mark is likely to cause confusion, mistake or deception among relevant potential consumers as to whether the companies and/or their goods or services are associated with one another.[8]

6.    Trademarks

6.1    The term "trademark" refers to any word, name, or symbol, or any combination of words, names, or symbols, that are adopted and used by a company to identify its goods or services, and to distinguish them from those manufactured or sold by others.[9]

---

[7]    *See* 4 Sand 76-9.

[8]    *See, e.g., Nat'l Nonwovens, Inc. v. Consumers Prods.Enters, Inc.*, 397 F. Supp. 2d 245, 257 (D. Mass. 2005).

[9]    15 U.S.C. § 1127; ALI, Restatement (Third) of Unfair Competition § 9 (1995) [hereinafter "Restatement"].

6.2    A "service mark" is a trademark that is used in connection with services rather than goods.[10]

6.3    By using a trademark in the marketplace, a person or company may obtain rights under trademark law to exclude others from using the same or similar marks in a way that is likely to cause confusion, mistake or deception among consumers about who really produced the goods or services.[11]

6.4    Trademark law seeks to protect a buyer's interest in obtaining exactly the goods he seeks, from the source he knows.  Trademark law also seeks to protect the reputation or "goodwill" a company may have developed through its use of a mark.[12]

6.5    In this way, trademark law encourages companies to sell goods and services of high quality, while discouraging those who might hope to sell inferior products and to take advantage of a consumer's inability to quickly evaluate the quality of a product or service offered for sale.[13]

6.6    A trademark and the rights that go with it are different from some other similar terms you may be familiar with:

6.6.1    A "patent" is issued by the government to an inventor who develops something novel and useful, and gives an inventor the power to exclude others from making or selling the patented invention for a certain period of time.

6.6.2    A "copyright" is the legal right granted to the author or creator of certain kinds of literary, artistic or other original works to prevent others, for a certain period of time, from copying or otherwise improperly using the work.

6.7    This case does not involve patents or copyrights.  Neither party is claiming that it has invented a particular product or service or that the other party has misappropriated some technology it owns.  The case solely involves trademarks—that is, the right to use particular names or words in connection with a company's business.

7.    Potential Subjects of Trademark Rights

7.1    There is an important limitation on what trademark law protects: it does not protect "descriptive" terms.  The law seeks to prevent the appropriation by trademark owners of useful descriptive words in ways that would "limit the

---

[10]  Restatement § 9.

[11]  *Equine Techs., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 544 (1st Cir. 1995).

[12]  *Hasbro, Inc. v. Clue Computing, Inc.*, 66 F. Supp. 2d 117, 121 (D. Mass. 1999).

[13]  *I.P. Lund Trading ApS and Kroin Inc. v. Kohler Co.*, 163 F.3d 27, 36 (1st Cir. 1998) (quoting *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 164 (1995)).

ability of other sellers to emphasize the characteristics of their own goods, services or business."[14]  Language and available words are not infinite, and the law recognizes the critical importance of preserving a free marketplace of useful words.  Courts have recognized "the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first."[15]

7.2    "There is a well-recognized public interest in prohibiting the commercial monopolization of" ordinary language, and one should be wary "[w]hen a business claims the exclusive right to use words or phrases that are part of our common vocabulary....  Language, even in a commercial context, properly belongs to the public" except to the extent trademark law specifically requires otherwise.[16]

7.3    A trademark is characterized by how it operates in the minds of potential consumers: to identify the goods or services of one person and distinguish them from the services of others.[17]

7.4    A word or symbol is considered a potential subject of trademark rights if (a) it is inherently distinctive, or (b) though not inherently distinctive, has become distinctive in the minds of consumers—that is, has acquired "secondary meaning."[18]

7.5    Deciding whether a mark is distinctive or descriptive involves consideration both of the meaning of the term to prospective purchasers, and of the impact of withdrawing the word from circulation on the vocabulary available to others in the marketplace.[19]

7.6    "A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of" the goods or services to which it refers.[20]  In other words, a descriptive term "directly conveys information about the product or business with which it is used, other than information relating to source or association with a particular entity"—including information about, for example, "the characteristics of the goods, services, or business," "the purpose or function of a product, the effect of its use, or

---

[14]    *See* Restatement § 14 cmt. a at 121.

[15]    *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) (citation omitted).

[16]    *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 215 (Stevens, J., dissenting) (citing, *inter alia, Bada Co. v. Montgomery Ward & Co.*, 426 F.2d 8, 11 (9th Cir. 1970); *Canal Co. v. Clark*, 80 U.S. 311, 323-24 (1871)).

[17]    *See* 15 U.S.C. § 1127.

[18]    *See, e.g.,* Restatement § 13.

[19]    *See* Restatement § 13 cmt. c at 106; § 14 cmt. b at 124.

[20]    *See Equine Techs.,* 68 F.3d at 544.

the class of intended purchasers."[21]   A word will be considered descriptive if a significant number of relevant prospective purchasers are likely to understand its descriptive connotations.  This can be determined by reference to dictionary definitions, but a given word may be more likely to have a particular meaning within, and thus to be regarded as descriptive by, a specific class of prospective purchasers, whether or not the general population would understand the meaning in the same way.[22]

7.7     It is appropriate to consider the extent to which the same or similar terms have been used by others in connection with comparable goods.  If you find that a term has been frequently employed by other sellers, you may conclude that it is descriptive rather than distinctive.[23]

8.     Secondary Meaning

8.1     As I said, there is no trademark protection for a merely descriptive term unless and until it has developed a "secondary meaning" within a substantial portion of the consuming public—that is, unless relevant consumers have come to understand the term not in its descriptive sense, but as the identifier of a particular company.[24]

8.2     To establish secondary meaning, a plaintiff must show that, in the minds of the public, the *primary significance* of a... term is to identify the source of the product rather than the product itself.[25]

8.3     Furthermore, the plaintiff must show that these consumers base purchasing decisions upon seeing the trademark on the product.  The mark must prompt the reaction, "That is the product I want because I know that all products with that label come from a single source and have the same level of quality."[26]

8.4     Proof of secondary meaning entails vigorous evidentiary requirements.[27] Mere evidence of the strength of plaintiff's accomplishments under its name, or evidence that the name is recognized by a limited group of "insiders," is not sufficient.[28]  Nor does evidence suggesting isolated

---

[21]  *See* Restatement § 14 cmt. a at 121.  *Cf. Equine Techs.*, 68 F.3d at 545-46.

[22]  *See* Restatement § 14 cmt. a at 123.  *Cf. Borinquen Biscuit*, 443 F.3d at 118 n.4.

[23]  Restatement § 14 cmt. b at 124-25.

[24]  *See Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 20 (1st Cir. 2004).

[25]  *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982) (emphasis added).  *And see I.P. Lund*, 163 F.3d at 42.

[26]  *Flynn*, 377 F.3d at 20 (quoting *McCarthy on Trademarks* § 15:11).

[27]  *See Flynn*, 377 F.3d at 20.

[28]  *Flynn*, 377 F.3d at 20-21.

incidents of purported association by customer between product and name establish secondary meaning.[29]

8.5     In determining whether the plaintiff has met its burden of proving secondary meaning, you may consider such factors as (1) whether it has a long history of exclusive use of the name at issue, (2) that plaintiff has done substantial and effective advertising and promotion of the name, and (3) that through its efforts plaintiff has achieved success, size, reputation and prominence in a relevant market.[30]

8.6     Proof of secondary meaning establishes a valid trademark only; in an action for infringement, the plaintiff must still prove the other elements of its claim.

9.     Use of Trademark

9.1     To acquire trademark rights in a particular word, a party must make use of the designation, in good faith and in actual trade.[31] One does not obtain any trademark rights merely by adopting a designation as a trademark in an attempt to reserve the mark for the future.[32] Instead, a party must make bona fide, good-faith use of the trademark in the course of its business.

9.2     The requirement that a trademark actually be "used" in ordinary trade helps to promote and regulate competition: by requiring companies to use trademarks, the law fosters commercial activity in untapped markets, while preventing companies from reserving brand names for illegitimate purposes, such as making their rival's marketing more costly.[33] The requirement that the use be "in the ordinary course of business" is "intended to distinguish bona fide commercial use from uses made merely to reserve rights in the designation."[34]

9.3     A designation is "used" as a trademark when the designation is displayed or otherwise made known to prospective purchasers in the ordinary course of business, in a manner that associates the designation with the goods, services, or business of the user.[35]

9.4     A party's use of a trademark must be adequate to "project to prospective purchasers" that the trademark has significance "as an identifying symbol"

---

[29]   *See Globallaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 32 (D.D.C. 2006).

[30]   *See Flynn*, 377 F.3d at 20; *President and Trustees of Colby College*, 508 F.2d at 807-808.

[31]   *See*, *e.g.*, *Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1264-65 (5th Cir. 1975).

[32]   *See id.* at 1267.

[33]   *See Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992).

[34]   Restatement § 18 cmt. (c).

[35]   *See* Restatement § 18.

for the particular goods or services being offered by the user.[36]  The
designation must be "likely to attract the attention of prospective
purchasers"[37] and must "create a separate commercial impression, distinct
from that created by other accompanying trademarks."[38]

9.5    To establish rights through use of a trademark, a party's use of the trademark
must also be "deliberate and continuous, not sporadic, casual or
transitory."[39]

10.    Registration

10.1    There is a federal law that deals with trademarks; its called the Lanham Act.
That law allows any person who claims to be the owner of a trademark to
apply for registration of the trademark with the United States Patent and
Trademark Office.

10.2    The Patent and Trademark Office maintains searchable public records of all
registered trademarks.  Registration gives the public notice that you are
claiming to own a particular word as a trademark for the sale of your specific
goods or services.

10.3    Although federal registration gives the owner of a mark certain additional
rights and benefits, registration does not create a trademark.  Indeed, it is not
necessary that a trademark be registered in order for it to be protected.  It is
whether a designation has been used to identify and distinguish a particular
source of goods or services that determines whether it is a trademark.

10.4    By registering a mark, the government does not give its approval or
imprimatur to the propriety, suitability or tastefulness of the mark, or the
suitability or quality of the goods or services with which it is used.  The
issuance of a registration does not indicate any endorsement of the goods or
services, or imply that the government believes that the mark is a good one,
from an aesthetic or any other viewpoint.

10.5    The Lanham Act requires that a registration certificate, which is drafted by
the owner of the mark, specify the particular goods or services for which the
mark is registered—that is, the goods or services on which the trademark
owner has actually used the mark in its business.[40]

10.6    Registration of a trademark on the USPTO's principal register provides
evidence of the validity of the registered mark.[41]  More specifically, the

---

[36] Restatement § 19 cmt. (d).
[37] *Id.*
[38] *Id.*
[39] *See Bell v. Streetwise Records, Ltd.*, 640 F. Supp. 575, 580 (D. Mass. 1986).
[40] *See* 15 U.S.C. § 1057(a).
[41] *See* 15 U.S.C. § 1115(a).

registration constitutes evidence that the mark is valid, that the registrant owns the mark, and that he has the exclusive right to use it for the goods or services stated in the registration.[42]

10.7   A trademark holder's rights arising the registration of a trademark are limited to "the goods or services specified in the certificate."[43]   Registration does not give the registrant the power simply to pre-empt an entire field of goods or services, regardless of similarity to the registrant's use.[44]

11.   Likelihood of Confusion

11.1   In this case, Visible Systems claims that Unisys's use of the term 3D VISIBLE ENTERPRISE in its business is likely to cause potential customers of Visible Systems to mistakenly believe that Unisys is the source or sponsor of Visible Systems' goods and services.   Visible Systems has the burden of proof on this issue.

11.2   Visible Systems does not contend that potential customers of *Unisys* are likely to make purchasing decisions about its consulting services under the mistaken belief that they are associated with Visible Systems.   Visible Systems' claim focuses only on potential customers of *Visible Systems*.

11.3   To prove its claim, Visible Systems must first show that Unisys advertised and promoted its mark in a way that saturated the market and overwhelmed Visible Systems' reputation,[45] such that customers are likely to be confused into thinking that Visible Systems' goods are those of Unisys.[46]

11.4   "Likely" here means probable—it is irrelevant that confusion is merely possible.   A plaintiff must show a "substantial" likelihood of confusion.[47]

11.5   The word "confusion" in trademark law has a very specific meaning: it refers to the "act of mistaking one thing for another, of failing to note distinctions, and of falsely identifying."[48]

---

[42]   *See* 15 U.S.C. § 1057(b).

[43]   *See* 15 U.S.C. §§ 1057(b), 1115(a); *and see, e.g., Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 48 (2d Cir. 1978).

[44]   *See, e.g., Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1208 (1st Cir. 1983).

[45]   4 J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 23:10 at 42 (4th ed. 2007) [hereinafter *McCarthy on Trademarks*].

[46]   *Id.*

[47]   *See Star Fin. Services, Inc. v. Aastar Mortgage Corp.*, 89 F.3d 5, 10 (1st Cir. 1996); *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663-64 (5th Cir. 2000).

[48]   *See Rockland Mortgage Corp. v. Shareholders Funding, Inc.*, 835 F.Supp. 182, 196 (D. Del. 1993).

11.6    The fact that one mark may make a person think of another mark does not necessarily mean that confusion is likely.  When a person's attention is focused on a similarity or comparison between marks, this may cause the person to notice, or to investigate and discover, the differences between the sources of goods or services to which each of the marks refers, in which case the person is not "confused" in the sense.[49]

11.7    In your likelihood-of-confusion analysis, you may consider, on the one hand, a trademark owner's right to control the consistency and quality of the products that consumers associate with it, and also the right of consumers to buy or not buy free from confusion.[50]  These interests must be balanced against the objectives of free competition.  Thus, a trademark is protected only to the extent necessary to avoid likelihood of confusion.[51]

11.8    Visible Systems' burden is to prove likely confusion of a kind that would threaten the commercial interests of the owner of the mark.[52]  That is, confusion must exist among relevant consumers—prospective purchasers of plaintiff's or defendant's goods or services, persons in a position to influence purchasing decisions, or other persons whose confusion is shown to threaten the plaintiff's commercial interests.[53]

11.9    The focus is on individual consumers, rather than organizations: the fact that two parties both offer goods or services, for example, to corporations or government agencies, or even to particular kinds of such organizations, is not sufficient—"the likelihood of confusion must be shown to exist not in the purchasing *institution*, but in a customer or purchaser."[54]

12.    Sophisticated Purchasers, Deliberative Decisions

12.1    In deciding whether there is a likelihood of confusion, you may consider both the sophistication of the consumers to whom the parties' trademarks are directed and the nature of their purchasing decisions.

---

[49]    *See In re Ferrero*, 470 F.2d 1395, 1397 (C.C.P.A. 1973); *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 195 (1st Cir. 1980).

[50]    *See* Restatement § 9 cmt. c at 77-78; *Volkswagenwerk AG v. Wheeler*, 814 F.2d 812, 820 (1st Cir. 1987).

[51]    *See Nora Beverages v. Perrier Group of America, Inc.*, 269 F.3d 114, 119 (2d Cir. 2001).

[52]    *See* Restatement § 20 cmt. b at 210; *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 13 (1st Cir. 2004).

[53]    *See Astra Pharm.*, 718 F.2d at 1207-1208; *Beacon Mut. Ins. Co.*, 376 F.3d at 16-17.

[54]    *Astra Pharm.*, 718 F.2d at 1206.

12.2    Where the relevant buyer class is composed of professionals or commercial buyers familiar with the field, they may be sophisticated enough not to be confused by trademarks that are closely similar.[55]

12.3    You may consider that there is less likelihood of confusion where goods or services are expensive, and purchases are made after careful consideration, rather than on impulse.[56]  For example, the average purchaser of an automobile will no doubt devote more attention to examining different products and determining their manufacturer or source than will the average purchaser of a ball of twine.[57]

13.    Other Likelihood-of-Confusion Factors

13.1    In determining whether there is a likelihood of confusion, you may consider a number of additional factors.  What relevance and weight you give to each of the factors is up to you.

13.2    First, you may consider whether and to what extent the parties' marks are similar or different.  This involves both a literal comparison of the marks themselves, and also consideration of the contexts in which consumers encounter the marks, based on the evidence you have heard.  You should consider whether the way in which potential customers encounter the parties' marks makes it more or less likely that a consumer would mistakenly perceive from the Unisys mark that there is a relationship between the companies.

13.3    A realistic evaluation of consumer confusion must attempt to recreate the conditions in which buying decisions are made.  You should try to determine not what you would do or think when presented with the marks at issue, but what a reasonable purchaser in actual market conditions would do.[58]

13.4    In considering whether the marks as used by the parties are similar, you should focus on the overall feel and sound of the mark or name, and not on one single similar word.  A mark cannot be "dissected" and compared to another mark out of context.[59]

13.5    You may consider whether the parties use their marks in isolation, or in proximity to other identifying marks.  You may consider that in the case of a

---

[55] 4 *McCarthy on Trademarks* § 23:101.

[56] *See, e.g., Astra Pharm.*, 718 F.2d at 1206-07.

[57] *Fisher Stoves*, 626 F.2d at 194.

[58] *Id.* at 76.

[59] *See Aura Commc'n, Inc. v. Aura Networks, Inc.,* 148 F. Supp. 2d. 91, 94 (D. Mass. 2001); *Packard Press, Inc. v. Hewlett-Packard Co*., 227 F.3d 1352, 1357 (Fed. Cir. 2000).

relatively high-priced, single-purchase article, confusion is unlikely when the name of the sponsoring company is clearly displayed.[60]

13.6    Second, you may consider whether and to what extent there are similarities or differences in the goods or services offered by the parties, the "channels of trade" in which they do business, the places where they advertise, and the potential customers or clients whom they target.  You should consider whether the companies are competitors in any meaningful sense.  And you should consider not simply whether there are similarities or differences between the companies' businesses, but whether those similarities or differences make it more or less likely that a consumer would mistakenly believe that Unisys is the source or sponsor of Visible Systems' products or services.  Keep in mind that if described in general enough terms, many products or services could made to appear to fall in the same class.  The question is whether the products or services are closely competitive enough to create a likelihood of confusion in the mind of the person considering buying the goods or services.[61]

13.7    Third, you may consider whether consumer confusion has actually occurred.  Evidence of actual confusion is often deemed the best evidence of likely future confusion, particularly in circumstances where the marks at issue have co-existed in the marketplace for long enough that one would expect that if confusion were likely, it would have occurred by now.[62]  In this case, Visible Systems has offered no evidence of actual confusion.

13.8    Fourth, you may consider whether Visible Systems has shown that Unisys has acted in "bad faith."  "Bad faith" exists only where a defendant adopts a trademark that it knows it has no legal right to use, and where the defendant intends to "palm off" its goods or services as those of another, or is motivated by an improper desire to damage a competitor or prevent legitimate competition.  "Bad faith" is decided based on a "subjective" test: that is, it is focused on what the defendant personally believed and intended.  Of course, a desire to succeed commercially or make a profit is not evidence of bad faith.[63]

---

[60] *Fisher Stoves*, 626 F.2d at 194-95 (quoting *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304 (2d Cir. 1972)).  *See also Astra Pharm.*, 718 F.2d at 1205; *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d at 487; *Hasbro*, 66 F. Supp. 2d at 122.

[61] *Id.* at 77 (quoting *Mejia And Assoc., Inc. v. Int'l Bus. Mach. Corp.*, 920 F. Supp. 540, 548 (S.D.N.Y. 1996)).

[62] *See Attrezzi*, 436 F.3d at 40.

[63] *See, e.g., Packman v. Chicago Tribune Co.*, 267 F.3d 628 (7th Cir. 2001); *cf. Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550 (Fed. Cir. 1995); *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1288-89 (Fed. Cir. 1984); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998); *Mallinckrodt, Inc.*

13.9    The fact that a party has continued to use a trademark after the commencement of a dispute is no evidence of bad faith.  Continued use of a name adopted with reasonable justification, even in the face of litigation and a likely challenge, does not constitute bad faith.[64]

13.10   Fifth, you may consider the "strength" of Visible Systems' mark.  This means considering whether the word VISIBLE itself is likely or not to be perceived by consumers as identifying a particular company as the source of the goods or services on which the word is used.

Dated: July 13, 2007

UNISYS CORPORATION,
By Its Attorneys,

 /s/ William L. Boesch
Anthony M. Doniger, BBO No. 129420
William L. Boesch, BBO No. 558742
SUGARMAN, ROGERS, BARSHAK
 & COHEN, P.C.
101 Merrimac Street
Boston, MA 02114
617-227-3030

CERTIFICATE OF SERVICE

I hereby certify that this document is being filed through the ECF system, and that I am therefore relying on the system to complete service by sending copies of the filing electronically to the necessary counsel, who are registered participants.

__/s/ William L. Boesch

393504.5

---

v. Medipart, Inc., 976 F.2d 700, 710 (Fed. Cir. 1992).
    [64] See Electrolux, 999 F.2d at 3, 6; Carl Zeiss Stiftung v. Veb Carl Zeiss Jena, 433 F.2d 686, 707 (2d Cir. 1970); Aureflam Corp. v. Pho Hoa Phat I, Inc., No. C 05 00746 RS, 2005 WL 2253813, at *3 (N.D. Cal. Sept. 16, 2005); 24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC, 447 F. Supp. 2d 266, 282-84 (S.D.N.Y. 2006).