UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**VISIBLE SYSTEMS CORPORATION,**
**a Massachusetts Corporation,**

|  |  |  |
|---|---|---|
| | **Plaintiff,** | |
| **v.** | | **C.A. No. 04-CV-11610-RGS** |
| **UNISYS CORPORATION,** | | |
| **a Delaware Corporation,** | | |
| | **Defendant.** | |

# PLAINTIFF VISIBLE SYSTEMS CORPORATION'S
# <u>TRIAL MEMORANDUM</u>

Pursuant to this Court's Pre-Trial Order dated March 30, 2007, Plaintiff Visible

Systems Corporation submits this Trial Memorandum.

## TABLE OF CONTENTS

**INTRODUCTION**                                                    **Page**

    **Parties' Burdens of Proof**                                    **5**
    **Source of Trademark Rights**                                   **5**
    **Owner's Right of Exclusive Use**                               **5**
    **Trademark Definitions**                                        **6**
    **Lanham Act Recognizes Infringement of Registered and**
        **Unregistered Marks**                                     **6**
    **Purposes of Trademark Law**                                    **7**

**TRADEMARK INFRINGEMENT**                                         **8**

    **Trademark Infringement: Elements**                             **8**

        **Trademark's Entitlement to Protection – Three Prerequisites**
        **Distinctiveness**                                          **9**
          *Distinctiveness Spectrum*                                **10**
          *Distinctiveness Spectrum in Detail*
          *Effect of Difference Senses and Markets*
          *Relevant Market*
          *Distinguishing Suggestive and Descriptive Marks: Imagination Test* **15**
            *Equally Effective Word Test*
            *Different Senses*
            *Suggestiveness of Metaphors*
            *Weight Given PTO Determination*
            *Effect of Third-Party Use*
          *Effect of Secondary Meaning*                             **21**
            *Definition of Secondary Meaning*
            *Proof of Secondary Meaning*
          *Distinctiveness of Composite Mark*                       **24**
          *Effect of Registration Status in Determining Distinctiveness*
            *Determination of Distinctiveness of Unregistered Marks*
            *Determination of Distinctiveness of Registered Mark*
              Registration Provides Constructive Notice
              Defendant's Burden of Proof re: Registered Mark
              Effect of Registration without Secondary Meaning
            *Effect of Incontestability on Determination of Distinctiveness* **28**
              Effect of Disclaimer and Incontestability on Distinctiveness of
              Composite Mark
              Incontestable Mark – Grounds for Cancellation

**Infringement – Remaining Elements: Use of Similar Mark and Likelihood of Confusion** **Page**

**Relevant Confusion – Persons Confused and Actionable Commercial Injury**
>  *Circumstanital Proof of Harm to Goodwill*                                    32
>  *Types of Relevant Confusion*
>  *Harm From Reverse Confusion*
**Likelihood of Confusion – 8-Factor Test**                                       34
>  *Similarity of the Marks Factor*                                               35
>>  *Effect of Direct Competition*
>>  *Copying Need Not Be Literal*
>>  *Total Effects Test*
>>  *Dominant Word in Composite Mark*
>>>  Dominant Word in Larger Letters
>>>  Identical, Suggestive Dominant Word & Same General Class of Goods or Services
>>>  Combination of Dominant Word and Descriptive Word
>>  *Similar Marks on Websites*
>>  *Families of Marks*
>>  *Proximity of Putative Infringer's Name or House Mark*
>>  *Effect of Policing Mark*
>  *Similarity of Goods & Services Factor*                                        41
>>  *Non-Competing But Related Goods and Services Can Be Similar For Purposes of Establishing a Likelihood of Confusion*
>>  *Trademark Law Protects a Senior User's Against Improper Restraints On the Possibe Expansion of Its Market*
>>  *Similarity of Related/Non-Competing Goods and Services Not Dependent on Identity, Design, or Price*
>>  *The More Similar the Marks, The Less Similar Need Be the Goods & Services*
>  *Channels of Trade, Advertising and Class of Prospective Purchasers Factors*   45
>>  *Analysis Influenced by Same Purchaser Class*
>>  *Success Immaterial*
>>  *Channels of Trade Factor: Consideration of Internet Strategy*
>>  *Advertising Factor: Comparison of Target Audience and Shared Goals*
>>  *Class of Prospective Purchaser Factor: Identity Not Required*
>>>  Sophisticated Customers
>  *Actual Confusion Factor*                                                      48
>>  *Persuasive But Not Essential*
>>  *Effect of Lack of Evidence of Actual Confusion*
>>  *Relevant Time Period for Actual Confusion*
>>  *Sophisticated Customers and Lack of Actual Confusion*
>>  *Lack of Actual Confusion and Substantial Disparities*
>  *Intent Factor*                                                               50
>>  *Presumption re: Intent of Newcomer Using Similar Mark*

*Affirmative Duty to Distinguish Similar Marks*                    **Page**
*Effect of Prior Relationship*
*Reliance on Counsel's Advice*
*Lack of Trademark Search*
*Knowledge of Plaintiff's Mark in Sufficient Time to Avoid Infringing*
*Knowledge of Plaintiff's Mark and Decision to Gamble*
*No "Natural Extension"*
*Materiality of In-House Officer Advising Against Infringing Use*
*Relevance of Retaliatory Discharge on Issue of Intent*
*Effect of Discovery Abuse: Big O, Tamko, Electrolux, Third Circuit Case*
*starting with "S" and referring to "oppressive conduct"*

**Strength of Mark Factor**                                         **54**
   *Strength of Mark Examples*
   *Use by Third-Parties, Effect of Agreement to Discontinue Infringing Use*
   *Strength of Junior User's Mark a Factor in Reverse Confusion Situation*
   *Spectrum Classification Irrelevant*

**AFFIRMATIVE DEFENSES**                                            **58**

**DAMAGES**                                                         **58**

  **When Injunctive Relief is Inadequate**
  **Actual Damages and Accounting of Profits**
    **Requirement of "Actual Harm" as Prerequisite of Damages Award**
    **Accounting of Profits**
      **Three Rationales for Accounting of Defendant's Profits**
      **Available Even If Most Products Not in Competition**
      **Where Direct Competition Found, No Fraud, Bad Faith or Palming Off Required**
      **Willfulness as Prerequisit for Accounting**
      **Must Be Substantial Basis for Denial of Accounting**
      **Accounting Award Includes All Profits Derived From Sales Under Infringing Mark**
  **Treble Damages**                                          **61**
  **Attorneys' Fees**
    **Award of Reasonable Attorneys' Fees Available in Exceptional Cases**
    **Factors Justifying A Finding of an Exceptional Case**
    **Case-Specific, Totality of Circumstances Determination**
    **Willfulness Short of Bad Faith Suffices for Award of Attorneys' Fees**

**UNFAIR COMPETITION CLAIMS**                                       **63**

# INTRODUCTION

## Parties' Burdens of Proof

The plaintiff in a trademark action has the burden of proving by a preponderance of the evidence that it is the owner of a valid trademark and that defendant infringed that trademark. Defendant has the burden of proving each affirmative defense it asserts by a preponderance of the evidence. [1]

## Source of Trademark Rights

Trademark rights have their source in the common law; they do not generally arise from registration, but from prior use of the mark. [2]

## Owner's Right of Exclusive Use

A person acquires the right to exclude others from using a trademark by being the first to use the trademark in the marketplace. When a person has established a trademark right with respect to a product, the right to use that trademark becomes an exclusive right, and the trademark becomes the property of the that person, the trademark owner. No other person may then use the same or similar words, symbols, designs, or devices in any manner likely to cause consumer confusion regarding the source or origin of those goods.

---

[1] From the instruction in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005; see also 15 U.S.C.A. §§ 1114 and 1125; 3A-59 *Federal Jury Practice and Instructions*, § 159.60 (West Group 5th ed.); 3A-59 *Federal Jury Practice and Instructions*, § 159.49 (West Group 5th ed.).

[2] *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 814, 816 (1st Cir. 1987); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 (1st Cir.1980); *Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp. 48, 52 (D.Mass. 1993); see 15 U.S.C.A. § 1051(a)(1) (the owner of a trademark used in commerce may request registration of its trademark); see also *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 412-13, 36 S.Ct. 357, 360, 60 L.Ed. 713 (1916) (exclusive right to trademark grows out of use, not mere adoption); accord *Raxton Corp. v. Anania Associates, Inc.*, 635 F.2d 924, 926 (1st Cir. 1980).

The trademark owner may enforce its right to exclude others in an action for trademark infringement.[3]

## Trademark Definitions

The term "trademark" includes any word, name, symbol or device or any combination thereof, adopted and used by a manufacturer or merchant to identify and distinguish the source, sponsorship, or affiliation of its goods, including a unique product, from those manufactured or sold by others. A trademark identifies the source of goods, even if that source is unknown and to protect its goodwill against the sale of another's product as its own.[4]

A "service mark" is any word, name, symbol, or device, or combination used to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown.[5]

---

[3] 15 U.S.C. §§ 1114(1), 1115(a), 1065; *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219, 1242-1250 (D. Colo. 1976), *modified on other grounds*, 561 F.2d 1365 (10th Cir. 1977), *cert. dismissed*, 434 U.S. 1052 (1978); 4-86A *Modern Federal Jury Instructions-Civil*, P 86A-06 (Matthew Bender 3d ed.); 3A-59 *Federal Jury Practice and Instructions*, § 159-02 (West Group 5th ed.)

[4] 15 U.S.C. § 1129; *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219, 1242-1250 (D. Colo. 1976), modified on other grounds, 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978); see the instruction in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005; see also *Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036, 1051 (9th Cir.1999).

[5] See 15 U.S.C.A. §§ 1053, 1127; *American Int'l Group v. American Int'l Bank*, 926 F.2d 829, 830 n. 1 (9th Cir.1991) ("Generally speaking, a service mark is a distinctive mark used in connection with the sale or advertising of services .... "); 3A-59 *Federal Jury Practice and Instructions*, § 159-42 (West Group 5th ed.)

Under the Lanham Act, the term "mark" is often used to define the various types of mark protected by the trademark law, such as trade and service marks.[6]

## Lanham Act Recognizes Infringement of Registered and Unregistered Marks[7]

The Lanham Act recognizes a cause of action for infringement of a federally registered mark where use of the mark is likely to cause confusion, mistake, or deception.[8] The Lanham Act imposes civil liability for infringement of an unregistered mark where the defendant's use has an effect on commerce.[9]

## Purposes of Trademark Law

The purposes of trademark law are to prevent confusion among consumers about the source of products, enabling them to obtain the goods they seek, and to preserve the trademark owner's interest in fair competiton and its goodwill investment in its mark and

---

[6] 15 U.S.C.A. § 1127; *New Kids on the Block v. New America Pub., Inc.*, 971 F.2d 302, 306 (9th Cir.1992); 3A-59 *Federal Jury Practice and Instructions*, § 159-40 (West Group 5th ed.)

[7] 3A-59 *Federal Jury Practice and Instructions*, § 159.01 (West Group 5th ed.); see also 15 U.S.C.A. § 1115(a) (any registration on the Principal Register and owned by a party to the action shall be prima facie evidence of registrant's exclusive right to use the mark in commerce on or in connection with the good or services specified in the registration); 15 U.S.C.A. § 1065(1) (any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act).

[8] 15 U.S.C.A. § 1114(1).

[9] 15 U.S.C.A. § 1125.

business. Both purposes are accomplished by preventing use of the same or similar mark

creating confusion with regard to the source of the products. [10]

## TRADEMARK INFRINGEMENT

## Trademark Infringement: Elements

To prevail on its trademark infringement claims, plaintiff has the burden of proving

the following three elements by a preponderance of evidence:

    a.  That plaintiff's use of the mark is entitled to protection under trademark law;

    b.  That defendant has used the same mark or a similar mark; and

    c.  That defendant's use is likely to cause confusion among consumers, thereby

       harming the plaintiff. [11]

### Trademark's Entitlement to Protection – Three Prerequisites

To be entitled to any form of trademark protection, the plaintiff must show that its

mark or marks:

    (a) are used in commerce,

    (b) are non-functional, and

---

[10] *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir.1992), cert. denied, 509 U.S. 923, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993); *Star Financial Services, Inc. v. Aastar Mortgage Corp.,*, 89 F.3d 5, 9 (1st Cir. 1996); *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 36 (1st Cir. 1998); *Keds Corp. v. Renee Intern. Trading Corp.*, 888 F.2d 215, 218 (1st Cir. 1989); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 636 (1st Cir. 1992); *Perfumania, Inc. v. Perfulandia, Inc.*, 279 F.Supp.2d 86, 95-96 (D.P.R. 2003); see *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163-164, 115 S.Ct. 1300, (1995) (trademark law promotes fair competition in the market place by balancing the trademark owner's good will symbolized in its mark and the consumer's ability to distinguish products of different businesses.)

[11] From the instruction in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005; *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir.1992), cert. denied. 509 U.S. 923, 113 S.Ct. 3039. 125 L.Ed.2d 725 (1993); *Star Financial Services, Inc. v. Aastar Mortgage Corp.,*, 89 F.3d 5, 9 (1st Cir. 1996); *Hasbro, Inc. v. Clue Computing, Inc.*, 66 F.Supp.2d 117, 121 (D. Mass. 1999), aff'd, 232 F.3d 1(1st Cir.2000); *Perfumania, Inc. v. Perfulandia, Inc.*, 279 F.Supp.2d 86, 97 (D.P.R. 2003).

(c) are distinctive. [12]

"Use in Commerce" means that the owner has used the mark in interstate commerce. [13]

A product feature is functional and cannot serve as a trademark if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage. **[14]**

**<u>Distinctiveness</u>**

To be eligible for trademark protection, a mark must qualify as distinctive. The issue of distinctiveness ordinarily presents a question of fact for the jury to decide. A mark is considered distinctive if it either is inherently distinctive or has acquired distinctiveness by acquiring secondary meaning. [15]

***Distinctiveness Spectrum***

---

[12] *I.P. Lund Trading v. Kohler Co.*, 163 F.3d 27, 36 (1st Cir. 1998); *Hasbro, Inc. v. Clue Computing, Inc.*, 66 F.Supp.2d 117, 121 n. 4 (D. Mass. 1999).

[13] *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir.1977); *Tiffany & Co. v. Boston Club, Inc.*, 231 F.Supp. 836, 841 (D.Mass. 1964) (describing the minimal interstate connections necessary to establish jurisdiction under the Lanham Act); *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1006 (D.Mass. 1988); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 43 (D. Mass. 1995); *Boustany v. Boston Dental Group,* 42 F.Supp.2d 100, 105 (D.Mass. 1999).

[14] *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850, n. 10, 102 S.Ct. 2182, 2186, n. 10, 72 L.Ed.2d 606 (1982); *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995); *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 32-33 (1st Cir. 1998) (the burden of showing non-functionality of a product for which trade dress protection is sought rests on the party seeking that protection.); ♦-18 *Modern Federal Jury Instructions-Civil*, P 18.10 (Matthew Bender 3d ed.).

[15] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116-117, 118 (1st Cir. 2006); *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 544 (1st Cir. 1995).

When considering whether a mark is distinctive, courts often classify marks along a continuum or "spectrum" of increasing distinctiveness: generic marks, descriptive marks, suggestive marks, arbitrary marks, and fanciful marks.[16]

A generic mark is a term that has passed into common usage to identify a product, such as aspirin. A generic mark can never be protected. A descriptive mark can be protected, but only if it has acquired "secondary meaning." Suggestive, arbitrary and fanciful marks can be protected without proof of secondary meaning. They are considered "inherently distinctive" and are automatically entitled to trademark protection.[17]

Whether a term is generic, descriptive, or inherently distinctive is a question of fact for the jury to decide.[18] Similarly, whether a mark has acquired secondary meaning is also a question of fact for the jury, to decide.[19]

### Distinctiveness Spectrum in Detail[20]

---

[16] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 39 (1st Cir. 1998); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006).

[17] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006); *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,* 9 F.3d 175, 180 (1st Cir. 1993).

[18] *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,* 9 F.3d 175, 180 (1st Cir. 1993); see *Wiley v. American Greetings Corp.*, 762 F.2d 139, 141 (1st Cir.1985).

[19] *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,* 9 F.3d 175, 180 (1st Cir. 1993); *Volkswagenwerk AG v. Wheeler*, 814 F.2d 812, 816 (1st Cir.1987).

[20] The outline of this explanation is taken from *Boustany v. Boston Dental Group,* 42 F.Supp.2d 100, 105 (D.Mass. 1999).

A **generic mark** is the common name for a product, such as aspirin[21] or butter.[22] It refers to the genus of which the particular product is a species. There can be no trademark rights in a generic mark; it can never receive trademark protection.[23] A generic mark remains in the public domain as part of our language.[24]

A **descriptive mark** is one that identifies or describes a characteristic or quality of a product, such as its intended use, ingredients, or desirable features. For example, "Tender Vittles" is a descriptive term for cat food.[25] A descriptive mark must so clearly denote the goods that the consumer does not have to exercise any powers of perception or imagination.[26] A mark which is merely descriptive of a product is not inherently distinctive; when used to describe a product, such a descriptive mark is not entitled to protection. However, a descriptive mark can acquire distinctiveness, entitling it to trademark protection, by acquiring "secondary meaning."[27]

---

[21] *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,* 9 F.3d 175, 180 (1st Cir. 1993).

[22] 4-86A *Modern Federal Jury Instructions-Civil,* P 86A-11 (Matthew Bender 3d ed.); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219, 1242-1250 (D. Colo. 1976), modified on other grounds, 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773, 112 S. Ct. 2753, 2760, 120 L. Ed. 2d 615 (1992).

[23] *Two Pesos*, *Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753, 2760, 120 L. Ed. 2d 615 (1992); *Park `N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

[24] 4-86A *Modern Federal Jury Instructions-Civil,* P 86A-11 (Matthew Bender 3d ed.)

[25] 4-86A *Modern Federal Jury Instructions-Civil,* P 86A-11 (Matthew Bender 3d ed.); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219, 1242-1250 (D. Colo. 1976), modified on other grounds, 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773, 112 S. Ct. 2753, 2760, 120 L. Ed. 2d 615 (1992).

[26] *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1007 (D.Mass. 1988).

A **suggestive mark** is a mark which connotes rather than describes a particular product or service; it requires the consumer's imagination to reach a conclusion as to the nature of the product or service.[28] For example, "Chicken of the Sea" is a suggestive mark for tuna.[29] "Stronghold" is a suggestive mark for threaded nails, suggesting their superior holding power.[30] If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but suggests them.[31]

An **arbitrary mark** is a mark made up of words, symbols, pictures, etc., that are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services. For example, "Stork Club" is an arbitrary mark for a night club.[32]

---

[27] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S. Ct. 2753, 2760, 120 L. Ed. 2d 615 (1992).

[28] *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1007 (D.Mass. 1988); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 374 n. 8 (1st Cir.1980).

[29] See 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th Ed.1998) § 11:72, at 11-121.

[30] 4-86A *Modern Federal Jury Instructions-Civil,* P 86A-11 (Matthew Bender 3d ed.), citing *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219, 1242-1250 (D. Colo. 1976), modified on other grounds, 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978).

[31] ♦-18 *Modern Federal Jury Instructions-Civil*, P 18.08 (Matthew Bender 3d ed.)

[32] See 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th Ed.1998) §§ 11:11, at 11-15; 11:13, at 11-18.

A **fanciful mark** is made up of "coined" words that have been invented or selected for the sole purpose of functioning as a trademark. For example, CLOROX for bleach.[33]

### Effect of Difference Senses and Markets

In determining the distinctiveness of a trademark, the sense in which a trademark term is used and the market in which it is used should be considered. A term that is in one distinctiveness classification when used for a particular product or service may be in quite a different classification when used for a different product or service. For example, the term "Ivory" would be generic when used to describe a product made from the tusks of elephants but arbitrary when used as a mark for soap.[34] In addition, a term may be generic in one market and descriptive or suggestive or fanciful in another.[35] That a word has a common sense does not prevent it from being suggestive or imaginative when used in an uncommon way.[36]

---

[33] See 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th Ed.1998) §§ 11:5, at 11-11; 11:8, at 11-13.

[34] *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 n. 6 (2d Cir. 1976).

[35] *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir. 1976).

[36] See *Skil Corporation v. Barnet*, 337 Mass. 485, 491, 150 N.E.2d 551 (Mass. 1958) ("Skil," an ordinary English word found imaginative as applied to an inanimate object – a saw - which could not literally possess skill; so used the word was not merely descriptive.); see also *Miller Brewing Company v. G. Heileman Brewing Company, Inc.*, 561 F.2d 75, 80 n. 7 (7th Cir. 1977) ("[A] word that is generic when used in its ordinary sense can be classified at the other end of the spectrum, arbitrary or fanciful, if used in an arbitrary or fanciful sense."); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir. 1976).

For example, the word "apple" may be used as a mark in several different ways.[37] When used to identify the fleshy, red fruit from any apple tree, it is used in a generic way and is not be entitled to any trademark protection.

When used in the trademark "CranApple" to designate a cranberry-apple juice, the word "apple" is descriptive; it directly describes ingredients of the juice.

When "apple" is used as part of the mark "Apple-A-Day" Vitamins, it is being used as a suggestive trademark. A suggestive use of a word is one which leads consumers to associate the qualities the word suggests with the product or service to which the word is attached. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" Vitamins.

Finally, when the word "apple" is used by "Apple" Computers to identify the personal computers that the company sells, its use of the word "apple" is arbitrary or fanciful because "apple" does not describe and is not related to what the computer was, its components, ingredients, quality, or characteristics. Used in this sense, "Apple" arbitrarily designates for consumers that the computer comes from a particular manufacturer or source.

However, neither the computer maker who uses the word "apple" to identify its personal computer nor the vitamin maker who uses that word on vitamins has any claim for trademark infringement against the grocer who uses the same word to indicate the fruit sold in a store. As used by the grocer, the word is generic and does not indicate any

---

[37] The following discussion is taken from ♦-18 *Modern Federal Jury Instructions-Civil*, P 18.08 (Matthew Bender 3d ed.), citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10-11 (2d Cir.1976) (setting forth spectrum of marks from arbitrary to generic); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

particular source of the product. As applied to the fruit, "apple" is simply the common name for what is being sold.

### Relevant Market

In determining whether a mark is descriptive,[38] as opposed to inherently distinctive, or whether it has acquired distinctiveness through secondary meaning,[39] or whether its inherent or acquired distinctiveness has been affected by third-party use,[40] it is appropriate to consider how the mark is perceived or used by prospective purchasers or parties in the same field as the mark's owner, not by the public in general.

### Distinguishing Suggestive and Descriptive Marks: Imagination Test

It can be difficult to distinguish between suggestive and descriptive marks.[41] A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods or services to which it applies; a term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods or services.[42]

---

[38] See *Educational Development Corp. v. Economy Corp.*, 562 F.2d 26, 29 (10th Cir. 1977).

[39] *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 42 (1st Cir. 1998) ("Secondary meaning may be determined with reference to a particular trade or "branch of the purchasing public."); *Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 19 (1st Cir. 2004); *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.*, 9 F.3d 175, 181 (1st Cir. 1993); *President and Trustees of Colby College v. Colby College-N.H*, 508 F.2d 804, 808 (1st Cir. 1975); *Brandon v. Regents of the University of California*, 441 F.Supp. 1086, 1091 (D.Mass. 1997).

[40] Pizzeria Uno Corporation v. Temple,  747 F.2d 1522, 1531 (4th Cir. 1984); Calamari Fisheries, Inc. v. The Village Catch, Inc., 698 F.Supp. 994, 1008 (D.Mass. 1988).

[41] See *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1008 (D.Mass. 1988); *Pizzeria Uno Corporation v. Temple*, 747 F.2d 1522, 1528 (4th Cir. 1984).

[42] *Blinded Veterans Ass'n v. Blinded American Veterans Foundation*, 872 F.2d 1035, 1040 (D.C.Cir. 1989); *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 544 (1st Cir. 1995).

A descriptive mark must describe the goods or services to which it applies in a straightforward way that does not require the exercise of the imagination.[43] Descriptive terms do not require any intervening imagination to link them to the subject goods or services; they "immediately conjure up the thought of the subject goods."[44] The following examples illustrate that the requirement of excluding any intervening imagination is quite rigorous.

Where a trademark owner used the word "Attrezzi," an Italian word meaning "tools," as a trademark for its business of selling small appliances and kitchen tools, the court found that its trademark was suggestive, explaining that while "kitchen tools" may have been descriptive of plaintiff's business, "tools" by itself was suggestive because it "suggest[ed] a similarity, not an identify, between ordinary workman's tools and electrical appliances or the like used by a chef."[45]

In another case, a trademark owner used the trademark "Equine Technologies" to describe its business of manufacturing hoof pads for horses. The court determined that the trademark was suggestive rather than descriptive because while the mark might reasonably be thought to suggest that the product to which it applies has to do with horses, it did not convey information about plaintiff's product or its intended consumers. Rather, it required imagination to connect the term "Equine Technologies" to hoof care products, in general, and to the trademark owner's product in particular.[46]

---

[43] From the instruction in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

[44] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 545 (1st Cir. 1995).

[45] *Attrezzi, LLC v. Maytag Corp*., 436 F.3d 32, 38 (1st Cir., 2006).

[46] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 545 (1st Cir. 1995).

Finally, in a case in which a trademark owner used the term "360°" as a trademark for athletic shoes it manufactured with circular cleats attached to the soles, the court found that the trademark was suggestive rather than descriptive. The court explained that while the term "360°" was perhaps descriptive of the cleat on the sole of the shoe, it was suggestive of the shoe as a whole because it did not directly convey to the buyer the ingredients, qualities, or characteristics of the product. To understand the connection between the trademark and the product, one had to remember that 360 is the number of degrees in a circle, somehow connect that circle to movement, and imagine that the mark relates to pivotability of the shoe.[47]

### Equally Effective Word Test

In addition to the imagination test, another way to determine whether a trademark owner's mark is suggestive rather than descriptive is to look at whether a competitor needs to use the term to describe its goods or services or whether there are other, equally effective words are available.[48]  The existence of alternative terms to describe the product or service indicates that competitors will not lose the ability to identify their goods or services if trademark protection is granted and that the owner's mark is suggestive rather than descriptive.[49]

### Different Senses

---

[47] *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 51 (D.Mass. 1990).

[48] *Educational Development Corp. v. Economy Co.*, 562 F.2d 26, 29 (10th Cir.1977); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 51 (D.Mass. 1990).

[49] See *American Historic Racing Motorcycle Association, Ltd. v. Team Obsolete Promotions*, 33 F.Supp.2d 1000, 1005 (M.D.Fla. 1998).

That a data or business model may be capable of being seen, i.e., that it may be visible, on a computer screen as a result of using plaintiff Visible Systems Corporation's software products or services does not necessarily mean that the term "VISIBLE," when used to denote plaintiff's products and services, is descriptive. A term may be descriptive in one sense (e.g., appearance) and suggestive in another (e.g., function). [50]

*Suggestiveness of Metaphors*

A metaphor is a figure of speech in which a term is transferred from the object it ordinarily designates to an object it may designate only by implicit comparison or analogy, as in the phrase "evening of life."[51] Metaphors are by their nature suggestive.[52]

For example, where the trademark owner used the word "Popcorn" as a mark for silver anodes it manufactured for use in the electroplating industry. The court found that the mark was suggestive, explaining that

> The anodes are not themselves popcorn. They are not made of popcorn, and they are not used in the manufacture of popcorn. In the context of silver anodes, then, the name 'Popcorn' is neither a generic term nor an actual description of any 'function, use, characteristic, size, or intended purpose of the product.' [citation omitted] RFE's 'Popcorn' mark is instead a metaphor; it cleverly conjures or suggests an image that its product vaguely resembles. The name therefore 'reinforces the association between the product and its source--a sure sign of a mark entitled to protection.' [citation omitted][53]

*Weight Given to PTO Determination*

---

[50] *Trak Incorporated v. Benner Ski KG*, 475 F.2d 1076, 1080 (D.Mass. 1979) (while mark had descriptive senses, as applied to the product's function, which was the product's key feature, the mark was suggestive).

[51] *The American Heritage Dictionary of the English Language*, William Morris, ed. (Houghton Mifflin Co., Boston, 1976), p. 825.

[52] *RFE Industries, Incorporated v. SPM Corporation*, 105 F.3d 923, 926 (4th Cir. 1997).

[53] *RFE Industries, Incorporated v. SPM Corporation*, 105 F.3d 923, 926 (4th Cir. 1997).

In determining whether a mark is descriptive or inherently distinctive, it is appropriate to consider what the United States Patent and Trademark Office has determined with respect to the mark.[54]

*Effect of Third-Party Use*

In determining whether a particular word has a descriptive or suggestive significance as applied to a field of merchandise or service, it is proper to take notice of the extent to which it has been used in trademarks by others in the same field.[55]

The proliferation of identical or similar marks in the same industry may indicate that Plaintiff's marks are descriptive, rather than suggestive.[56]

However, because the United States Patent and Trademark Office requires an applicant to demonstrate that its mark is distinctive before it will approve a registration, evidence of the successful registration of other marks which include the putatively descriptive term tends to undercut the contention that the term is merely descriptive of the owner's product.[57]

Where the goods and services which are the subject of third-party registrations are not closely related to the plaintiff trademark owner's goods and services, evidence of the third-party registrations have no probative value in determining whether the owner's mark is distinctive. That is, evidence of third-parties' use of similar marks to denote

---

[54] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 119-20 (1st Cir. 2006); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 934 (4th Cir. 1995).

[55] *Calamari Fisheries, Inc. v. The Village Catch, Inc*., 698 F.Supp. 994, 1008 (D.Mass. 1988); *Pizzeria Uno Corporation v. Temple*, 747 F.2d 1522, 1531 (4th Cir. 1984).

[56] *Labrador Software, Inc. v. Lycos, Inc.*, 32 F.Supp.2d 31 (D.Mass. 1999); *Calamari Fisheries, Inc. v. The Village Catch, Inc*., 698 F.Supp. 994, 1008 (D.Mass. 1988).

[57] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 119 (1st Cir. 2006).

different products and services in different markets says nothing about whether the marks in this case are descriptive or suggestive with respect to the products and services in this case.[58]

Third party registrations can never excuse a junior user's adoption of a senior user's distinctive mark in its entirety as a part of the junior user's mark.[59]

Isolated instances of descriptive use of a term by third-parties are not sufficient to turn an otherwise suggestive term into a descriptive one.[60]

The fact that the plaintiff trademark owner in this case did not previously bring any infringement action against third-parties using marks similar to the marks it is attempting to protect in this case does not necessarily mean that the plaintiff's marks are not distinctive. A trademark owner may make reasonable judgments about whether there exists a likelihood of confusion between its products and a third party's without

---

[58] See *Conde Nast Publications, Inc. v. American Greetings Corp.*, 329 F.2d 1012, 1014-1015 (C.C.P.A. 1964) (48 third party registrations not persuasive of defendant's claim that plaintiff's mark was unworthy of trademark protection where the goods subject to the registrations were not "closely related" to the goods under consideration.); see also *Morningside Group Limited v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 139 (2nd Cir. 1999) (use of a like mark in a different market for different products or services need not undermine the mark's strength in its own market.); *Scarves by Vera, Inc. v. Todo Imps. Ltd. (Inc.)*, 544 F.2d 1167, 1173-74 (2d Cir. 1976); see *Playboy Enterprises, Inc. v. Netscape Communications Corporation*, 354 F.3d 1020, 1027, n. 33 (9th Cir. 2004); *Nat'l Lead Co. v. Wolfe*, 223 F.2d 195, 204 (9th Cir. 1955) (considering, and rejecting, evidence of third-party use because use within the relevant market, for paint, was *de minimis*); see also *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 877-78 (Fed. Cir. 1992).

[59] *Clinton Detergent Company v. Proctor & Gamble Co.*, 302 F.2d 745 (C.C.P.A. 1962); *Conde Nast Publications, Inc. v. American Greetings Corp.*, 329 F.2d 1012, 1014-1015 (C.C.P.A. 1964).

[60] See *Caesar's World, Inc. v. Milanian*, 247 F.Supp.2d 1171, 1194-1195 (D.Nev. 2003) ("[O]ccasional generic usage does not destroy a trademark. Indeed, often the use of a trademark as a generic noun illustrates the power of a trademark."); 2 McCarthy on Trademarks, sec. 12.8 at 12-20.)

jeopardizing the distinctiveness of its mark. It need not institute an infringement action at the slightest provocation by remote, out-of-market users.[61]

### Effect of Secondary Meaning

Even if the plaintiff trademark owner cannot prove that its mark or marks are suggestive rather than descriptive, one or more of its marks may be found entitled to trademark protection if the plaintiff owner proves that the mark or marks has acquired "secondary meaning."[62]

### Definition of Secondary Meaning

Secondary meaning refers to a word's or a sign's ability to tell the public that it serves a special trademark function, namely, that it denotes a product or service that comes from a particular source.[63]

To show secondary meaning, the trademark holder must establish that, in the minds of significant quantity of the consuming public, the primary significance of the mark is to identify a single source of the product rather than the product itself.[64]

This does not mean that the members of the consuming public must know the exact identity of that single source; they do not need to know the name of the corporation

---

[61] See *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 54 (D.Mass. 1990).

[62] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006); see the instruction in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

[63] *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,* 9 F.3d 175, 181 (1st Cir. 1993); *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 606 (1st Cir.1992), cert. denied, 509 U.S. 923, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993)

[64] *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006); *Flynn v. AK Peters, Ltd.,* 377 F.3d 13, 19 (1st Cir. 2004); *President and Trustees of Colby College v. Colby College-N.H*, 508 F.2d 804, 807 (1st Cir. 1975); *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

or other entity producing or selling the product. All that is necessary to establish

secondary meaning is that they associate the product with a single source, regardless of

whether they know who or what that source is. [65]

There is no particular time within which secondary meaning need be

established.[66]

Whether a mark has acquired secondary meaning is a question of fact for the jury

to decide.[67]

The party seeking protection for a mark bears the burden of proving that

secondary meaning has attached within the relevant class of customers.[68]

_Proof of Secondary Meaning_

Direct evidence of secondary meaning consists of consumer surveys and

testimony from consumers.[69] Surveys are the "preferred" method of proof of secondary

meaning but are not required.[70]

---

[65] _Park n Fly, Inc. v. Dollar Park and Fly, Inc._, 469 U.S. 189. 105 S. Ct. 658, 83 L. Ed. 2d 582
(1985); _Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co._, 408 F. Supp. 1219, 1242-1250
(D. Colo. 1976), modified on other grounds, 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434
U.S. 1052 (1978); 4-86A _Modern Federal Jury Instructions-Civil_, P 86A-12 (Matthew Bender 3d
ed.)

[66] _Park n Fly, Inc. v. Dollar Park and Fly, Inc._, 469 U.S. 189. 105 S. Ct. 658, 83 L. Ed. 2d 582
(1985); _Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co._, 408 F. Supp. 1219, 1242-1250
(D. Colo. 1976), modified on other grounds, 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434
U.S. 1052 (1978); 4-86A _Modern Federal Jury Instructions-Civil_, P 86A-12 (Matthew Bender 3d
ed.)

[67] _Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,_ 9 F.3d 175,
180 (1st Cir. 1993); _Flynn v. AK Peters, Ltd.,_ 377 F.3d 13, 19 (1st Cir. 2004);
_Volkswagenwerk Aktiengesellschaft v. Wheeler_, 814 F.2d 812, 816 (1st Cir. 1987).

[68] _Flynn v. AK Peters, Ltd.,_ 377 F.2d 13, 19 (1st Cir. 2004); _Boston Beer Co. v. Slesar Bros.
Brewing Co._, 9 F.3d 175, 181 (1st Cir. 1993).

[69] _Flynn v. AK Peters, Ltd.,_ 377 F.3d 13, 20 (1st Cir. 2004)_.

Secondary meaning can also be shown through circumstantial evidence, such as:

(1) the length and manner of a mark's use by its plaintiff owner,

(2) the nature and extent of advertising and promotion of the mark by the plaintiff owner, and

(3) the efforts made by the plaintiff owner to promote a conscious connection, in the relevant public's mind, between the name or mark and a particular product or venture.[71]

Other circumstantial factors that may be considered in determining the existence of secondary meaning include advertising expenditures, media coverage, and attempts to copy the mark,[72] as well as the size or prominence of the plaintiff owner's enterprise in its industry and whether the product has an established place in its market.[73] Finally, "critical acclaim," consisting of mention in books, magazines and professional journals, may be considered.[74]

---

[70] *The Yankee Candle Company, Inc. v. The Bridgewater Candle Company, LLC,* 259 F.3d 25, 43 (1st Cir. 2001); *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,* 9 F.3d 175, 182 (1st Cir. 1993).

[71] *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,* 9 F.3d 175, 182 (1st Cir. 1993); *Flynn v. AK Peters, Ltd.,* 377 F.3d 13, 20 (1st Cir. 2004); *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005 .

[72] See *Flynn v. AK Peters, Ltd.,* 377 F.3d 13, 20 (1st Cir. 2004); *815 Tonawanda St. Corp. v. Fay's Drug Co.,* 842 F.2d 643, 648 (2d Cir. 1988).

[73] See *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 42 (1st Cir. 1998); Cf. *Trak Incorporated v. Benner Ski KG*, 475 F.2d 1076 (D.Mass. 1979) (finding of secondary meaning supported by 6-year period of exclusive use, substantial ($300G) promotional expenses and industry leadership); *Boustany v. Boston Dental Group*, 42 F.Supp.2d 100, 107 (D.Mass. 1999) (secondary meaning found where plaintiff's mark had been in continuous use for 16 years, plaintiff used mark to identify his dental services to existing and prospective patients, vendors and the public at large through office signs, written and printed communications he generated, answering telephones with "Boston Dental", and local telephone directories' listings.)

[74] *Brandon v. Regents of the University of California,* 441 F.Supp. 1086, 1088 (D.Mass. 1997).

### *Distinctiveness of Composite Mark*

The distinctiveness of a composite mark is determined largely on the basis of the dominant term, giving minimum weight, if any, to the non-dominant prefix.[75]

Marks should be considered as as wholes; the combination of two descriptive or generic terms may result in a composite mark that is suggestive.[76] The inclusion of a descriptive term in a composite mark does not necessarily mean that the mark as a whole is descriptive. A descriptive term may be included in a non-descriptive whole.[77]

### *Effect of Registration Status in Determining Distinctiveness*

Both registered and unregistered trademarks may be eligible for protection against infringing uses.[78] But the proper mode of determining whether a mark is distinctive varies based on whether or not the mark is registered.[79]

### <u>Determination of Distinctiveness of Unregistered Marks</u>

When a party seeks protection for an unregistered trademark, it must demonstrate affirmatively that its mark is distinctive; it has the burden of proof to show by a

---

[75] *Pizzeria Uno Corporation v. Temple*, 747 F.2d 1522, 1533 (4th Cir. 1984)

[76] *W.W.W. Pharm. Co. v. Gillette Co.*, 808 F.Supp. 1013, 1022 (S.D.N.Y.1992) (consolidation of two descriptive or generic terms, "sport" and "stick," suggested both product's form and usage, but required some imagination to surmise nature of product, and thus was suggestive mark), aff'd, 984 F.2d 567 (2d Cir. 1993); see also *Banff, Ltd. v. Federated Dept't Stores, Inc.*, 841 F.2d 486, 489 (2d Cir. 1988) (combination of arbitrary and generic terms in mark "Bee Wear" resulted in suggestive or arbitrary mark); *Macia v. Microsoft Corporation*, 335 F.Supp.2d 507, 514 (D.Vt. 2004) (combination of descriptive words "Pocket" and "Money" in composite mark "PocketMoney" for personal finance software potentially suggestive).

[77] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 545 n. 4 (1st Cir. 1995)

[78] 15 U.S.C. §§ 1114(1), 1125(a)(1); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006); see also *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 (1st Cir.1980).

[79] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006).

preponderance of the evidence either that its mark is inherently distinctive – that is, it is a suggestive, arbitrary or fanciful mark – or that it is a descriptive mark which has acquired distinctiveness by acquiring secondary meaning.[80] Under such circumstances, the jury must engage in the specific inquiry described above to determine whether the proponent has met its burden.[81]

_Determination of Distinctiveness of Registered Marks_

When a mark has been registered with the United States Patent and Trademark Office, the requirement of demonstrating distinctiveness does not automatically attach to the trademark owner. A party seeking protection for a registered trademark has a lighter burden because registration is "prima facie evidence of the validity of the registered mark." This means that registration shifts the burden of proof from the plaintiff owner of the registered mark, which in a common law infringement action based on an unregistered mark would have to establish its right to exclusive use, to the defendant, who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such use through proof that the mark is merely descriptive.[82] Thus, registration means that the defendant has the burden of proving that registration for a trademark is defective

---

[80] _Borinquen Biscuit Corp. v. M.V. Trading Corp._, 443 F.3d 112, 117 (1st Cir. 2006); _Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,_ 9 F.3d 175, 180 (1st Cir. 1993).

[81] _Borinquen Biscuit Corp. v. M.V. Trading Corp._, 443 F.3d 112, 117 (1st Cir. 2006); _I.P. Lund Trading ApS v. Kohler Co._, 163 F.3d 27, 39-41 (1st Cir. 1998).

[82] 15 U.S.C. § 1115(a); _Borinquen Biscuit Corp. v. M.V. Trading Corp._, 443 F.3d 112, 117 (1st Cir. 2006); _Keebler Co. v. Rovira Biscuit Corp._, 624 F.2d 366, 373 (1st Cir.1980); _Calamari Fisheries, Inc. v. The Village Catch, Inc._, 698 F.Supp. 994, 1007 (D.Mass. 1988).

or subject to a defense and that the defendant must show such defect or defense by a preponderance of the evidence.[83]

Registration Provides Constructive Notice

Once plaintiff registered its marks, defendant was put on constructive notice of plaintiff's claims of ownership in said registered marks. The effect of this constructive notice is that the use of a mark which is the same or confusingly similar to plaintiff's mark, as stated in its federal registration certificate, cannot be justified by a claim of innocence, good faith or lack of knowledge on the part of a junior user.[84]

Defendant's Burden of Proof re: Registered Mark

The defendant putative infringer of a registered mark may defend an infringement suit on the ground that the mark does not merit protection because it is merely descriptive of the product.[85] But the defendant must offer significantly probative evidence to show that the mark is merely descriptive. Then—and only then—does the burden of proof shift back, so that the party seeking protection must go forward with proof of secondary meaning.[86]

---

[83] ♦-18 *Modern Federal Jury Instructions-Civil*, P 18.06 (Matthew Bender 3d ed.); see *Sengoku Works Ltd. v. RMC Intern., Ltd.*, 96 F.3d 1217, 1219-1220 (9th Cir.1996) (Registrant is granted a presumption of ownership under the Lanham Act and "challenger must overcome this presumption by a preponderance of the evidence."); *Vuitton d Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 775-776 (9th Cir.1981) (presumption of validity of a registered mark must be overcome by a preponderance of the evidence).

[84] 15 U.S.C. § 1072; *Perfumania, Inc. v. Perfulandia, Inc.*, 279 F.Supp.2d 86, 97 (D.P.R. 2003); *Geoffrey, Inc. v. Toys `R Us*, 756 F.Supp. 661, 665 (D.P.R.1991).

[85] 15 U.S.C. § 1115(a); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006).

[86] *Flexitized, Inc. v. Nat'l Flexitized Corp.*, 335 F.2d 774, 779-80 (2d Cir.1964); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 118 (1st Cir. 2006)

To shift the burden of proof of secondary meaning back to the party seeking protection, that is, back to the plaintiff trademark owner, the defendant may not simply allege descriptiveness; it must prove descriptiveness by a preponderance of the evidence.[87] The defendant's burden is not simply to show that the mark describes a feature of the trademark holder's product; rather, it must show that consumers regard the mark as merely descriptive of that product.[88]

Where the defendant presents minimal evidence and argument in support of its descriptiveness defense, it cannot overcome the presumption of distinctiveness created by registration.[89]

If the defendant does not succeed in coming forward with significantly probative evidence of the mere descriptiveness of a registered mark, the presumption holds, distinctiveness is presumed, and you may proceed to consider the remaining elements of the infringement claim without first demanding that the trademark holder offer proof of secondary meaning.[90]

---

[87] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 118 (1st Cir. 2006); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 373 (1st Cir.1980).

[88] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 119 (1st Cir. 2006) (putative infringer's argument that a registered mark which meant "tasty" or "rich" should be considered descriptive because it described a desirable characteristic of a cookie or cracker held insufficient to overcome the presumption.); *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 545 (1st Cir. 1995); *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 27 (1st Cir. 1989) (when a party challenges the validity of a registered mark, it must show that the primary significance of the mark to the consuming public is to merely describe a particular product).

[89] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 118 (1st Cir. 2006) (where putative infringer conducted no survey or adduced any comparable evidence to support its contention that owner's registered mark was merely descriptive, proof was insufficient to overcome the presumption).

[90] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 118 (1st Cir. 2006); *PIC Design Corp. v. Bearings Specialty Co.*, 436 F.2d 804, 807 (1st Cir. 1971).

Effect of Registration without Secondary Meaning

When the United States Patent and Trademark Office registers a mark without first requiring the applicant to prove secondary meaning, the holder of the mark is entitled to a presumption that its registered trademark is inherently distinctive, as opposed to merely descriptive.[91]

*Effect of Incontestability on Determination of Distinctiveness*

When a trademark has been in continous use for five consecutive years following the date of its registration and the trademark owner has filed an affidavit attesting to such continuous use with the United States Patent and Trademark Office, the registration is said to become "incontestable." If the registered mark has become incontestable, the presumption of inherent distinctiveness on registration without proof of secondary meaning becomes conclusive[92] and an infringement claim may be based solely on the registration.[93]

Incontestable status entitles a mark to "substantial protection."[94] A defendant putative infringer may not argue that an incontestable mark is not distinctive because it is merely descriptive.[95]

---

[91] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006); *Equine Technologies., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 545 (1st Cir.1995); see *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 161, n. 12 (1st Cir.1977) ("registration is prima facie evidence that the . . . mark is distinctive per se").

[92] 15 U.S.C. §§ 1065, 1115(b); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006)

[93] *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 205, 105 S.Ct. 658, 667, 83 L.Ed.2d 582 (1985); *Keds Corp. v. Renee Intern. Trading Corp.*, 888 F.2d 215, 220 (1st Cir. 1989).

[94] *Lone Star Steakhouse & Saloon, Incorporated v. Alpha of Virginia, Incorporated*, 43 F.3d 922, 935 (4th Cir. 1995); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir.1986).

<u>Effect of Disclaimer and Incontestability on Distinctiveness of Composite Mark</u>

In a composite mark, the word not disclaimed is generally regarded as the dominant or critical term.[96]

Words which are the salient feature of an incontestable mark are protected as incontestable, despite the separate, non-incontestable registration of same words.[97] Thus, if the word "Visible" is the salient or dominant term in one or both of plaintiff's incontestable marks, defendant is foreclosed from arguing that "Visible" is a descriptive term undeserving of trademark protection wherever plaintiff uses it, whether in plaintiff's incontestable marks, its registered marks or its unregistered marks.[98]

<u>Incontestable Mark – Grounds for Cancellation</u>

Lanham Act § 14(c), 15 U.S.C. § 1064(c), allows cancellation of an incontestable mark if it has become generic, if it has been abandoned, if it is being used to misrepresent the source of the goods or services in connection with which it is used, or if it was

---

[95] *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 196, 105 S.Ct. 658, 662-63, 83 L.Ed.2d 582 (1985); *Keds Corp. v. Renee Intern. Trading Corp.*, 888 F.2d 215, 220-221 (1st Cir. 1989); *Re v. Smith*, 2005 WL 1140769, *3, 2005 U.S. Dist. LEXIS 8985, 77 U.S.P.Q.2d (BNA) 1858 (D.Mass., Slip Opn., May 11, 2005).

[96] See *Pizzeria Uno Corporation v. Temple*, 747 F.2d 1522, 1529-1530 (4th Cir. 1984).

[97] *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 192 n.2, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 603-604 (9th Cir. 2005).

[98] See *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 603-604 (9th Cir. 2005).

obtained fraudulently or contrary to the provisions of § 4, 15 U.S.C. § 1054, or §§ 2(a) –

(c), 15 U.S.C. §§ 1052(a) – (c).[99]

## Infringement – Remaining Elements: Use of Similar Mark and Likelihood of Confusion

As noted above, if one or more of plaintiff's unregistered or registered marks are

entitled to trademark protection, then plaintiff must additionally show:

1.  that the defendant has used the same mark or a similar mark, and

2.  that such use by the defendant is likely to cause confusion, mistake or deception

    among relevant persons as to whether the plaintiff and the defendant or their

    goods or services are associated with one another, thereby harming the

    plaintiff.[100]

Whether brought under state or federal law, the central issue in trademark

infringement cases is whether the allegedly infringing use creates a likelihood of

confusion.[101]

The law requires that the plaintiff trademark owner show that the allegedly

infringing conduct carries with it a likelihood of confusing an appreciable number of

reasonably prudent purchasers exercising ordinary care.[102]

---

[99] See *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193-195, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985); *Re v. Smith*, 2005 WL 1140769, *3, 2005 U.S. Dist. LEXIS 8985, 77 U.S.P.Q.2d (BNA) 1858 (D.Mass., Slip Opinion, May 11, 2005).

[100] *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir.1992), cert. denied, 509 U.S. 923, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993); *National Nonwovens, Inc. v. Consumers Products Enterprises, Inc.*, 397 F.Supp.2d 245, 257 (D. Mass. 2005); *Hasbro, Inc. v. Clue Computing, Inc.*, 66 F.Supp.2d 117, 121 (D.Mass. 1999)

[101] *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486-87, 492-93 (1st Cir.1981) (claims under Lanham Act and Mass.Gen.L. ch. 110B, § 11); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 44 (D. Mass. 1995); *Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp. 48, 54 (D.Mass. 1993).

In the "typical" trademark infringement case, the likelihood of confusion inquiry centers on whether members of the purchasing public are likely to mistake one party's products or services for another party's protected products or services within the same category.[103] To demonstrate infringement, the plaintiff must show by a preponderance of the evidence that there is a likelihood that an appreciable number of ordinary prudent purchasers will be misled, or simply confused, as to the source of the goods in question.[104]

But the likelihood of confusion inquiry can also focus upon whether members of the purchasing public are likely to believe that the plaintiff produces, licenses, or otherwise endorses the defendant's products.[105] Confusion over the nature of the parties' business relationship may be as objectionable for purposes of trademark infringement as is confusion between their goods.[106]

To demonstrate a likelihood of confusion, the plaintiff does not need to show that the defendant intended to deceive or confuse,[107] nor need the plaintiff show any evidence

---

[102] *International Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201 (1st Cir. 1996).

[103] *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 28 (1st Cir.1989).

[104] 15 U.S.C.A. §§ 1114(1), 1125(a); see *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1428 (3d Cir.1994), cert. denied, 514 U.S. 1103, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995); *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1184 (7th Cir.1989); 3A-59 *Federal Jury Practice and Instructions*, § 159.49 (West Group 5th ed.).

[105] *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 28-29 (1st Cir.1989).

[106] *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 490 (1st Cir.1981).

[107] *Sarin Corp. v. National Toner Warehouse, Inc.*, 528 F. Supp. 636 (N.D. Ga. 1981); 4-86A *Modern Federal Jury Instructions-Civil,* P 86A-15 (Matthew Bender 3d ed.).

of actual confusion,[108] though either factor does provide good evidence of likelihood of confusion.[109]

A possibility, or even a simple likelihood, of confusion does not suffice to establish a trademark claim. A substantial likelihood of confusion must exist.[110]

The determination as to whether a likelihood of confusion exists is a question of fact the jury to decide.[111]

### Relevant Confusion – Persons Confused and Actionable Commercial Injury

The likelihood of confusion inquiry is not limited to actual or potential purchasers, but also includes others whose confusion threatens the trademark owner's commercial interest in its mark.[112]

The type of commercial injury actionable under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is not restricted to the loss of sales to actual and prospective buyers of the products or services in question. Confusion is relevant when it exists in the minds of persons in a position to influence the purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner.

---

[108] *Sun-Fun Products v. Suntan Research & Dev.,* 656 F.2d 186 (5th Cir. 1981); 4-86A *Modern Federal Jury Instructions-Civil,* P 86A-15 (Matthew Bender 3d ed.); see also the instruction in *Attrezzi LLC v. Maytag Corporation,* U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

[109] See *Roto Rooter Corp. v. O'Neal,* 513 F.2d 44 (5th Cir. 1975) (best evidence of likelihood of confusion is existence of actual confusion); 4-86A *Modern Federal Jury Instructions-Civil,* P 86A-15 (Matthew Bender 3d ed.).

[110] *Hasbro, Inc. v. Clue Computing, Inc.,* 66 F.Supp.2d 117, 121-122 (D. Mass. 1999); *Pump, Inc. v. Collins Management, Inc.,* 746 F.Supp. 1159, 1165 (D.Mass. 1990); see also *Fisher Stoves, Inc. v. All-Nighter Stove Works,* 626 F.2d 193, 194 (1st Cir. 1980).

[111] *Equine Technologies, Inc. v. Equitechnology, Incorporated,* 68 F.3d 542, 546 (1st Cir. 1995).

[112] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group,* 376 F.3d 8, 16 (1st Cir. 2004).

Relevant commercial injury includes not only loss of sales but also harm to the trademark holder's goodwill and reputation.[113]

Confusion is commercially relevant if the alleged infringer's use of the mark could inflict commercial injury in the form of a diversion of sales, damage to goodwill, or the plaintiff trademark owner's loss of control over its reputation.[114]

Where goods or services directly compete, the usual harm from confusion is both the potential purchase of the defendant's product rather than the plaintiff's and the loss of goodwill and reputation occasioned when the defendant's product is inferior. But the likelihood of confusion inquiry is not limited to actual or potential purchasers.; It also includes others whose confusion threatens the trademark owner's commercial interest in its mark. Relevant confusion among non-purchasers may well extend beyond the confusion of those persons positioned to influence directly the decisions of purchasers. Public confusion among non-purchasers is actionable if it will adversely affect the plaintiff's ability to control its reputation.[115]

### Circumstantial Proof of Harm to Goodwill

In a trademark infringement case, harm to goodwill may be inferred from circumstantial evidence; direct evidence is not required.[116]

### Types of Relevant Confusion

---

[113] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 10 (1st Cir. 2004); 3 McCarthy on Trademarks and Unfair Competition § 25:5 (4th ed. 1996).

[114] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 15 (1st Cir. 2004) (citing cases).

[115] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 16-17 (1st Cir. 2004); *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 128 (4th Cir. 1990).

[116] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 17 (1st Cir. 2004).

Typically, the confusion inquiry centers on whether members of the purchasing public are likely to mistake one party's products or services for another party's protected products or services within the same category.[117]

But, in business relation confusion cases, the likelihood of confusion inquiry also focuses upon whether members of the purchasing public are likely to believe that the plaintiff produces, licenses, or otherwise endorses the defendant's products.[118]

Post-sale confusion is actionable in the First Circuit; it refers not to the resale of the original product or service, but to the risk that non-purchasers, who themselves may be future consumers, will be deceived when they come into contact with marks placed on goods or associated with services purchased by others.[119]

## Likelihood of Confusion – 8-Factor Test

A number of factors may be considered in determining whether defendant's use of the mark in question is likely to cause confusion. No one factor is necessarily determinative. The relative weight that is assigned to any factor will differ from case to case and not every factor may be relevant. It is up to the jury to decide what weight, if any, to assign to any factor in this case.

Among the factors that may be considered are:

---

[117] *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 28-29 (1st Cir. 1989); *Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp. 48, 54 (D.Mass. 1993).

[118] *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 490 (1st Cir. 1981) ("Confusion over the nature of the parties' business relationship may be as objectionable for purposes of trademark infringement as is confusion between their goods.").

[119] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 10 (1st Cir. 2004) (post-sale confusion is actionable in the First Circuit); *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 44 (1st Cir. 1998); see *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 54 (D.Mass. 1990)

(1) the similarity of the marks;
(2) the similarity of the goods and services;
(3) the relationship between the parties' channels of trade;
(4) the relationship between the parties' advertising;
(5) the classes of prospective purchasers;
(6) evidence of actual confusion;
(7) the defendant's intent in adopting its mark; and
(8) the strength of the plaintiff's mark.[120]

To make a proper analysis of the likelihood of confusion, all eight factors should be taken into consideration,[121] but no single factor should be assigned dispositive weight.[122] Further, it should be considered that the factors are non-exclusive and that not every factor is apt to the particular facts of a case.[123]

**Similarity of the Marks Factor**

<u>Effect of Direct Competition</u>

---

[120] From the instruction in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005; *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 120 (1st Cir. 2006); *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir. 2006); *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1205 (1st Cir. 1983); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981). See 15 U.S.C.A. § 1114(1).

[121] *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 43 (1st Cir. 1998); *Boston Athletic Association v. Sullivan*, 867 F.2d 22, 29 (1st Cir. 1989); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir. 1987)

[122] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 120 (1st Cir. 2006); *Keds Corp. v. Renee Intern. Trading Corp.*, 888 F.2d 215, 222 (1st Cir. 1989); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir. 1987).

[123] *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 43 (1st Cir. 1998); *International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center* (IAM), 103 F.3d 196, 201(1st Cir. 1996).

Where goods or services directly compete, the "similarity of the marks" factor is entitled to great weight.[124] Competitive goods or services are those which are reasonably interchangeable by buyers for the same purposes.[125]

### Copying Need Not Be Literal

For marks to be adjudged similar for purposes of determining the likelihood of confusion, it is not necessary that the trademark be literally copied nor that every word be appropriated; the registrant's rights extend beyond its actual mark.[126]

### Total Effects Test

The similarity of the marks should be judged on the basis of the total effect of the each mark, rather than upon a comparison of the marks' individual features.[127]

077 8-Factor Test: Similar Marks, No Abstract or Side-by-Side Comparisons

Marks should not be compared in the abstract, out of context of what occurs in the marketplace. The circumstances surrounding the purchase of the goods or services should

---

[124] *Express Services, Inc. v. Careers Express Staffing Services*, 176 F.3d 183, 186 (3rd Cir. 1999) (where goods or services directly compete, the court need rarely look beyond the mark itself to determine whether there is a likelihood of confusion.)

[125] See *United States v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 393, 76 S.Ct. 994, 1006, 100 L.Ed. 1264 (1956).

[126] *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 29-30 (1st Cir. 1989); *Perfumania, Inc. v. Perfulandia, Inc.*, 279 F.Supp.2d 86, 98-99 (D.P.R. 2003) ("In order to constitute an infringement, it is not necessary that the trademark be literally copied. Neither is it necessary that every word be appropriated.")

[127] *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 43 (1st Cir. 1998); *Boston Athletic Association v. Sullivan*, 867 F.2d 22, 29 (1st Cir. 1989); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981).

be taken into account. A side-by-side comparison is not the test to be used in determining the likelihood of confusion.[128]

Although each mark should be considered as a whole, marks should not be examined with a microscope to detect minute differences.[129] Even applying the total effects test, marks can be similar for purposes of determining whether a likelihood of confusion exists despite small differences.[130] Even comparing marks as wholes, similarities weigh more heavily than differences.[131]

The test for similarity of the marks is not whether the public would confuse the marks.[132]  Rather, the proper test is whether confusion is likely when a relevant person, familiar with the one party's mark, is presented with the other party's goods or services alone.[133]

### Dominant Word in Composite Mark

When determining whether a composite term or mark is sufficiently similar to another mark to create a likelihood of confusion, it is a settled principle of trademark law

---

[128] *Alta Vista Corporation, Ltd. v. Digital Equipment Corporation*, 44 F.Supp.2d 72, 76 (D.Mass. 1998); *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1009 (D.Mass. 1988); *CFM Majestic, Inc. v. NHC, Inc.*, 93 F.Supp.2d 942, 951 (N.D. Ind. 2000).

[129] *National Van Lines, Inc. v. Dean*, 194 F.Supp. 334, 338 (N.D. Ill., E. D. 1960).

[130] See *Boustany v. Boston Dental Group*, 42 F.Supp.2d 100, 108 (D.Mass 1999) (the "total effect" of the marks indicated similarity where the only difference between plaintiff's mark, "Boston Dental" and defendant's mark, "Boston Dental Group, Inc." were the words "Group, Inc."); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 54 (D.Mass. 1990).

[131] *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1009 (D.Mass. 1988).

[132] *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976) (emphasis in original).

[133] *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F.Supp. 457, 466 (N.D. Cal. 1991); *CFM Majestic, Inc. v. NHC, Inc.*, 93 F.Supp.2d 942, 951 (N.D. Ind. 2000) (court must recognize the marks will be confronted separately by consumers in the marketplace, rather than compared sitting side by side on a podium in the courtroom.).

that extra weight should be given to the dominant parts of the marks.[134] This means that, while it may be helpful to view multiple word marks as a whole, it is also proper to give greater force and effect to the most salient or dominant feature of a mark, that is, the part of the mark that has the greater total impact upon the ordinary buyer, over and above the "peripheral" elements of the mark.[135]

If the dominant portion of both marks is the same, then confusion may be likely, notwithstanding peripheral differences.[136] It may reasonably be found that the total effect of the marks is similar where the most salient word in both sets of marks is the same, despite differences in fonts, arrangements and colors,[137] or disclaimed words or figures.[138] In sum, there may be sufficient similarity of the marks to constitute infringement where defendant has copied or imitated the substantial and distinctive part of plaintiff's trademark.[139]

<u>Dominant Word in Larger Letters</u>

---

[134] *Pizzeria Uno Corporation v. Temple*, 747 F.2d 1522, 1530 (4th Cir. 1984).

[135] *CFM Majestic, Inc. v. NHC, Inc.*, 93 F.Supp.2d 942, 951 (N.D. Ind. 2000).

[136] See *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 18 (1st Cir. 2004).

[137] See *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 18 (1st Cir. 2004).

[138] See *Pizzeria Uno Corporation v. Temple*, 747 F.2d 1522, 1530 (4th Cir. 1984).

[139] *Perfumania, Inc. v. Perfulandia, Inc.*, 279 F.Supp.2d 86, 98-99 (D.P.R. 2003); *National Van Lines, Inc. v. Dean*, 194 F.Supp. 334, 338 (N.D. Ill., E. D. 1960) (to constitute infringement, it is not necessary that defendant appropriate the whole of plaintiff's mark; imitation need only be slight if it attaches to the salient feature of plaintiff's mark).

It is especially appropriate to give the dominant part of a mark extra weight on the issue of likelihood of confusion where the defendant putative infringer displays it in considerably larger letters than it uses for other words.[140]

Identical, Suggestive Dominant Word & Same General Class of Goods or Services

If the dominant word in the composite marks in issue is suggestive and is identical in the plaintiff's and defendant's marks, with a difference only in the prefix, and the products or services involved, though not being identical, belong to the same general class of merchandise or service, there is such similarity as to create a likelihood of confusion.[141]

Combination of Dominant Word and Descriptive Word

If the defendant has merely combined a word descriptive of its own product with a word that is the dominant feature of plaintiff's registered mark or marks, so that the borrowed word becomes the dominant feature of the defendant's mark, the marks are sufficiently similar to create a likelihood of confusion.[142]

*Similar Marks on Websites*

---

[140] See *Pizzeria Uno Corporation v. Temple*, 747 F.2d 1522, 1530 (4th Cir. 1984).

[141] *Pizzeria Uno Corporation v. Temple*, 747 F.2d 1522, 1530 (4th Cir. 1984).

[142] *Pizzeria Uno Corporation v. Temple*, 747 F.2d 1522, 1530 (4th Cir. 1984); *Bon Ami Co. v. McKesson & Robbins*, 93 F.2d 915, 916-17 (C.C.P.A. 1938) (Hatfield, J., concurring) ("If all that a newcomer in the field need do in order to avoid the charge of confusing similarity is to select a word descriptive of his goods and combine it with a word which is the dominant feature of a registered trade-mark so that the borrowed word becomes the dominant feature of his mark, the registered trade-mark, made valuable and outstanding by extensive advertising and use, soon becomes of little value, and, of course, each of the subsequent initiating trade-marks (and there would be many) is of value only to the extent that its users are trading on the good will of the owner of the original registered trade-mark.")

Where defendant's website gives the impression that it is using plaintiff's technology, the similarity of marks factor weighs more heavily in the direction of a likelihood of confusion.[143]

On a website, similarities in sound and appearance of two marks are not overcome by differences in ambiguous logos.[144]

### Families of Marks

A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner.[145] A family of marks exists when the pattern of usage of the common element is sufficient to be indicative of the origin of the family.[146] The sharing of a common, dominant term can be the basis of a family of marks.[147]

The existence of a family of marks is a question of fact for the jury to decide based on the dominant feature's distinctiveness, the family's use, advertising, promotion, and inclusion in the party's other marks.[148]

---

[143] *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 110-11 (D.Mass. 2000).

[144] *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 110 (D.Mass. 2000).

[145] *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991).

[146] *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1463 (Fed. Cir. 1991).

[147] See *Motorola, Inc. v. Griffiths Electronics, Inc.*, 317 F.2d 397, 399 (C.C.P.A. 1963) (plaintiff successfully created a family of marks based on the dominant word GOLDEN); *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462-63 (Fed. Cir. 1991).

[148] *McDonald's Corp. v. McBagel's, Inc.*, 649 F.Supp. 1268, 1271 (S.D.N.Y. 1986).

If the parties have used families of marks and the dominant terms of those families of marks are closely similar in sound, appearance and connotation, confusion is all the more likely as long as the goods or services of the two parties are in similar, even if different, markets.[149]

Without "secondary meaning" there is no "family of trademarks." This means that if the common term among the group has not achieved sufficient secondary meaning to preclude others from using the term, a family of trademarks does not exist. However, the lack of a family of trademarks does not invalidate each of plaintiff's registered marks which share the common term. Each mark in itself may be distinctive enough to create a valid trademark.[150]

*Proximity of Putative Infringer's Name or House Mark*

In determining whether the plaintiff's and defendant's marks are sufficiently similar to create a likelihood of confusion, the defendant-junior user's display of its name or a "house" mark in close proximity to the allegedly infringing mark should be considered whether, as should whether doing so diminishes the likelihood of confusion.[151]

However, in a reverse confusion case, consideration should be given to the fact that the proximity of the more well-known junior user's name or house mark may not lessen the similarity of the marks, but could actually aggravate the threat to plaintiff's

---

[149] *International Diagnostic Technology, Inc. v. Miles Laboratories, Inc.*, 746 F.2d 798, 800 (Fed. Cir. 1984).

[150] *American Aloe Corporation v. Aloe Crème Laboratories, Inc.*, 420 F.2d 1248, 1253 (7th Cir. 1970); Compare *Lauritzen & Co., Inc. v. Borden Company*, 239 F.2d 405 (C.C.P.A. 1956) with *Motorola, Inc. v. Griffiths Electronics, Inc.*, 317 F.2d 397 (C.C.P.A. 1963).

[151] From the instruction in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

mark by more strongly suggesting a relationship or association between the defendant and the plaintiff companies. [152]

### Effect of Policing Mark

No inference of non-similarity of the marks can be drawn from Visible's decision to police, or not to police, its mark.[153]

### Similarity of Goods & Services Factor

#### Non-Competing But Related Goods and Services Can Be Similar For Purposes of Establishing Likelihood of Confusion

In determining whether the similarity of goods or services factor weighs in plaintiff's favor in establishing a likelihood of confusion, it is not necessary that the plaintiff's and defendant's goods or services be the same or directly competitive; to establish similarity, it is enough that the parties' respective goods or services be sufficiently related to each other to produce confusion in the minds of customers as to their source.[154]

---

[152] *Attrezzi, LLC v. Maytag Corp*., 436 F.3d 32, 39 (1st Cir. 2006) (defendant's use of "Jenn-Air Attrezzi" did not necessarily lessen the likelihood of confusion with plaintiff's "Attrezzi" mark); *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1205 (1st Cir. 1983) (marks found similar despite prominent presence of defendant's name next to mark in question); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 54 (D.Mass. 1990) (use of respective parties' names in proximity to similar marks on athletic shoes did not negate likelihood of confusion); *Pump, Inc. v. Collins Management, Inc.*, 746 F.Supp. 1159, 1168 (D.Mass. 1990) (marks not found dissimilar despite mitigating presence of defendant's name); *Trak Incorporated v. Benner Ski KG*, 475 F.2d 1076, 1082 (D.Mass. 1979) (juxtaposition of defendant manufacturer's name to similar mark on ski does not mitigate effect of mark's similarity to that of plaintiff rival ski manufacturer because it could suggest a business relationship between the parties); *Electronics Corp. of Amer. v. Republic Industries, Inc.*, 507 F.2d 409, 410 (1st Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1679, 44 L.Ed.2d 102 (1975).

[153] See *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 54 (D.Mass. 1990).

[154] See *Conde Nast Publications, Inc. v. American Greetings Corp.*, 329 F.2d 1012, 1013-14 (C.C.P.A. 1964) (although plaintiff's magazines and defendant's greeting cards were not they same nor competitive, where both were located in racks adjacent or in close proximity to one

Trademark protection is not limited to the market defined by the products or services listed in the trademark or service mark registration certificate or by those which directly compete with them, but extends to the market defined by related products and services.[155]

### Trademark Law Protects a Senior User Against Improper Restraints On the Possibe Expansion of Its Market

A trademark owner has a right to protection against parties using a similar mark on related, non-competing goods in order to guard against improper restraints on the possible expansion of the senior user's market.[156]

Goods or services are similar for purposes of creating a likelihood of confusion when the defendant's products are such that consumers or other relevant persons would expect the trademark owner to produce them as a logical extension of its current business or when the plaintiff trademark owner has actually taken some steps to expand its market.[157]

---

another in the same type of stores, they were sufficiently related to each other to produce confusion in the minds of customers as to their source.)

[155] *Re v. Smith*, 2005 WL 1140769, *4, 2005 U.S. Dist. LEXIS 8985, 77 U.S.P.Q.2d (BNA) 1858 (D.Mass., Slip Opn., May 11, 2005); *Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857, 861 (5th Cir. 1967); *E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports. Inc.*, 756 F .2d 1525, 1530 (11th Cir. 1985); *Sands, Taylor & Wood Co. v. The Quaker Oats Co.*, 978 F.2d 947, 958 (7th Cir. 1992); *Perfection Fence Corp. v. Fiber Composites LLC*, 2005 WL 353017 (D.Mass. 2005).

[156] *Scarves by Vera, Inc. v. Todo Imps. Ltd. (Inc.)*, 544 F.2d 1167, 1172 (2d Cir. 1976); *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir.1987); *Cartier, Incorporated, et al. v. Three Sheaves Co.*, Inc., 465 F.Supp. 123, 128 (S.D.N.Y. 1979); *De Beers LV Trademark Limited, et al. v. DeBeers Diamond Syndicate Inc.*, et al., 440 F.Supp.2d 249, 273-274 (S.D.N.Y. 2006). See *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 415, 36 S.Ct. 357, 361, 60 L.Ed. 713 (1916) (even where two parties independently employ the same mark in geographically separate markets, senior user has a right of protection against junior user where junior user selected the mark to forestall the extension of senior user's trade).

[157] See *Scarves by Vera, Inc. v. Todo Imps. Ltd. (Inc.)*, 544 F.2d 1167, 1172 (2d Cir. 1976); see also *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F.Supp. 1219, 1239 (D. Colo.

_Similarity of Related/Non-Competing Goods and Services Not Dependent on Identity, Design, or Price_

In determining whether the "similarity of the goods or services" factor weighs in favor or against a finding of likelihood of confusion, the nature and price of the plaintiff's and defendant's respective goods and services should be considered.[158] But for this factor to weigh in favor of a finding of a likelihood of confusion, it is not necessary that the goods and services be identical nor that they have the same design or price.[159]

_The More Similar the Marks, The Less Similar Need Be the Goods & Services_

---

1976), _aff'd_, 561 F.2d 1365 (10th Cir. 1977), _cert. denied_, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978); see _Pump, Inc. v. Collins Management, Inc._, 746 F.Supp. 1159 (D.Mass. 1990) (junior user's "pre-emption" of senior user's market in discussed in the context of advertising, channels of trade and prospective purchasers factors); _Tanel Corporation v. Reebok International, Ltd._, 774 F.Supp. 49, 55 (D.Mass. 1990).

[158] From the instruction in _Attrezzi LLC v. Maytag Corporation_, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

[159] See _Attrezzi, LLC v. Maytag Corp._, 436 F.3d 32, 39 (1st Cir. 2006) (where defendant sold major appliances and plaintiff sold small electric appliances, gourmet foods and dinnerware, it was not a case where the two products were so dissimilar as to make confusion highly unlikely); see also _Equine Technologies, Inc. v. Equitechnology, Incorporated_, 68 F.3d 542, 546 (1st Cir. 1995) (strong similarity between hoof care products found despite price differential and sophisticated purchasers); _Northern Light Technology, Inc. v. Northern Lights Club_, 97 F.Supp.2d 96, 111 (D.Mass. 2000) (though scope of the navigational aid differed, two web-based World Wide Web navigation services likely to be related in the minds of the public); _Public Service Co. v. Nexus Energy Software, Inc._, 36 F.Supp.2d 436, 437-439 (D.Mass.1999) (while there were some differences between plaintiff's website, which directed customers to vendors of energy efficient products, and defendant's website, which analyzed customers' energy needs, both provided information relating to energy services); _Copy Cop, Inc. v. Trask Printing, Inc._, 908 F.Supp. 37, 45 (D. Mass. 1995) (defendant's printing business sufficiently close to plaintiff's copying business, "even if focus is different."); _Tanel Corporation v. Reebok International, Ltd._, 774 F.Supp. 49, 54-55 (D.Mass. 1990) (differences in shoes' use [field sports v. basketball and street wear], design and price and price, did not outweigh similarities in style and appearance); _HQ Network Systems v. Executive Headquarters_, 755 F.Supp. 1110, 1118 (D.Mass. 1991) (office rental companies held to offer similar goods and services even though one provided "superior arrangements, with more services, higher internal standards, but higher costs to clients).

The more similar the marks are, the less necessary it is that the products themselves be very similar to create confusion.[160]

### Channels of Trade, Advertising and Class of Prospective Purchasers Factors

The channels of trade, advertising and class of prospective purchasers factors are usually considered together.[161]

<u>Analysis Influenced by Same Purchaser Class</u>

The analysis of the channels of trade, advertising and class of prospective purchasers factors is heavily influenced by whether the parties are trying to sell to the same purchaser class.[162]

<u>Success Immaterial</u>

The relative success or failure of either party in advertising or in reaching potential customers is simply immaterial; rather, the key is whether the parties have similar potential markets and seek to exploit those markets in similar ways. Where the differences between the parties are simply of degree rather than kind, these factors favor the plaintiff.[163]

<u>Channels of Trade Factor: Consideration of Internet Strategy</u>

---

[160] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir. 2006); 3 McCarthy on Trademarks, sec. 23:20.1, at 23-73 to 23-74 & nn.1-2.

[161] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir. 2006); *International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center* (IAM), 103 F.3d 196, 204 (1996); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir. 1987).

[162] *Pump, Inc. v. Collins Management, Inc.*, 746 F.Supp. 1159, 1168-69 (D.Mass. 1990).

[163] See *Pump, Inc. v. Collins Management, Inc.*, 746 F.Supp. 1159, 1168-69 (D.Mass. 1990) (Were it otherwise, the effect would be to insulate better known, more successful parties from challenge whenever they attempt to steal names or ideas from unknown parties with limited market strength.).

The parties' respective internet strategies may be considered in determining whether the "channels of trade" factor weighs in favor or against a finding of likelihood of confusion.[164] Ease of access to websites makes confusion more likely over the internet; web surfers are more likely to be confused as to the ownership of a website than traditional patrons of a brick-and-mortar store would be of a store's ownership.[165]

Where both parties sell and advertise through their internet websites, the channels of trade, advertising and class of prospective purchasers factors favor the plaintiff. Where both parties sell their products and services from their respective websites to customers nationwide, it makes no difference that one party is a large corporation that sells and advertises on a national and an international scale and the other party is a much smaller enterprise.[166]

*Advertising Factor: Comparison of Target Audience and Shared Goals*

In determining whether the "advertising" factor weighs in favor or against a finding of likelihood of confusion, the issue is not whether the parties use the same advertising vehicles, for example, the same magazines, but whether and to what degree they target the same audience.[167] Thus, the advertising factor factor may indicate a likelihood of confusion even though the parties have distinctly different approaches to

---

[164] See *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir. 2006).

[165] *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1057 (9th Cir.1999); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 112-113 (D.Mass. 2000).

[166] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir. 2006).

[167] *Star Financial Services, Inc. v. Aastar Mortgage Corp.,* 89 F.3d 5, 10 (1st Cir. 1996).

advertising.[168] Also, even if the overlap between the targets of the parties advertising is not substantial, the degree to which the parties share the same advertising goals may be considered.[169]

## Class of Prospective Purchaser Factor: Identity Not Required

For the "class of prospective purchasers" factor to weigh in favor or against a finding of likelihood of confusion, it is not necessary that the individuals to whom the parties market, advertise or sell their products be exactly the same. If the plaintiff had plans to expand into defendant's market and had taken some steps in that direction, there is sufficient overlap to increase the risk of confusion.[170]

## Sophisticated Customers

In determining whether there exists a likelihood of confusion, it is not sufficient for the defendant to assert that it markets and sells its products or services only to "sophisticated customers." Who the relevant persons in the marketplace are and whether they are sufficiently sophisticated and knowledgeable to avoid being confused about the source of the parties' products or services or about the relationship between the parties must be determined.[171]

---

[168] *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 111-112 (D.Mass. 2000).

[169] *Boustany v. Boston Dental Group,* 42 F.Supp.2d 100, 109-10 (D.Mass. 1999) (even were the overlap between the targets of the parties advertising not substantial, it was significant for determining likelihood of confusion that plaintiff was likely to be able to show that the parties shared an identical advertising goal, i.e., increasing each's number of patients.).

[170] *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55 (D.Mass. 1990)

[171] See *Boustany v. Boston Dental Group,* 42 F.Supp.2d 100, 109 (D.Mass. 1999) (where defendant argued that its dental-care services were marketed to knowledgeable executives unlikely to be confused, the court termed the argument "quite beside the point," since the relevant persons were the individual patients.)

When the sophisticated customer defense is applied to a class of relevant persons of varying levels of sophistication, the standard for judgment is that of the least sophisticated member of class.[172]

In determining whether there exists a likelihood of confusion, the effect of viewing the parties' respective marks over the internet should be considered. When relevant persons, whether they are sophisticated customers or not, are surfing the Web, they can access websites with very little effort. Thus, Web-surfers are more likely to be confused about the ownership of a website than traditional patrons of a brick-and-mortar store would be of a store's ownership.[173]

### Actual Confusion Factor

<u>Persuasive But Not Essential</u>

In determining whether there is a likelihood of confusion, evidence of actual confusion constitutes "persuasive evidence" of the likelihood of confusion.[174] But evidence of actual confusion is not essential to a finding of likelihood of confusion.[175]

---

[172] *Ford Motor Co. v. Summit Motor Prods., Inc*., 930 F.2d 277, 293 (3rd Cir.1991); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 112-13 (D.Mass. 2000).

[173] *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1057 (9th Cir.1999); *Northern Light. Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 113 (D.Mass. 2000)

[174] *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 31 (1st Cir. 1989); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 45 (D. Mass. 1995); *Boustany v. Boston Dental Group,* 42 F.Supp.2d 100, 110 (D.Mass. 1999).

[175] *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir. 1987); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 120 (1st Cir. 2006); *Calamari Fisheries, Inc. v. The Village Catch, Inc*., 698 F.Supp. 994, 1011 (D.Mass. 1988); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992) (District court erred in requiring proof of actual product confusion: "In suing under any of the three Lanham Trade-Mark Act provisions, a plaintiff need only show that a likelihood of confusion is in prospect; a showing of actual confusion is not required.")

*Effect of Lack of Evidence of Actual Confusion*

Difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy. The lack of evidence of actual confusion is not significant unless the circumstances indicate that such evidence should have been available.[176]

*Relevant Time Period for Actual Confusion*

The lack of evidence of actual confusion weighs against a finding of likelihood of confusion only in cases where the marks and the relevant products or services have been side-by-side in the same market for a long period of time, at least several years.[177] Where the parties' goods or services have not long been side-by-side in the market, the absence of actual confusion is neither surprising nor significant.[178]

*Sophisticated Customers and Lack of Actual Confusion*

---

[176] *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1050 (9th Cir.1999); *Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 626 (6th Cir.1998); See *American Historic Racing Motorcycle Association, Ltd. v. Team Obsolete Promotions*, 33 F.Supp.2d 1000, 1006 (M.D.Fla. 1998) (court finds likelihood of confusion to exist despite absence of evidence of actual confusion and despite relevant market of "relatively sophisticated" consumers).

[177] *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir. 1987); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 113-114 (D.Mass. 2000). See, as examples of time periods over which the absence of actual confusion was judged significant, *Aktiebolaget Electrolux v. Armatron International, Inc.*, 999 F.2d 1, 3 (1st Cir. 1993) (six years); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 490-91 (1st Cir.1981) (four years); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 377-78 (1st Cir.1980) (three and one-half years). See also, as examples of shorter time periods, over which the absence of actual confusion has not been found significant, *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 121 (1st Cir. 2006) (finding that a period of over two years constituted "no protracted period of product coexistence"); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 46 (D. Mass. 1995) (two years); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 114 (D.Mass. 2000) (five months); *Purolator, Inc. v. Efra Distributors, Inc.*, 524 F.Supp. 471, 476 (D.P.R.1981) (three months); *Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc.*, 875 F.Supp. 966, 980 (E.D.N.Y.1994) (seven months); *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1227 (2nd Cir.1987) (four months).

[178] *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55 (D.Mass. 1990); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir. 1987).

The lack of evidence of actual confusion in a market composed of even relatively sophisticated customers does not necessarily weigh against a finding of a likelihood of confusion where the defendant's allegedly infringing mark is used in in similar media to advertise similar goods or services.[179]

_Lack of Actual Confusion and Substantial Disparities_

In determining whether the "actual confusion" factor weighs in favor or against a finding of likelihood of confusion, a lack of evidence of actual confusion is prejudicial to the plaintiff's case only when the parties' respective goods or services have other "substantial disparities." This means that, where the products and services offered by the parties are similar, the absence of actual confusion is not probative of the likelihood of confusion.[180]

**Intent Factor**

In determining whether the "intent" factor weighs in favor of or against a finding of a likelihood of confusion, little weight should be given to the fact that the defendant did not intend to copy the plaintiff's mark.[181] However, the fact that the defendant

---

[179] *American Historic Racing Motorcycle Association, Ltd. v. Team Obsolete Promotions*, 33 F.Supp.2d 1000, 1006 (M.D.Fla. 1998) (actual confusion "important" but not "critical"; where plaintiff failed to offer any evidence of actual confusion and defendant offered circumstantial evidence that relevant market of consumers were relatively sophisticated and not likely to be misled, the court found a likelihood of confusion to exist because 1) plaintiff's mark was arbitrary and entitled to "utmost protection" and 2) even a sophisticated consumer cannot distinguish between plaintiff's and defendant's use of "BEARS" mark "when set forth in similar media to advertise similar services.")

[180] *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir. 1987); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 46 (D. Mass. 1995); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 113 (D.Mass. 2000).

**[181]** *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 44 (1st Cir. 1998).

intentionally copied plaintiff's mark, creates a presumption that he intended to cause confusion and profit thereby; especially where competitors are involved.[182]

*Presumption re: Intent of Newcomer Using Similar Mark*

The law begins with the proposition that a defendant, being a newcomer, has an infinity of marks to chose from. If the defendant was aware of the plaintiff's mark and nevertheless chose a closely similar mark, an inference of intentional infringement and likelihood of confusion may be justified.[183]

---

[182] *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 34 (1st Cir. 1989); *International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center* (IAM), 103 F.3d 196, 206 n. 10 (1996).

[183] *Perfumania, Inc. v. Perfulandia, Inc.*, 279 F.Supp.2d 86, 101 (D.P.R. 2003); **see** *American Historic Racing Motorcycle Association, Ltd. v. Team Obsolete Promotions*, 33 F.Supp.2d 1000, 1006 (M.D.Fla. 1998) (bad faith found where defendant created similar motorcycle racing class with similar name).

*Affirmative Duty to Distinguish Similar Marks*

When a defendant-junior user adopts a mark similar to one already in use, the law imposes upon him an affirmative duty to avoid any likelihood of confusion. Failure to fulfill this duty may be considered as evidence that the defendant has intentionally copied plaintiff's mark and that the "intent" factor favors a finding of likelihood of confusion.[184]

*Effect of Prior Relationship*

If a relationship existed between the plaintiff and defendant companies before defendant's use of its allegedly infringing mark, the inference of defendant's intent to copy plaintiff's mark to be considered especially strong.[185]

Reliance on Counsel's Advice

Even if the defendant relied upon the advice of legal counsel in deciding to use its allegedly infringing mark, such reliance does not automatically negate an inference that the defendant intended to copy the plaintiff's mark and that the "intent" factor therefore favors a finding of a likelihood of confusion.[186] Reliance on the advice of counsel should be both reasonable and regarding a close question of trademark law.[187]

*Lack of Trademark Search*

---

[184] *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817-818 (1st Cir. 1987).

[185] *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1012-13 (D.Mass. 1988); *Perfumania, Inc. v. Perfulandia, Inc.*, 279 F.Supp.2d 86, 101 (D.P.R. 2003).

[186] See *Wolfe v. Nat'l Lead*, 272 F.2d 867, 871 (9th Cir. 1959).

[187] See *Sands, Taylor & Wood Co. v. The Quaker Oats Co.*, 978 F.2d 947, 962 (7th Cir. 1992).

That defendant failed to conduct a trademark search before using its allegedly infringing mark does not automatically require a finding that defendant intended to copy plaintiff's mark. However, it may be considered as evidence of such intent.[188]

### Knowledge of Plaintiff's Mark in Sufficient Time to Avoid Infringing

If defendant knew of plaintiff's asserted right to the trademark in issue sufficiently ahead of time to delete the infringing use from its advertising campaign and, despite the knowledge, decided to ignore the plaintiff's property rights and go forward with the campaign, defendant's decision may be considered sufficient evidence to support a finding that defendant intended to copy plaintiff's mark and that the "intent" factor therefore weighs in favor of a finding of a likelihood of confusion.[189]

### Knowledge of Plaintiff's Mark and Decision to Gamble

If defendant was well aware that its use of its allegedly infringing mark would create a substantial risk of confusion with the plaintiff's mark and that it nonetheless decided to go ahead and gamble that the plaintiff would not or could not seek trademark protection, defendant's decision may be considered sufficient evidence to support a finding that defendant intended to copy plaintiff's mark and that the "intent" factor therefore weighs in favor of a finding of a likelihood of confusion and that defendant's conduct was willful.[190]

### No "Natural Extension"

---

[188] See *Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd.*, 282 F.3d 23, 33-34 (1st Cir. 2002).

[189] See *Pump, Inc. v. Collins Management, Inc.*, 746 F.Supp. 1159, 1170 n. 17 (D.Mass. 1990); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1374-76 (10th Cir. 1977), *cert. denied*, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978)

[190] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006).

Without evidence that defendant had previously used the word "visible," or anything like it, in any mark or for any purpose, defendant may not be found to have chosen the mark "3D Visible Enterprise" as a "natural extension" of any of its previous marks.[191]

*Materiality of In-House Officer Advising Against Infringing Use*

*Relevance of Retaliatory Discharge on Issue of Intent*

*Effect of Discovery Abuse*

Big O, Tamko, Third Circuit Case Starting with "S" and referring to "oppressive conduct."

**Strength of Mark Factor**

Strong marks are accorded broader protection against infringement than are weak marks.[192]

Registration with the United States Patent and Trademark Office is some evidence that a mark is strong.[193] To determine whether a mark is strong, the following factors should also be considered:

1) the length of time the plaintiff trademark owner has used the mark;
2) the trademark owner's relative renown in its field of business;

---

[191] *Aktiebolaget Electrolux v. Armatron International, Inc.*, 999 F.2d 1, 4 (1st Cir. 1993).

[192] *International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center (IAM)*, 103 F.3d 196, 206 (1996); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 819 (1st Cir. 1987); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 492 (1st Cir. 1981); *Pump, Inc. v. Collins Management, Inc.*, 746 F.Supp. 1159, 1170 (D.Mass. 1990);

[193] *Alta Vista Corporation, Ltd. v. Digital Equipment Corporation*, 44 F.Supp.2d 72, 79-80 (D.Mass. 1998); *International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center*, 103 F.3d 196, 206 (1996); *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 546-47 (1st Cir. 1995); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 114-15 (D.Mass. 2000); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55-56 (D.Mass. 1990).

3)  the potency of the mark in plaintiff's field, paying special attention to the number of similar registered marks; and

4)  plaintiff's efforts to promote and protect the mark.[194]

### *Strength of Mark Examples*

The following examples illustrate how consideration of the aforementioned factors may determine the strength of the mark.

A plaintiff trademark owner's mark has been determined to be strong when used for as little as four or as many as 30 or more years.[195]

A plaintiff trademark owner has been determined to have relative renown in its field of business, and so a strong mark, when it has received favorable publicity in the relevant market, such as favorable write-ups in magazines or other types of favorable press coverage.[196]

A plaintiff trademark owner's mark has been determined to be potent in its field, and thus a strong mark, where the United States Patent and Trademark Office had

---

[194] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 121 (1st Cir. 2006); *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 547 (1st Cir. 1995); *Keds Corp. v. Renee Intern. Trading Corp.*, 888 F.2d 215, 222 (1st Cir. 1989); *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 32 (1st Cir. 1989); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 819 (1st Cir. 1987); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 46 (D. Mass. 1995).

[195] *International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center*, 103 F.3d 196, 206 (1996) (30 years); *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 546-47 (1st Cir. 1995) (4 years); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55-56 (D.Mass. 1990) (four years).

[196] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 546-47 (1st Cir. 1995); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 114-115 (D.Mass. 2000); *Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp. 48, 58 (D.Mass. 1993) ("strong" mark found based upon, *inter alia*, "write-ups in such magazines as *Rolling Stone*, *Gourmet* and *Cape Cod Life*"); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55-56 (D.Mass. 1990) (shoes' sold under the mark reception of favorable press coverage).

rejected at least one attempt by a competitor to register a similar name[197] or had allowed

the registration of only one similar mark.[198] But use of similar marks by third-parties only

indicates that the plaintiff trademark owner's mark is weak when it occurs in the same

market or industry.[199]

A plaintiff trademark owner's efforts to promote its mark have been determined to

have resulted in a strong mark where the plaintiff used the mark in 74 print

advertisements,[200] or where it has consistently displayed its mark on its products and in

its advertising and promotional materials,[201] and even when it simply used the mark on

the Internet, on its website.[202]

---

[197] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 546-47 (1st Cir. 1995)  (PTO had rejected at least one attempt by a competitor to register a similar name);

[198] *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55-56 (D.Mass. 1990) (registration of only one similar mark)

[199] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 547 (1st Cir. 1995) (where plaintiff argued that use by "numerous companies" of variations of "Equine" portion of plaintiff's mark reduced the mark's strength, the lower court could properly find no effect where only one of the companies mentioned by defendant directly competed with plaintiff and its mark was not as similar, visually or aurally, as defendants' trademark); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 46-47 (D. Mass. 1995) (use of similar mark by third-parties did not reduce strength of plaintiff's mark where no other valid registrations of similar marks in the relevant industry and plaintiff successfully challenged one attempt to register a similar mark); *Playboy Enterprises, Inc. v. Netscape Communications Corporation*, 354 F.3d 1020, 1027 n. 33 (9th Cir. 2004) (third-party uses of similar marks in unrelated markets neither compelling nor dispositive in considering the "strength of the mark" factor on motion for summary judgment).

[200] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 546-47 (1st Cir. 1995).

[201] *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55-56 (D.Mass. 1990) (mark strong when displayed on all plaintiff's shoes and in its advertising and promotional materials).

[202] *Alta Vista Corporation, Ltd. v. Digital Equipment Corporation*, 44 F.Supp.2d  72, 80 (D.Mass. 1998) (mark "reasonably widely promoted," by "being on the Internet," i.e., on plaintiff's website; even though it was not clear just how well known plaintiff was in its field).

A plaintiff trademark owner's efforts to protect its mark have been determined to have resulted in a strong mark where the plaintiff had successfully compelled one infringing competitor to change its name.[203]

### Use by Third-Parties, Effect of Agreement to Discontinue Infringing Use

Where the evidence indicated that a third-party agreed to discontinue its use of an allegedly infringing mark after the plaintiff trademark owner complained to it or sued it for infringement, the third-party's use did not weaken mark, but instead strengthened it.[204]

### Strength of Junior User's Mark a Factor in Reverse Confusion Situation

In a reverse confusion case, consideration of the "strength of the mark" factor should also take into account the strength of the junior user and its mark. The more well-known a junior user's mark is, the more likely it is to do harm to a senior user by multiplying or exacerbating the likelihood of confusion.[205]

### Spectrum Classification Irrelevant

In determining whether a mark is strong or weak, where it falls on the distinctiveness spectrum is not probative.[206]

Materiality of In-House Officer Advising Against Infringing Use

---

[203] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 546-47 (1st Cir. 1995).

[204] *Morningside Group Limited v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 139 (2nd Cir. 1999); *Trak Incorporated v. Benner Ski KG*, 475 F.Supp. 1076, 1080 (D.Mass. 1979).

[205] See *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006) (where defendant showed large national expenditures to promote its mark, the relatively greater strength of the junior user may hurt rather than help its defense); *Alta Vista Corporation, Ltd. v. Digital Equipment Corporation*, 44 F.Supp.2d 72, 75-76, 80 (D.Mass. 1998).

[206] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006).

Relevance of Retaliatory Discharge on Issue of Intent

Effect of Discovery Abuse: Big O, Tamko, Electrolux, Third Circuit Case starting with "S" and referring to "oppressive conduct"

# AFFIRMATIVE DEFENSES

# DAMAGES

## When Injunctive Relief is Inadequate

The statute governing the award of monetary damages, 15 U.S.C. § 1117, provides, in relevant part, that when a trademark violation occurs, the victim shall be entitled, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."[207] However, if injunctive relief provides a complete and adequate remedy, then the equities of the case may not require an accounting of profits.[208] The adequacy of injunctive relief is called into question whenever there is adequate evidence of plaintiff's actual damages, of defendant's profiting from its infringement, and of contumacious behavior by the defendant.[209]

## Actual Damages and Accounting of Profits

Four rules summarize the additional showing required for an award of monetary damages under §1117 in the First Circuit:

---

[207] *Aktiebolaget Electrolux v. Armatron International, Inc.*, 999 F.2d 1, 5 (1st Cir. 1993).

[208] *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 35 (1Cir. 2002), citing *Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1, 5 (lst Cir.1993) ("We have found 'a clear distinction between the showing equired to establish a right to injunctive relief md that required to establish a right to damages,'" quoting *Camel Hair and Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986)).

[209] *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.,* 282 F.3d 23, 35 (1st Cir. 2002).

1) a plaintiff seeking damages must prove actual harm, such as the diversion of sales to the defendant;

2) a plaintiff seeking an accounting of defendant's profits must show that the products directly compete, such that defendant's profits would have gone to plaintiff if there was no violation;

3) the general rule of direct competition is loosened if the defendant acted fraudulently or palmed off inferior goods, such that actual harm is presumed; and

4) where defendant's inequitable conduct warrants bypassing the usual rule of actual harm, damages may be assessed on an unjust enrichment or deterrence theory.[210]

## Requirement of "Actual Harm" as Prerequisite to Damages Award

The First Circuit has held that "actual harm" includes not only loss of sales, but also harm to the trademark holder's goodwill and reputation.[211] These two latter species of harm are precisely those most likely in a reverse confusion case.[212] Thus, a finding of likelihood of confusion in a reverse confusion case necessarily implies a finding of actual harm. Proof of commercial injury may be inferred from circumstantial evidence; direct evidence is not required.[213]

## Accounting of Profits

### Three Rationales for Accounting of Defendant's Profits

---

[210] *Aktiebolaget Electrolux v. Armatron International, Inc.*, 999 F.2d 1, 5 (1st Cir. 1993).

[211] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 10 (1st Cir. 2004).

[212] See *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir., 2006).

[213] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 17 (1st Cir. 2004).

The First Circuit has articulated three justifications for awarding to plaintiff an accounting of the defendant's profits: (1) as a rough measure of the harm to plaintiff; (2) to avoid unjust enrichment of the defendant; or (3) if necessary to protect the plaintiff by deterring a willful infringer from further infringement.[214]

### Available Even If Most Products Not In Competition

If there is evidence of likelihood of confusion, there may be infringement, as well as an accounting of defendant's profits, even when most of the products are not in competition.[215]

### Where Direct Competition Found, No Fraud, Bad Faith or Palming Off Required

The First Circuit's rule is that, where the products directly compete, an accounting of defendant's profits does not require fraud, bad faith, or palming off. It is thus different from the Restatement rule that an accounting of profits is conditioned on a showing of bad faith.[216]

### Willfulness as Prerequisite for Accounting

---

[214] *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 36 (1Cir. 2002), citing *Estate of Bishop*, 256 F.3d at 1054; *Minn. Pet Breeders. Inc. v. Schell & Kampeter. Inc.*, 41 F.3d 1242, 1247 (8th Cir.1994): *AB Electrolux*, 999 F.2d at 5-6; *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d. Cir.1992); see generally 5 McCarthy on Trademarks, *supra*, §§ 30:59, 30:64.

[215] *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 34 (1st Cir. 2002), citing *Baker v. Simmons Co.*, 325 F.2d 580, 582 (1st Cir. 1963) and *Baker v. Simmons Co.*, 307 F.2d 458, 462-463 (1st Cir. 1962).

[216] *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 36 (1st Cir. 2002), citing *Aktiebolaget Electrolux v. Armatron International, Inc.*, 999 F.2d 1, 5-6 (1st Cir. 1993) and Restatement (Third) of Unfair Competition sec. 37 cmt e (1995).

No case in the First Circuit has decided whether "willfulness" is a precondition for an accounting.[217] However, when the rationale for an award of defendant's profits is to deter some egregious conduct, willfulness is required.[218]

### Must Be Substantial Basis for Denial of Accounting

While 15 U.S.C.A. 1117 does not require an accounting under all circumstances, there must be a substantial basis for denying an accounting.[219]

### Accounting Award Includes All Profits Derived From Sales Under Infinging Mark

Once there has been a finding of direct competition, an award of an accounting of defendant's profits appropriately includes all of defendant's profits derived from sales of products bearing the infringing mark. Defendant may not argue that since it did not directly compete against plaintiff in all the markets in which it profited from use of plaintiff's mark, all of its profits should not go to plaintiff.[220]

## Treble Damages

## Attorney's Fees

---

[217] *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 36 (1st Cir. 2002). Several circuits require a finding of willfulness to support an award of the infringing defendant's profits. See, e.g., *Banff, Ltd. v. Colberts, Inc.*, 996 F.2d 33, 35 (2nd Cir. 1993); *Frisch's Rests., Inc. v. Elby's Big Boy*, 849 F.2d 1012, 1016 (6th Cir. 1988); *Reader's Digest Ass'n v. Conservative Digest. Inc.*, 821 F.2d 800, 807-08 (D.C.Cir. 1987), cited in *Tamko Roofing, supra.* More recent precedent in the Third and Fifth Circuits, based on Congress' August 1999 amendment to sec. 35 of the Lanham Act, specifically rejects a finding of "willfulness" as a prerequisite to an accounting. *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 174 (3rd Cir. 2005); *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2003). Both circuits adopted the factor based approach of *Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998) to determine whether an award of profits is appropriate.

[218] *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 36 (1st Cir. 2002).

[219] *Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 22 (5th Cir. 1968)

[220] *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 36 (1st Cir. 2002) Also, see *Wyman Oil Co. v. American Way Service Corp.*, 941 F.2d 595 (6th Cir. 91) and *Brunswick Corp. v. Spinit Real Co.*, 832 F.2d 513 (10th Cir. 1987)

**Award of Reasonable Attorneys' Fees Available in Exceptional Cases**

Lanham Act sec. 35, 15 USC sec. 1117(a), provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[221]

**Factors Justifying A Finding of an Exceptional Case**

Factors indicating that a case is exceptional such that an award of attorneys' fees is justified include:

(1) plaintiff pleads attorneys' fees in complaint;

(2) defendant has constructive notice of plaintiff's claim of ownership because trademark is registered;

(3) the law is clear and defendant might not reasonably have thought it was not infringing;

(4) there is no close legal question as to whether there is any trademark violation;

(5) defendant had an intention to deceive of confuse the public;

(6) defendant made no concerted effort to create a non-infringing mark;

(7) plaintiff suffers actual damage.[222]

**Case-Specific, Totality of Circumstances Determination**

The analysis of factors to determine whether attorneys' fees should be awarded is a case-specific multi-factored analysis. It is the totality of the circumstances, rather than a particular item alone, that suffices for an award of attorneys' fees.[223]

---

[221] *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 820-821 (1st Cir. 1987).

[222] See *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 32-33 (1st Cir. 2002), citing *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 821 (1st Cir 1987).

[223] *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 33 (1st Cir. 2002)

**Willfulness Short of Bad Faith Suffices for Award of Attorneys' Fees**

A finding of bad faith or fraud is not a necessary precondition to justify an

attorneys' fees award. Willfulness short of bad faith or fraud will suffice when equitable

considerations justify an award and the district court supportably finds the case

exceptional.[224]

# UNFAIR COMPETITION CLAIMS

Evidence of likelihood of confusion establishes unfair competition under federal

law (Lanham Act sec. 43(a), 15 U.S.C. sec. 1125) and state law (M.G.L. c. 93A).[225]


PLAINTIFF VISIBLE SYSTEMS CORPORATION
By its attorneys:


_____/s/*Stephen H. Galebach*_____
Stephen H. Galebach, BBO # 653006
GALEBACH LAW OFFICE
9-11 Touro Avenue
Medford, MA  02155
781-874-2239
galebach@galebachlaw

and

Lawrence M. Kraus, BBO # 564561
Carrie J. Fletcher, BBO # 642369
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
617-342-4000
lkraus@foley.com

---

[224] *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 32 (1st Cir. 2002).

[225] See *Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp. 48, 58 (D.Mass. 1993) ("The gravamen of an unfair competition claim is a showing of likelihood of confusion."), quoting *Data-comm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 489 N.E.2d 185 (1986); *Bayshore Group Ltd. v. Bay Shore Seafood Brokers, Inc.*, 762 F.Supp. 404, 415 (D.Mass. 1991).

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic

Filing.


July 13, 2007                                    _____/s/ *Stephen H. Galebach*_____
                                                       Stephen H. Galebach