UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **VISIBLE SYSTEMS CORPORATION,**<br>**a Massachusetts Corporation,** | | |
| **Plaintiff,** | | |
| **v.** | | **C.A. No. 04-CV-11610-RGS** |
| **UNISYS CORPORATION,**<br>**a Delaware Corporation,** | | |
| **Defendant.** | | |

# PLAINITIFF'S PROPOSED
# <u>JURY INSTRUCTIONS</u>

Pursuant to the provisions of this Court's Order dated March 30, 2007, Plaintiff

Visible Systems Corporation requests that this Court give the following Proposed

Instructions to the jury in the captioned action.

**001 Introduction[1] Att001**

At this stage of the trial it is my duty to instruct you on the principles of law that you will apply in deciding this case. It is your duty to follow these instructions during your deliberations. You should not single out any one instruction, but instead, apply these instructions as a whole to the evidence in this case.

---

[1] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

**002 Jury is the Sole Judge of the Facts[2] Att002**

You are the sole and exclusive judges of the facts. You must weigh the evidence that has been presented impartially, without bias, without prejudice, and without sympathy. You must make a determination as to what the facts are, and what the truth is, based upon the evidence presented in the case. You will decide the case by applying the law as I give it to you in these instructions and the facts as you find them to be from the evidence.

---

[2] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

3

**003 Credibility of Witnesses[3] Att003**

In determining what the facts are, you must necessarily assess the credibility of each witness and determine what weight you will give to each witness's testimony. By credibility I mean the believability or the truthfulness of a witness.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief or not worthy of belief. Consider each witness's intelligence, motives, state of mind, demeanor and manner while testifying. Consider the witness's ability to see, hear, or know the matters about which that witness has testified. Consider whether the witness had a good memory of what the witness has testified about. Consider whether the witness had any reason for telling the truth or not telling the truth, whether the witness had an interest in the outcome of the case, whether the witness had anything to gain or lose as a result of his or her testimony, whether the witness had any friendship, relationship, or animosity toward other individuals involved in the case, whether the witness's testimony was consistent or inconsistent with the witness's own testimony and the testimony of other witnesses. Consider the extent to which, if any, the testimony of each witness is either supported or contradicted by other evidence in the case.

After assessing the credibility of each witness you will assign to the testimony of each witness, both under direct and cross-examination, such weight as you deem proper. You are not required to believe the testimony of any witness simply because that witness was under oath. You may believe or disbelieve all or part of the testimony of any witness.

---

[3] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

It is within your province to determine what testimony is worthy of belief and what testimony may not be worthy of belief.

**004 Weight of the Evidence[4] Att004**

The weight of the evidence is not necessarily determined by the number of witnesses testifying on either side. You should consider all the facts and circumstances in evidence to determine which of the witnesses are worthy of belief. You may find that the testimony of a small number of witnesses on a particular issue is more credible than the testimony of a greater number of witnesses on the other side of that issue.

In reviewing the evidence, you should consider the quality of the evidence and not the quantity. It is not the number of witnesses or the quantity of testimony that is important but the quality of the evidence that has been produced that is important. You will consider all of the evidence no matter which side produced or elicited it because there are no property rights in witnesses or in the evidence that is presented.

---

[4] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

**005 Statements and Objections by Counsel[5] Att005**

During the course of the trial you have heard certain statements, arguments and remarks from counsel. These are intended to help you to understand the evidence and to apply the law to this case. However, in the event that counsel have made any statements concerning the evidence that are contrary to your recollection of the evidence, then you must rely upon your own recollection of the evidence as the basis for your decision. If counsel have made any statements concerning the law that are contrary to my instructions, you must take the law from me. You are not to be concerned with the wisdom of any rule of law. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than the law as I give it to you in my instructions.

From time to time during the course of the trial counsel have made objections. This is a proper function to be performed by counsel on behalf of their respective clients. You should not concern yourself with the fact that objections have been made, nor with my rulings on those objections. I must rule on objections and I have not intended to indicate in any way by my rulings or by what I have said what the verdict should be in this case.

In this case, as in all cases, I am completely neutral and impartial. It is up to you to determine whether the plaintiffs have proved their case based on the facts as you find them to be and the law as I give it to you.

---

[5] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

**006 What Is and Is Not Evidence[6] Att006**

The direct evidence in this case consists of:

(1) the sworn testimony of the witnesses, both on direct and cross-examination, regardless of who may have called the witness;

(2) the exhibits which have been received into evidence; and

(3) any facts to which all lawyers have agreed or stipulated.

Certain things are not evidence and cannot be considered by you as evidence:

(1) Arguments and statements by lawyers are not evidence. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by objections or by my ruling on objections.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at trial.

---

[6] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

**007 Direct and Circumstantial Evidence[7] Att007**

There are two types of evidence which you may properly use in deciding this case.

Direct evidence is the testimony given by a witness about what that witness has seen, has heard or has observed, or what that witness knows based on personal knowledge. Direct evidence also includes any exhibits that have been marked and any stipulations which have been agreed to by the lawyers for both sides.

Evidence may also be used to prove a fact by inference and this is referred to as circumstantial evidence. In other words, from examining direct evidence you may be able to draw certain inferences which are reasonable and justified in light of your daily experience and your common sense. Such reasonable inferences constitute circumstantial evidence.

---

[7] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

**008 Evidence Admitted for a Limited Purpose[8] Att008**

During the course of the trial, I may have instructed you that certain evidence was being admitted for a limited purpose. It is your duty to follow these instructions during your deliberations.

---

[8] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

**009 Burden of Proof[9] Att009**

In a civil case such as this, the party having the burden of proof on an issue must satisfy you that its claims on that issue are more probably so than not. This is referred to as proof by a preponderance of the evidence.

The party having the burden of proof does not have to prove its claim beyond a reasonable doubt as is required in a criminal case, nor does the party with the burden of proof have to prove its claim to a certainty. To meet its burden of proof, a party must prove that its claims are more probably so than not.

As an example, imagine in your mind the scales of justice. Put all the credible evidence on the scales, with the evidence in favor of the party having the burden of proof on one side of the scales and the evidence in favor of the other party on the other side. If the scales tip, ever so slightly, for the party having the burden of proof, then on that issue that party has sustained its burden. If the scales tip in favor of the other side, or remain in balance, then the burden of proof has not been satisfied.

---

[9] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

**010 Preponderance of the Evidence[10] Att010**

A preponderance of the evidence simply means that quantity and quality of evidence necessary to persuade you that a party's claim is more likely true than not true. Think of a set of scales. At the beginning of the trial they are perfectly balanced and even. At the end of the trial, if they have been tilted by the evidence ever so slightly toward the party with the burden of proof, then that party has met its burden. If, on the other hand, they remain even, or tip ever so slightly in the other party's favor, then the party with the burden of proof has not met its burden.

In deciding whether any claim has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any one of the essential elements of a party's claim by a preponderance of the evidence, you should find for the other party as to that claim.

---

[10] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

011 Nature of Action – Parties' Claims and Burdens of Proof[11]

This is an action for trademark infringement. The plaintiff, Visible Systems Corporation, alleges that defendant, Unisys Corporation, has committed trademark infringement and unfair competition under both state and federal law. Both claims arise from Defendant Unisys Corporation's use of the mark "3D Visible Enterprise" starting in June 2004.

The plaintiff in a trademark action has the burden of proving by a preponderance of the evidence that it is the owner of a valid trademark and that defendant infringed that trademark. In this case, Plaintiff Visible Systems Corporation contends that it is the owner of the several valid marks, some registered on the Principal Register of the United States Patent and Trademark Office and some unregistered. I will explain the effect registration has upon a claim of trademark infringement in a subsequent instruction.

Plaintiff claims that, on November 19, 1985, it registered as trademarks the phrases "Visible Systems Corporation" and "Visible Systems." Plaintiff claims that it has used these marks to designate its products and services continuously since that time. Plaintiff also asserts that these two registered marks have become "incontestable" under the law. I will explain the significance of the term "incontestable" to you in a subsequent instruction.

Plaintiff also claims that, continuously since its founding in 1984, it has used the word "Visible" in a series of unregistered trademarks and service marks that have served as the names of its various products and services, such as Visible Advantage, Visible

---

[11] From the instruction in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005; see also 15 U.S.C.A. §§ 1114 and 1125; 3A-59 *Federal Jury Practice and Instructions*, § 159.60 (West Group 5th ed.); 3A-59 *Federal Jury Practice and Instructions*, § 159.49 (West Group 5th ed.).

Advisor, Visible Analyst, Visible Consulting, Visible Developer, Visible Enterprise Workbench, and others. Plaintiff contends that it registered the word "Visible" as a trademark on December 11, 2001, and that it also registered the word "Visible" as a service mark on March 12, 2002.

Plaintiff claims that, by using the mark "3D Visible Enterprise" and other marks including the word "Visible," defendant has used plaintiff's mark without its permission and that defendant's infringement was willful. Plaintiff seeks money damages from defendant for infringement.

Defendant denies plaintiff's allegations and asserts several defenses: that plaintiff's trademark are invalid, that [other affirmative defenses]. Defendant has the burden of proving each of these defenses by a preponderance of the evidence.

In this case, state and federal trademark law are identical.

**012 Definitions of Trademark, Service Mark, Mark Att012**

A trademark is a word, symbol or device, or any combination thereof, that is entitled to protection under trademark law. Trademarks are used to distinguish the source, sponsorship, or affiliation of goods or services from goods and services offered by others. It is not necessary that a trademark be registered with the federal government to be entitled to protection. Trademark rights arise from use in commerce.[12]

In a similar way, a "service mark" is any word, name, symbol, or device, or combination used to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown.[13]

The term "mark" is often used to refer generally to various types of mark protected by the trademark law, such as trade and service marks.[14]

---

[12] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

[13] See 15 U.S.C.A. §§ 1053, 1127; *American Int'l Group v. American Int'l Bank*, 926 F.2d 829, 830 n. 1 (9th Cir.1991) ("Generally speaking, a service mark is a distinctive mark used in connection with the sale or advertising of services .... "); 3A-59 *Federal Jury Practice and Instructions*, § 159-42 (West Group 5th ed.)

[14] 15 U.S.C.A. § 1127; *New Kids on the Block v. New America Pub., Inc.*, 971 F.2d 302, 306 (9th Cir.1992); 3A-59 *Federal Jury Practice and Instructions*, § 159-40 (West Group 5th ed.)

**013 Trademark Infringement[15] Att013**

To prevail on its trademark infringement claims, plaintiff has the burden of proving the following three elements by a preponderance of evidence:

   a.  That plaintiff's use of the mark is entitled to protection under trademark law;

   b.  That defendant has used the same mark or a similar mark; and

   c.  That defendant's use is likely to confuse the public, thereby harming the plaintiff. [16]

The "public" whose confusion is relevant is not limited to actual or potential purchasers, but also includes others whose confusion threatens the trademark owner's commercial interest in its mark.[17] Confusion is relevant when it exists in the minds of persons in a position to influence the purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner.[18] Relevant confusion among non-purchasers may well extend beyond the confusion of those persons positioned to influence directly the decisions of purchasers. Public confusion among non-purchasers is actionable if it will adversely affect the plaintiff's ability to control its reputation.[19]

---

[15] Except where specifically referenced otherwise, this instruction is taken from the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

[16] *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir.1992), cert. denied, 509 U.S. 923, 113 S.Ct. 3039. 125 L.Ed.2d 725 (1993).

[17] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 16 (1st Cir. 2004).

[18] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 10 (1st Cir. 2004); 3 McCarthy on Trademarks and Unfair Competition § 25:5 (4th ed. 1996).

[19] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 16-17 (1st Cir. 2004); *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 128 (4th Cir. 1990).

The relevant harm to the plaintiff trademark owner is not restricted to the loss of sales to actual and prospective buyers of the products or services in question. It includes not only loss of sales, but also harm to the trademark holder's goodwill and reputation,[20] and even the plaintiff trademark owner's loss of control over its reputation.[21]

---

[20] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 10 (1st Cir. 2004); 3 McCarthy on Trademarks and Unfair Competition § 25:5 (4th ed. 1996).

[21] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 15 (1st Cir. 2004) (citing cases).

014 Infringement – LOC, Circumstantial Proof of Harm to Goodwill

     In a trademark infringement case, harm to goodwill may be inferred from circumstantial evidence; direct evidence is not required.[22]

---

[22] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 17 (1st Cir. 2004).

015 Entitlement to Protection – Prerequisites[23]

In this case, to show that its mark or marks are entitled to any form of trademark protection, the plaintiff must show that its mark or marks:

(a)  are used in commerce, and

(b)  are distinctive.

---

[23] *I.P. Lund Trading v. Kohler Co.*, 163 F.3d 27, 36 (1st Cir. 1998) (lists three prerequisites, use in commerce, non-functionality and distinctiveness); *Hasbro, Inc. v. Clue Computing, Inc.*, 66 F.Supp.2d 117, 121 n. 4 (D. Mass. 1999). As the instant case is not a trade-dress case, the non-functionality prerequisite is not in issue.

016 Prerequisite – Use in Commerce[24]

"Use in Commerce" means that the owner has used the mark in interstate
commerce.

---

[24] *Quabaug Rubber Co. v. Fabiano Shoe Co*., 567 F.2d 154, 160 (1st Cir.1977); *Tiffany & Co. v. Boston Club, Inc.*, 231 F.Supp. 836, 841 (D.Mass. 1964) (describing the minimal interstate connections necessary to establish jurisdiction under the Lanham Act); *Calamari Fisheries, Inc. v. The Village Catch, Inc*., 698 F.Supp. 994, 1006 (D.Mass. 1988); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 43 (D. Mass. 1995); *Boustany v. Boston Dental Group*, 42 F.Supp.2d 100, 105 (D.Mass. 1999).

017 Prerequisite – Distinctiveness[25]

   To be eligible for trademark protection, a mark must be distinctive. Whether or not a mark is distinctive presents a question of fact for you, the jury, to decide. A mark is considered distinctive if it either is inherently distinctive or has acquired distinctiveness. A mark acquires distinctiveness by acquiring secondary meaning. I will explain the meaning of "inherently distinctive" and "secondary meaning" in subsequent instructions.

---

[25] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116-117, 118 (1st Cir. 2006); *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 544 (1st Cir. 1995).

018 Distinctiveness – Continuum of/Spectrum

When considering whether a mark is distinctive, courts often classify marks along a continuum or "spectrum" of increasing distinctiveness: generic marks, descriptive marks, suggestive marks, arbitrary marks, and fanciful marks.[26]

A generic mark is a term that has passed into common usage to identify a product, such as aspirin. A generic mark can never be protected. A descriptive mark can be protected, but only if it has acquired "secondary meaning." I will explain the meaning of "secondary meaning" to you in a subsequent instruction. Suggestive, arbitrary and fanciful marks can be protected without proof of secondary meaning. They are considered "inherently distinctive" and are automatically entitled to trademark protection.[27]

Whether a term is generic, descriptive, or inherently distinctive is a question of fact for you, the jury to decide.[28] Similarly, whether a mark has acquired secondary meaning is also a question of fact for you, the jury, to decide.[29]

---

[26] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 39 (1st Cir. 1998); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006).

[27] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006); *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,* 9 F.3d 175, 180 (1st Cir. 1993).

[28] *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,* 9 F.3d 175, 180 (1st Cir. 1993); see *Wiley v. American Greetings Corp.*, 762 F.2d 139, 141 (1st Cir.1985).

[29] *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,* 9 F.3d 175, 180 (1st Cir. 1993); *Volkswagenwerk AG v. Wheeler*, 814 F.2d 812, 816 (1st Cir.1987).

019 Distinctiveness – Spectrum, Detailed Explanation of[30]

   To assist you in determining where a particular mark falls on the distinctiveness "spectrum," I will describe the classifications of distinctiveness in greater detail

   A **generic mark** is the common name for a product, such as aspirin[31] or butter.[32] It refers to the genus of which the particular product is a species. There can be no trademark rights in a generic mark; it can never receive trademark protection.[33] A generic mark remains in the public domain as part of our language.[34]

   A **descriptive mark** is one that identifies or describes a characteristic or quality of a product, such as its intended use, ingredients, or desirable features. For example, "Tender Vittles" is a descriptive term for cat food.[35] A descriptive mark must so clearly denote the goods that the consumer does not have to exercise any powers of perception or imagination.[36] A mark which is merely descriptive of a product is not inherently

---

[30] The outline of this instruction is taken from *Boustany v. Boston Dental Group,* 42 F.Supp.2d 100, 105 (D.Mass. 1999).

[31] *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,* 9 F.3d 175, 180 (1st Cir. 1993).

[32] 4-86A *Modern Federal Jury Instructions-Civil,* P 86A-11 (Matthew Bender 3d ed.); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219, 1242-1250 (D. Colo. 1976), modified on other grounds, 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773, 112 S. Ct. 2753, 2760, 120 L. Ed. 2d 615 (1992).

[33] *Two Pesos*, *Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753, 2760, 120 L. Ed. 2d 615 (1992); *Park `N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

[34] 4-86A *Modern Federal Jury Instructions-Civil,* P 86A-11 (Matthew Bender 3d ed.)

[35] 4-86A *Modern Federal Jury Instructions-Civil,* P 86A-11 (Matthew Bender 3d ed.); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219, 1242-1250 (D. Colo. 1976), modified on other grounds, 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773, 112 S. Ct. 2753, 2760, 120 L. Ed. 2d 615 (1992).

distinctive; when used to describe a product, such a descriptive mark is not entitled to protection. However, a descriptive mark can acquire distinctiveness, entitling it to trademark protection, by acquiring "secondary meaning." I will explain the meaning of "secondary meaning" to you in a subsequent instruction.[37]

A **suggestive mark** is a mark which connotes rather than describes a particular product or service; it requires the consumer's imagination to reach a conclusion as to the nature of the product or service.[38] For example, "Chicken of the Sea" is a suggestive mark for tuna.[39] "Stronghold" is a suggestive mark for threaded nails, suggesting their superior holding power.[40] If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but suggests them.[41]

An **arbitrary mark** is a mark made up of words, symbols, pictures, etc., that are in common linguistic use but which, when used with the goods or services in issue,

---

[36] *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1007 (D.Mass. 1988).

[37] *Two Pesos*, *Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S. Ct. 2753, 2760, 120 L. Ed. 2d 615 (1992).

[38] *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1007 (D.Mass. 1988); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 374 n. 8 (1st Cir.1980).

[39] See 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th Ed.1998) § 11:72, at 11-121.

[40] 4-86A *Modern Federal Jury Instructions-Civil,* P 86A-11 (Matthew Bender 3d ed.), citing *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219, 1242-1250 (D. Colo. 1976), modified on other grounds, 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978).

[41] ♦-18 *Modern Federal Jury Instructions-Civil*, P 18.08 (Matthew Bender 3d ed.).

neither suggest nor describe any ingredient, quality or characteristic of those goods or services. For example, "Stork Club" is an arbitrary mark for a night club.[42]

A **fanciful mark** is made up of "coined" words that have been invented or selected for the sole purpose of functioning as a trademark. For example, CLOROX for bleach.[43]

---

[42] See 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th Ed.1998) §§ 11:11, at 11-15; 11:13, at 11-18.

[43] See 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th Ed.1998) §§ 11:5, at 11-11; 11:8, at 11-13.

020 Distinctiveness – Effect of Difference Senses and Markets

In determining the distinctiveness of a trademark, you should consider the sense in which a trademark term is used and the market in which it is used. A term that is in one distinctiveness classification when used for a particular product or service may be in quite a different classification when used for a different product or service. For example, the term "Ivory" would be generic when used to describe a product made from the tusks of elephants but arbitrary when used as a mark for soap.[44] In addition, a term may be generic in one market and descriptive or suggestive or fanciful in another.[45] That a word has a common sense does not prevent it from being suggestive or imaginative when used in an uncommon way.[46]

As an example, let us consider the different ways in which the word "apple" may be used as a mark.[47]

When the word "apple" is used to identify the fleshy, red fruit from any apple tree, it is used in a generic way and is not be entitled to any trademark protection.

---

[44] *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 n. 6 (2d Cir. 1976).

[45] *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir. 1976).

[46] See *Skil Corporation v. Barnet*, 337 Mass. 485, 491, 150 N.E.2d 551 (Mass. 1958) ("Skil," an ordinary English word found imaginative as applied to an inanimate object – a saw - which could not literally possess skill; so used the word was not merely descriptive.); see also *Miller Brewing Company v. G. Heileman Brewing Company, Inc.*, 561 F.2d 75, 80 n. 7 (7th Cir. 1977) ("[A] word that is generic when used in its ordinary sense can be classified at the other end of the spectrum, arbitrary or fanciful, if used in an arbitrary or fanciful sense."); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir. 1976).

[47] The following discussion is taken from ♦-18 *Modern Federal Jury Instructions-Civil*, P 18.08 (Matthew Bender 3d ed.), citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10-11 (2d Cir.1976) (setting forth spectrum of marks from arbitrary to generic); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)

However, when used in the trademark "CranApple" to designate a cranberry-apple juice, the word "apple" is descriptive. It directly describes ingredients of the juice.

But when "apple" is used as part of the mark "Apple-A-Day" Vitamins, it is being used as a suggestive trademark. A suggestive use of a word is one which leads consumers to associate the qualities the word suggests with the product or service to which the word is attached. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" Vitamins.

Finally, when the word "apple" is used by "Apple" Computers to identify the personal computers that the company sells, its use of the word "apple" is arbitrary or fanciful because "apple" does not describe and is not related to what the computer was, its components, ingredients, quality, or characteristics. Used in this sense, "Apple" arbitrarily designates for consumers that the computer comes from a particular manufacturer or source.

However, neither the computer maker who uses the word "apple" to identify its personal computer nor the vitamin maker who uses that word on vitamins has any claim for trademark infringement against the grocer who uses the same word to indicate the fruit sold in a store. As used by the grocer, the word is generic and does not indicate any particular source of the product. As applied to the fruit, "apple" is simply the common name for what is being sold.

021 Distinctiveness – Relevant Market

In determining whether a mark is descriptive,[48] as opposed to inherently

distinctive, or whether it has acquired distinctiveness through secondary meaning,[49] or

whether its inherent or acquired distinctiveness has been affected by third-party use[50]

(which I will address in a subsequent instruction), you should consider how the mark is

perceived or used by prospective purchasers or parties in the same field as the mark's

owner, not by the public in general.

---

[48] See *Educational Development Corp. v. Economy Corp.*, 562 F.2d 26, 29 (10th Cir. 1977).

[49] *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 42 (1st Cir. 1998) ("Secondary meaning may be determined with reference to a particular trade or "branch of the purchasing public."); *Flynn v. AK Peters, Ltd.,* 377 F.3d 13, 19 (1st Cir. 2004); *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,* 9 F.3d 175, 181 (1st Cir. 1993); *President and Trustees of Colby College v. Colby College-N.H,* 508 F.2d 804, 808 (1st Cir. 1975); *Brandon v. Regents of the University of California,* 441 F.Supp. 1086, 1091 (D.Mass. 1997).

[50] *Pizzeria Uno Corporation v. Temple*, 747 F.2d 1522, 1531 (4th Cir. 1984); *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1008 (D.Mass. 1988).

022   Distinctiveness – Distinguishing Between Suggestive and Descriptive Marks,
      Imagination Test, Examples

It can be difficult to distinguish between suggestive and descriptive marks.[51] So I
remind you that a term is suggestive if it requires imagination, thought and perception to
reach a conclusion as to the nature of goods or services to which it applies; a term is
descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or
characteristics of the goods or services.[52]

A descriptive mark must describe the goods or services to which it applies in a
straightforward way that does not require the exercise of the imagination.[53] Descriptive
terms do not require any intervening imagination to link them to the subject goods or
services; they "immediately conjure up the thought of the subject goods."[54]  Some
examples may be useful in illustrating this.

For example, where a trademark owner used the word "Attrezzi," an Italian word
meaning "tools," as a trademark for its business of selling small appliances and kitchen
tools, the court found that its trademark was suggestive, explaining that while "kitchen
tools" may have been descriptive of plaintiff's business, "tools" by itself  was suggestive

---

[51] See *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1008 (D.Mass. 1988); *Pizzeria Uno Corporation v. Temple*,  747 F.2d 1522, 1528 (4th Cir. 1984).

[52] *Blinded Veterans Ass'n v. Blinded American Veterans Foundation*, 872 F.2d 1035, 1040 (D.C.Cir. 1989); *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 544 (1st Cir. 1995).

[53] From the instruction in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

[54] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 545 (1st Cir. 1995).

because it "suggest[ed] a similarity, not an identify, between ordinary workman's tools and electrical appliances or the like used by a chef."[55]

    In another case, a trademark owner used the trademark "Equine Technologies" to describe its business of manufacturing hoof pads for horses. The court determined that the trademark was suggestive rather than descriptive because while the mark might reasonably be thought to suggest that the product to which it applies has to do with horses, it did not convey information about plaintiff's product or its intended consumers. Rather, it required imagination to connect the term "Equine Technologies" to hoof care products, in general, and to the trademark owner's product in particular.[56]

    Finally, in a case in which a trademark owner used the term "360°" as a trademark for athletic shoes it manufactured with circular cleats attached to the soles, the court found that the trademark was suggestive rather than descriptive. The court explained that while the term "360°" was perhaps descriptive of the cleat on the sole of the shoe, it was suggestive of the shoe as a whole because it did not directly convey to the buyer the ingredients, qualities, or characteristics of the product. To understand the connection between the trademark and the product, one had to remember that 360 is the number of degrees in a circle, somehow connect that circle to movement, and imagine that the mark relates to pivotability of the shoe.[57]

---

[55] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 38 (1st Cir., 2006).

[56] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 545 (1st Cir. 1995).

[57] *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 51 (D.Mass. 1990).

**023 Suggestive[58] Att015**

A mark is "suggestive" if a consumer must use his or her imagination to reach a conclusion about the nature of the goods or services offered under the mark. The more imagination the consumer must rely on to envision the nature of goods or services sold from the mark, the more likely it is that the mark is "suggestive." For instance, the use of the word "apple" in "Apple-A-Day" vitamins is "suggestive" because it does not describe what vitamins are. Rather, consumers must first imagine that "apple" is associated with health, in order to then associate the word "apple" with a vitamin product line that is meant to keep its customers healthy. A mark is "descriptive" rather than "suggestive" if it describes the characteristics, or the intended purpose, function, or use of the services or goods sold under the mark in a straightforward way that does not require exercise of the imagination. For instance, the word "apple" is "descriptive" when used in the trademark "CranApple" to designate cranberry-apple juice.

---

[58] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

024 Distinctiveness – Suggestiveness, Equally Effective Word Test

In addition to the imagination test, another way to determine whether a trademark owner's mark is suggestive rather than descriptive is to look at whether a competitor needs to use the term to describe its goods or services or whether there are other, equally effective words are available.[59]  The existence of alternative terms to describe the product or service indicates that competitors will not lose the ability to identify their goods or services if trademark protection is granted and that the owner's mark is suggestive rather than descriptive.[60]

---

[59] *Educational Development Corp. v. Economy Co.*, 562 F.2d 26, 29 (10th Cir.1977); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 51 (D.Mass. 1990).

[60] See *American Historic Racing Motorcycle Association, Ltd. v. Team Obsolete Promotions*, 33 F.Supp.2d 1000, 1005 (M.D.Fla. 1998).

025 Distinctiveness – Suggestive, Different Senses[61]

That a data or business model may be capable of being seen, i.e., that it may be visible, on a computer screen as a result of using plaintiff Visible Systems Corporation's software products or services does not necessarily mean that the term "VISIBLE," when used to denote plaintiff's products and services, is descriptive. A term may be descriptive in one sense (e.g., appearance) and suggestive in another (e.g., function). You must determine whether one or more of plaintiff's marks are descriptive or suggestive on the basis of all the evidence.

---

[61] *Trak Incorporated v. Benner Ski KG*, 475 F.2d 1076, 1080 (D.Mass. 1979) (while mark had descriptive senses, as applied to the product's function, which was the product's key feature, the mark was suggestive).

026 Distinctiveness – Suggestiveness, Metaphor

A metaphor is a figure of speech in which a term is transferred from the object it ordinarily designates to an object it may designate only by implicit comparison or analogy, as in the phrase "evening of life."[62] Metaphors are by their nature suggestive.[63]

You must decide, on the basis of all the evidence, whether one or more of plaintiff Visible Systems Corporation's marks is used in a descriptive sense as applied to its products and services or in a metaphorical sense.

As an example, you may consider a case in which the trademark owner used the word "Popcorn" as a mark for silver anodes it manufactured for use in the electroplating industry. The court found that the mark was suggestive, explaining that "The anodes are not themselves popcorn. They are not made of popcorn, and they are not used in the manufacture of popcorn. In the context of silver anodes, then, the name 'Popcorn' is neither a generic term nor an actual description of any 'function, use, characteristic, size, or intended purpose of the product.' [citation omitted] RFE's 'Popcorn' mark is instead a metaphor; it cleverly conjures or suggests an image that its product vaguely resembles. The name therefore 'reinforces the association between the product and its source--a sure sign of a mark entitled to protection.' [citation omitted]"[64]

---

[62] *The American Heritage Dictionary of the English Language*, William Morris, ed. (Houghton Mifflin Co., Boston, 1976), p. 825.

[63] *RFE Industries, Incorporated v. SPM Corporation*, 105 F.3d 923, 926 (4th Cir. 1997).

[64] *RFE Industries, Incorporated v. SPM Corporation*, 105 F.3d 923, 926 (4th Cir. 1997).

027 Distinctiveness – PTO Determination

In determining whether a mark is descriptive or inherently distinctive, you may consider what the United States Patent and Trademark Office has determined with respect to the mark.[65]

---

[65] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 119-20 (1st Cir. 2006); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 934 (4th Cir. 1995).

028  Distinctiveness – Suggestive, Third-Party Use, Effect of Third-Party Registrations, Different Descriptive Properties

In determining whether a particular word has a descriptive or suggestive significance as applied to a field of merchandise or service, it is proper to take notice of the extent to which it has been used in trademarks by others in the same field.[66]

The proliferation of identical or similar marks in the same industry may indicate that Plaintiff's marks are descriptive, rather than suggestive.[67]

However, because the United States Patent and Trademark Office requires an applicant to demonstrate that its mark is distinctive before it will approve a registration, evidence of the successful registration of other marks which include the putatively descriptive term tends to undercut the contention that the term is merely descriptive of the owner's product.[68]

Where the goods and services which are the subject of third-party registrations are not closely related to the plaintiff trademark owner's goods and services, evidence of the third-party registrations have no probative value in determining whether the owner's mark is distinctive. That is, evidence of third-parties' use of similar marks to denote different products and services in different markets says nothing about whether the marks in this case are descriptive or suggestive with respect to the products and services in this case.[69]

---

[66] *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1008 (D.Mass. 1988); *Pizzeria Uno Corporation v. Temple*, 747 F.2d 1522, 1531 (4th Cir. 1984).

[67] *Labrador Software, Inc. v. Lycos, Inc.*, 32 F.Supp.2d 31 (D.Mass. 1999); *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1008 (D.Mass. 1988).

[68] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 119 (1st Cir. 2006).

[69] See *Conde Nast Publications, Inc. v. American Greetings Corp.*, 329 F.2d 1012, 1014-1015 (C.C.P.A. 1964) (48 third party registrations not persuasive of defendant's claim that plaintiff's

36

mark was unworthy of trademark protection where the goods subject to the registrations were not "closely related" to the goods under consideration.); see also *Morningside Group Limited v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 139 (2nd Cir. 1999) (use of a like mark in a different market for different products or services need not undermine the mark's strength in its own market.); *Scarves by Vera, Inc. v. Todo Imps. Ltd. (Inc.)*, 544 F.2d 1167, 1173-74 (2d Cir. 1976); see *Playboy Enterprises, Inc. v. Netscape Communications Corporation*, 354 F.3d 1020, 1027, n. 33 (9th Cir. 2004); *Nat'l Lead Co. v. Wolfe,* 223 F.2d 195, 204 (9th Cir. 1955) (considering, and rejecting, evidence of third-party use because use within the relevant market, for paint, was *de minimis*); see also *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 877-78 (Fed. Cir. 1992).

029   Distinctiveness – Suggestive, Third-Party Use, Effect of Third-Party Registrations,
        No Justification of Taking Registered Mark in Entirety

        Third-party registrations can never excuse a junior user's adoption of a senior

user's distinctive mark in its entirety as a part of the junior user's mark.[70]

---

[70] *Clinton Detergent Company v. Proctor & Gamble Co.*, 302 F.2d 745 (C.C.P.A. 1962); *Conde Nast Publications, Inc. v. American Greetings Corp.*, 329 F.2d 1012, 1014-1015 (C.C.P.A. 1964).

030 Distinctiveness – Suggestive, Third-Party Use, Isolated Instances

Isolated instances of descriptive use of a term by third-parties are not sufficient to turn an otherwise suggestive term into a descriptive one.[71]

---

[71] See *Caesar's World, Inc. v. Milanian*, 247 F.Supp.2d 1171, 1194-1195 (D.Nev. 2003) ("[O]ccasional generic usage does not destroy a trademark. Indeed, often the use of a trademark as a generic noun illustrates the power of a trademark."); 2 McCarthy on Trademarks and Unfair Competition § 12.8 at 12-20.)

031 Distinctiveness – Suggestive, Third-Party Use, Failure to Police Mark Not Fatal

      The fact that the plaintiff trademark owner in this case did not previously bring any infringement action against third-parties using marks similar to the marks it is attempting to protect in this case does not necessarily mean that the plaintiff's marks are not distinctive. You must consider that a trademark owner may make reasonable judgments about whether there exists a likelihood of confusion between its products and a third party's without jeopardizing the distinctiveness of its mark. It need not institute an infringement action at the slightest provocation by remote, out-of-market users.[72]

---

[72] See *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 54 (D.Mass. 1990).

**032 Secondary Meaning[73] Att016**

Even if plaintiff cannot prove that its use of the mark is suggestive, arbitrary or fanciful, you may still conclude that the mark is entitled to protection under trademark law if plaintiff proves that the mark has acquired a "secondary meaning." A mark has a "secondary meaning" if a significant percentage of the consuming public associates the mark with a single, albeit anonymous source and those consumers base purchasing decisions on the association.

A plaintiff may establish "secondary meaning" either through direct evidence of consumer understanding or circumstantial evidence such as:

(1) the lengthy use and prominent manner in which the mark has been used by the plaintiff;

(2) substantial advertising and promotion of the mark by the plaintiff; and

(3) significant efforts made by the plaintiff to promote a connection in the relevant public's mind between the mark and particular goods or services.

You may also consider the effect of "critical acclaim," that is, the mention of the products and services in issue in books, magazines or professional journals.[74]

---

[73] Except as specifically noted otherwise, this instruction is taken from the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

[74] *Brandon v. Regents of University of California*, 441 F.Supp. 1086, 1088 (D.Mass. 1997).

033 Distinctiveness – Secondary Meaning, No Time Limit

There is no particular time within which secondary meaning need be established. The question for you to determine is whether secondary meaning has been established, not in how long or short a time this was done.[75]

---

[75] *Park n Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189. 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219, 1242-1250 (D. Colo. 1976), modified on other grounds, 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978); 4-86A *Modern Federal Jury Instructions-Civil,* P 86A-12 (Matthew Bender 3d ed.)

034 Distinctiveness – Composite Mark, Salient Term

      The distinctiveness of a composite mark is determined largely on the basis of the dominant term, giving minimum weight, if any, to the non-dominant prefix.[76]

---

[76] *Pizzeria Uno Corporation v. Temple*,  747 F.2d 1522, 1533 (4th Cir. 1984)

035    Distinctiveness – Composite Marks, Combination of Descriptive Terms Into a Suggestive Whole

You should consider composite marks as wholes; the combination of two descriptive or generic terms may result in a composite mark that is suggestive.[77] The inclusion of a descriptive term in a composite mark does not necessarily mean that the mark as a whole is descriptive. A descriptive term may be included in a non-descriptive whole.[78]

---

[77] *W.W.W. Pharm. Co. v. Gillette Co.*, 808 F.Supp. 1013, 1022 (S.D.N.Y.1992) (consolidation of two descriptive or generic terms, "sport" and "stick," suggested both product's form and usage, but required some imagination to surmise nature of product, and thus was suggestive mark), aff'd, 984 F.2d 567 (2d Cir. 1993); see also *Banff, Ltd. v. Federated Dept't Stores, Inc.*, 841 F.2d 486, 489 (2d Cir. 1988) (combination of arbitrary and generic terms in mark "Bee Wear" resulted in suggestive or arbitrary mark); *Macia v. Microsoft Corporation*, 335 F.Supp.2d 507, 514 (D.Vt. 2004) (combination of descriptive words "Pocket" and "Money" in composite mark "PocketMoney" for personal finance software potentially suggestive).

[78] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 545 n. 4 (1st Cir. 1995)

036 Distinctiveness – Mode of Determination Depends on Registration Status

Both registered and unregistered trademarks may be eligible for protection against infringing uses.[79] But the proper mode of determining whether a mark is distinctive varies based on whether or not the mark is registered.[80]

[79] 15 U.S.C. §§ 1114(1), 1125(a)(1); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006); see also *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 (1st Cir.1980).

[80] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006).

037 Distinctiveness – Determination re: Unregistered Marks

When a party seeks protection for an unregistered trademark, it must demonstrate affirmatively that its mark is distinctive; it has the burden of proof to show by a preponderance of the evidence either that its mark is inherently distinctive – that is, it is a suggestive, arbitrary or fanciful mark – or that it is a descriptive mark which has acquired distinctiveness by acquiring secondary meaning.[81] Under such circumstances, you, the jury, must engage in the specific inquiry I have already described to determine whether the proponent has met its burden.[82]

---

[81] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006); *Boston Beer Company Limited Partnership v. Slesar Bros. Brewing Company, Inc.,* 9 F.3d 175, 180 (1st Cir. 1993).

[82] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006); *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 39-41 (1st Cir. 1998).

038 Owner's Right to Register Mark

You have heard me refer to the registration of a trademark or service mark. Let me now explain what "registration" means. A manufacturer or merchant that has obtained trademark rights through use of any word, name, symbol or device or any combination thereof, to identify and distinguish its goods, may apply for and obtain a certificate of registration of its trademark or service mark issued by the United States Patent and Trademark Office.[83]

---

[83] 15 U.S.C. §§ 1051, 1052, 1053, 1115(a); 4-86A *Modern Federal Jury Instructions-Civil,* P 86A-07 (Matthew Bender 3d ed.); 3A-59 *Federal Jury Practice and Instructions*, § 159-03 (West Group 5th ed.).

039  Distinctiveness – Determination re: Registered Mark, Shift of Burden of Proof to
     Defendant

To protect a mark which has been registered with the United States Patent and

Trademark Office, the trademark owner does not automatically need to show that the

mark is distinctive. The owner of a registered trademark has a lighter burden because

registration is "prima facie evidence of the validity of the registered mark." This means

that registration  shifts the burden of proof from the plaintiff owner of the registered

mark, which in a common law infringement action based on an unregistered mark would

have to establish its right to exclusive use, to the defendant, who must introduce

sufficient evidence to rebut the presumption of plaintiff's right to such use through proof

that the mark is merely descriptive.[84]

Thus, registration means that the defendant has the burden of proving that

registration for a trademark is defective or subject to a defense and that the defendant

must show such defect or defense by a preponderance of the evidence.[85]

---

[84] 15 U.S.C. § 1115(a); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 373 (1st Cir.1980); *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1007 (D.Mass. 1988).

[85] ♦-18 *Modern Federal Jury Instructions-Civil*, P 18.06 (Matthew Bender 3d ed.); see *Sengoku Works Ltd. v. RMC Intern., Ltd.*, 96 F.3d 1217, 1219-1220 (9th Cir.1996) (Registrant is granted a presumption of ownership under the Lanham Act and "challenger must overcome this presumption by a preponderance of the evidence."); *Vuitton d Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 775-776 (9th Cir.198l) (presumption of validity of a registered mark must be overcome by a preponderance of the evidence).

040 Effect of Registration, Constructive Notice

Once plaintiff registered its marks, defendant was put on constructive notice of plaintiff's claims of ownership in said registered marks. The effect of this constructive notice is that the use of a mark which is the same or confusingly similar to plaintiff's mark, as stated in its federal registration certificate, cannot be justified by a claim of innocence, good faith or lack of knowledge on the part of a junior user.[86]

---

[86] 15 U.S.C. § 1072; *Perfumania, Inc. v. Perfulandia, Inc.*, 279 F.Supp.2d 86, 97 (D.P.R. 2003); *Geoffrey, Inc. v. Toys `R Us*, 756 F.Supp. 661, 665 (D.P.R.1991).

041 Distinctiveness – Registered Mark, Defendant's Burden of Proof in Detail

The defendant putative infringer of a registered mark may defend an infringement suit on the ground that the mark does not merit protection because it is merely descriptive of the product.[87] But the defendant must offer significantly probative evidence to show that the mark is merely descriptive. Then—and only then—does the burden of proof shift back, so that the party seeking protection must go forward with proof of secondary meaning.[88]

To shift the burden of proof of secondary meaning back to the party seeking protection, that is, back to the plaintiff trademark owner, the defendant may not simply allege descriptiveness; it must prove descriptiveness by a preponderance of the evidence.[89] The defendant's burden is not simply to show that the mark describes a feature of the trademark holder's product; rather, it must show that consumers regard the mark as merely descriptive of that product.[90]

---

[87] 15 U.S.C. § 1115(a); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006)

[88] *Flexitized, Inc. v. Nat'l Flexitized Corp.*, 335 F.2d 774, 779-80 (2d Cir.1964); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 118 (1st Cir. 2006)

[89] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 118 (1st Cir. 2006); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 373 (1st Cir.1980).

[90] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 119 (1st Cir. 2006) (putative infringer's argument that a registered mark which meant "tasty" or "rich" should be considered descriptive because it described a desirable characteristic of a cookie or cracker held insufficient to overcome the presumption.); *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 545 (1st Cir. 1995); *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 27 (1st Cir. 1989) (when a party challenges the validity of a registered mark, it must show that the primary significance of the mark to the consuming public is to merely describe a particular product).

Where the defendant presents minimal evidence and argument in support of its descriptiveness defense, it cannot overcome the presumption of distinctiveness created by registration.[91]

If the defendant does not succeed in coming forward with significantly probative evidence of the mere descriptiveness of a registered mark, the presumption holds, distinctiveness is presumed, and you may proceed to consider the remaining elements of the infringement claim without first demanding that the trademark holder offer proof of secondary meaning.[92]

---

[91] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 118 (1st Cir. 2006) (where putative infringer conducted no survey or adduced any comparable evidence to support its contention that owner's registered mark was merely descriptive, proof was insufficient to overcome the presumption).

[92] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 118 (1st Cir. 2006); *PIC Design Corp. v. Bearings Specialty Co.*, 436 F.2d 804, 807 (1st Cir. 1971).

042 Effect of Registration without Secondary Meaning

      When the United States Patent and Trademark Office registers a mark without first requiring the applicant to prove secondary meaning, the holder of the mark is entitled to a presumption that its registered trademark is inherently distinctive, as opposed to merely descriptive.[93]

---

[93] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006); *Equine Technologies., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 545 (1st Cir.1995); see *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 161, n. 12 (1st Cir.1977) ("registration is prima facie evidence that the . . . mark is distinctive per se").

043 Distinctiveness – Definition of and Effect of Incontestability

When a trademark has been in continous use for five consecutive years following the date of its registration and the trademark owner has filed an affidavit attesting to such continuous use with the United States Patent and Trademark Office, the registration is said to become "incontestable." If the registered mark has become incontestable, the presumption of inherent distinctiveness on registration without proof of secondary meaning becomes conclusive[94] and an infringement claim may be based solely on the registration.[95]

Incontestable status entitles a mark to "substantial protection."[96] A defendant putative infringer may not argue that an incontestable mark is not distinctive because it is merely descriptive.[97]

---

[94] 15 U.S.C. §§ 1065, 1115(b); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006)

[95] *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 205, 105 S.Ct. 658, 667, 83 L.Ed.2d 582 (1985); *Keds Corp. v. Renee Intern. Trading Corp.*, 888 F.2d 215, 220 (1st Cir. 1989).

[96] *Lone Star Steakhouse & Saloon, Incorporated v. Alpha of Virginia, Incorporated*, 43 F.3d 922, 935 (4th Cir. 1995); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir.1986).

[97] *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 196, 105 S.Ct. 658, 662-63, 83 L.Ed.2d 582 (1985); *Keds Corp. v. Renee Intern. Trading Corp.*, 888 F.2d 215, 220-221 (1st Cir. 1989); *Re v. Smith*, 2005 WL 1140769, *3, 2005 U.S. Dist. LEXIS 8985, 77 U.S.P.Q.2d (BNA) 1858 (D.Mass., Slip Opn., May 11, 2005).

044 Composite Mark – Effect of Disclaimer

In a composite mark, the word not disclaimed is generally regarded as the dominant or critical term.[98]

---

[98] See *Pizzeria Uno Corporation v. Temple*,  747 F.2d 1522, 1529-1530 (4th Cir. 1984).

045 Distinctiveness – Effect of Incontestability, Salient Term

Words which are the salient feature of an incontestable mark are protected as incontestable, despite the separate, non-incontestable registration of same words.[99]  Thus, if you find that the word "Visible" is the salient or dominant term in one or both of plaintiff's incontestable marks, defendant is foreclosed from arguing that "Visible" is a descriptive term undeserving of trademark protection wherever plaintiff uses it, whether in plaintiff's incontestable marks, its registered marks or its unregistered marks.[100]

---

[99] *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 192 n.2, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 603-604 (9th Cir. 2005).

[100] See *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 603-604 (9th Cir. 2005).

046 Trademark Infringement – Prerequisites – Reprise[101]

If you find that one or more of plaintiff's unregistered or registered marks are entitled to trademark protection, then plaintiff still has the burden of proving two additional elements by a preponderance of evidence to prevail on its trademark infringement claims. As I mentioned previously (in Instruction #013, above – "Trademark Infringement"), plaintiff must also show:

- That defendant has used the same mark or a similar mark; and

- That defendant's use is likely to confuse the public, thereby harming the plaintiff. [102]

---

[101] Except where specifically referenced otherwise, this instruction is taken from the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

[102] *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir.1992), cert. denied, 509 U.S. 923, 113 S.Ct. 3039. 125 L.Ed.2d 725 (1993).

**047 Proving Likelihood of Confusion[103] Att017**

To recover on its trademark infringement claims, plaintiff must prove that defendant's use of the mark is likely to cause confusion as to whether the goods or services offered by plaintiff under the mark share the same source, sponsorship, or affiliation as the goods that defendant offers under the mark.

Proof of actual confusion is not required, although such evidence is relevant. Instead, it is enough if you find that it is more likely than not that defendant's use of the mark will cause confusion. Confusion must be likely among an appreciable number of members of the relevant public[104] who are using reasonable care under the circumstances to identify the source of the goods or services.

You may consider the nature and price of the goods or services offered under the mark by both parties as well as the sophistication of consumers of the goods and services in making this determination.

You may consider a number of factors in determining whether defendant's use of the mark is likely to cause confusion. No one factor is necessarily determinative. The relative weight that is assigned to any factor will differ from case to case and not every factor may be relevant. It is up to you to decide what weight, if any, to assign to any factor in this case.

Among the factors that you may consider are:

---

[103] Except as specifically noted otherwise, this instruction is taken from the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

[104] See *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 16 (1st Cir. 2004), mentioned in Instruction Att013 TRADEMARK INFRINGEMENT, above.

a.  the similarity of the marks used by plaintiff and defendant to identify their goods
    and services;

b.  the similarity between the goods and services offered by plaintiff under the mark
    and the goods offered by defendant under the mark;

c.  evidence of actual confusion;

d.  the similarity in the classes of prospective purchasers;

e.  the similarity of channels of trade;

f.  the similarity of advertising;

g.  defendant's intent to confuse, if any, in adopting and using the mark; and

h.  the relative strengths of the marks.

Evidence of similarity of mark, prospective purchasers, channels of trade, or
advertising, and evidence of actual confusion or intent to copy, either alone or in
combination with other relevant factors, may support a claim of likelihood of confusion.

In this case, evidence that defendant's use of the mark is relatively stronger than
plaintiff's use of the mark also may support a claim of likelihood of confusion. It is up to
you to decide how, if at all, any of these factors apply in this case.

When you assess the similarity of the marks, you should examine the total effect of
the marks, including any house mark that is used with the challenged mark. It is up to you
to decide what effect, if any, defendant's use of the mark together with the house mark
has on plaintiff's infringement claim.

048 Infringement – LOC Is Key Determination

      Whether brought under state or federal law, the central issue in trademark infringement cases is whether the allegedly infringing use creates a likelihood of confusion.[105]

      The law requires that the plaintiff trademark owner show that the allegedly infringing conduct carries with it a likelihood of confusing an appreciable number of reasonably prudent purchasers exercising ordinary care.[106]

      In the "typical" trademark infringement case, the likelihood of confusion inquiry centers on whether members of the purchasing public are likely to mistake one party's products or services for another party's protected products or services within the same category.[107] To demonstrate infringement, the plaintiff must show by a preponderance of the evidence that there is a likelihood that an appreciable number of ordinary prudent purchasers will be misled, or simply confused, as to the source of the goods in question.[108]

      But the likelihood of confusion inquiry can also focus upon whether members of the purchasing public are likely to believe that the plaintiff produces, licenses, or otherwise

---

[105] *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486-87, 492-93 (1st Cir.1981) (claims under Lanham Act and Mass.Gen.L. ch. 110B, § 11); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 44 (D. Mass. 1995); *Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp. 48, 54 (D.Mass. 1993).

[106] *International Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201 (1st Cir. 1996).

[107] *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 28 (1st Cir.1989).

[108] 15 U.S.C.A. §§ 1114(1), 1125(a); see *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1428 (3d Cir.1994), cert. denied, 514 U.S. 1103, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995); *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1184 (7th Cir.1989); 3A-59 *Federal Jury Practice and Instructions*, § 159.49 (West Group 5th ed.).

endorses the defendant's products.[109] Confusion over the nature of the parties' business relationship may be as objectionable for purposes of trademark infringement as is confusion between their goods.[110] I will describe the types of confusion which can trigger trademark protection in more detail in a later instruction.

---

[109] *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 28-29 (1st Cir.1989).

[110] *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 490 (1st Cir.1981).

049 LOC – Types of Confusion, Typical and Business Relation

Typically, the confusion inquiry centers on whether members of the purchasing public are likely to mistake one party's products or services for another party's protected products or services within the same category.[111]

But, in business relation confusion cases, the likelihood of confusion inquiry also focuses upon whether members of the purchasing public are likely to believe that the plaintiff produces, licenses, or otherwise endorses the defendant's products.[112]

---

[111] *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 28-29 (1st Cir. 1989); *Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp. 48, 54 (D.Mass. 1993).

[112] *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 490 (1st Cir. 1981) ("Confusion over the nature of the parties' business relationship may be as objectionable for purposes of trademark infringement as is confusion between their goods.").

050 LOC – Types of Confusion, Reverse Confusion

"Reverse confusion" occurs when a larger, more powerful, better-financed company, the junior user, infringes the trademark of a smaller, less powerful trademark owner, the senior user,  and thereby causes likely confusion as to the source of the senior user's goods or services.[113]

---

[113] *Citizens Financial Group, Inc. v. Citizens Nat'l Bank*, 383 F.3.d 110, 119 (3d Cir.2004); see *Beacon Mutual Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8 (1st Cir. 2004); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 56 (D.Mass. 1990); 3A-59 *Federal Jury Practice and Instructions*, § 159-25 (West Group 5th ed., 2006 Supplement).

051 LOC – Types of Confusion, Reverse Confusion, Harm From

In a reverse confusion case, the plaintiff-senior user may be harmed because purchasers or other relevant persons:

(1) may misperceive that the defendant-infringing junior user is the source or sponsor of plaintiff's goods and services,[114] or

(2) may conclude that senior user was in some way affiliated with the junior user, or that the senior user's products were made by the junior user, or that the senior user in using its own trademark was imitating the junior user.[115]

The plaintiff-senior user may also be harmed because

(3) the defendant-junior user's use of the mark saturates the market and overwhelms the senior user, such that the senior user loses the value of the trademark, its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.[116]

---

[114] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 38 (1st Cir. 2006); *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 608 (1st Cir.1992), cert. denied, 509 U.S. 923, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993).

[115] *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 56 (D.Mass. 1990); *Pump, Inc. v. Collins Management, Inc.*, 746 F.Supp. 1159, 1166 (D.Mass. 1990); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F.Supp. 1219 (D. Colo. 1976), *aff'd*, 561 F.2d 1365 (10th Cir. 1977, *cert. denied*, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978).

[116] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir. 2006) (citing cases); *Pump, Inc. v. Collins Management, Inc.*, 746 F.Supp. 1159, 1166 (D.Mass. 1990) ("Given [defendant's] notoriety, its actions have effectively robbed [plaintiff] of the ability to use its service mark and have rendered the plaintiff's mark devoid of independent value. [Defendant] has preempted the market with regard to the [infringing] term …. Any time the plaintiff seeks to promote itself by reference to [the term], consumers will think of [defendant] first.").

052 LOC – Types of Confusion, Post-Sale Confusion

Post-sale confusion refers not to the resale of the original product or service, but to the risk that non-purchasers, who themselves may be future consumers, will be deceived when they come into contact with marks placed on goods or associated with services purchased by others.[117]

---

[117] *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 10 (1st Cir. 2004) (post-sale confusion is actionable in the First Circuit); *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 44 (1st Cir. 1998); see *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 54 (D.Mass. 1990)

053 8-Factor Test: Similar Marks, Direct Competition, Effect on Weight

Where goods or services directly compete, the "similarity of the marks" factor is entitled to great weight.[118]

Competitive goods or services are those which are reasonably interchangeable by buyers for the same purposes.[119]

---

[118] *Express Services, Inc. v. Careers Express Staffing Services*, 176 F.3d 183, 186 (3rd Cir. 1999) (where goods or services directly compete, the court need rarely look beyond the mark itself to determine whether there is a likelihood of confusion.)

[119] See *United States v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 393, 76 S.Ct. 994, 1006, 100 L.Ed. 1264 (1956).

054 8-Factor Test: Similar Marks, Copying Need Not Be Literal

For marks to be adjudged similar for purposes of determining the likelihood of confusion, it is not necessary that the trademark be literally copied nor that every word be appropriated;  the registrant's rights extend beyond its actual mark.[120]

---

[120] *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 29-30 (1st Cir. 1989); *Perfumania, Inc. v. Perfulandia, Inc.*, 279 F.Supp.2d 86, 98-99 (D.P.R. 2003) ("In order to constitute an infringement, it is not necessary that the trademark be literally copied. Neither is it necessary that every word be appropriated.")

055 8-Factor Test, Similar Marks, Total Effects Test

You should judge the similarity of the marks on the basis of the total effect of the each mark, rather than upon a comparison of the marks' individual features.[121]

---

[121] *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 43 (1st Cir. 1998); *Boston Athletic Association v. Sullivan*, 867 F.2d 22, 29 (1st Cir. 1989); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981).

056 8-Factor Test: Similar Marks, No Abstract or Side-by-Side Comparisons

For purposes of determining whether the marks are similar, you should not compare them in the abstract, out of context of what occurs in the marketplace. You should take into account the circumstances surrounding the purchase of the goods or services. A side-by-side comparison is not the test you should use in determining the likelihood of confusion.[122]

---

[122] *Alta Vista Corporation, Ltd. v. Digital Equipment Corporation*, 44 F.Supp.2d 72, 76 (D.Mass. 1998); *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1009 (D.Mass. 1988); *CFM Majestic, Inc. v. NHC, Inc.*, 93 F.Supp.2d 942, 951 (N.D. Ind. 2000).

057  8-Factor Test: Similar Marks, Minute Differences May Not Be Significant, Similarities More Significant

Although you should consider each mark as a whole, you should not examine the marks with a microscope to detect minute differences.[123]

Even applying the total effects test, marks can be similar for purposes of determining whether a likelihood of confusion exists despite small differences.[124]

Even comparing marks as wholes, you should consider that similarities weigh more heavily than differences.[125]

---

[123] *National Van Lines, Inc. v. Dean*, 194 F.Supp. 334, 338 (N.D. Ill., E. D. 1960).

[124] See *Boustany v. Boston Dental Group,* 42 F.Supp.2d 100, 108 (D.Mass. 1999) (the "total effect" of the marks indicated similarity where the only difference between plaintiff's mark, "Boston Dental" and defendant's mark, "Boston Dental Group, Inc." were the words "Group, Inc."); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 54 (D.Mass. 1990).

[125] *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1009 (D.Mass. 1988).

058 8-Factor Test: Similar Marks, Test Not Whether Public Confuses Marks

The test for similarity of the marks is not whether the public would confuse the marks.[126]  Rather, the proper test is whether confusion is likely when a relevant person, familiar with the one party's mark, is presented with the other party's goods or services alone.[127]

---

[126] *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976) (emphasis in original).

[127] *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F.Supp. 457, 466 (N.D. Cal. 1991); *CFM Majestic, Inc. v. NHC, Inc*., 93 F.Supp.2d 942, 951 (N.D. Ind. 2000) (court must recognize the marks will be confronted separately by consumers in the marketplace, rather than compared sitting side by side on a podium in the courtroom.).

059 8-Factor Test: Similar Marks, Dominant Word in Composite Mark

When determining whether a composite term or mark is sufficiently similar to another mark to create a likelihood of confusion, it is a settled principle of trademark law that you may give extra weight to the dominant parts of the marks.[128]

This means that, while you may find it helpful to view multiple word marks as a whole, it is also proper for you to give greater force and effect to the most salient or dominant feature of a mark, that is, the part of the mark that has the greater total impact upon the ordinary buyer, over and above the "peripheral" elements of the mark.[129]

If the dominant portion of both marks is the same, then confusion may be likely, notwithstanding peripheral differences.[130] You may reasonably find the total effect of the marks to be similar where the most salient word in both sets of marks is the same, despite differences in fonts, arrangements and colors[131], or disclaimed words or figures.[132]

In sum, you may find sufficient similarity of the marks to constitute infringement where defendant has copied or imitated the substantial and distinctive part of plaintiff's trademark.[133]

---

[128] *Pizzeria Uno Corporation v. Temple*,  747 F.2d 1522, 1530 (4th Cir. 1984).

[129] *CFM Majestic, Inc. v. NHC, Inc.*, 93 F.Supp.2d 942, 951 (N.D. Ind. 2000).

[130] See *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 18 (1st Cir. 2004); 3 McCarthy on Trademarks and Unfair Competition § 23:44.

[131] See *Beacon Mutual Insurance Company v. OneBeacon Insurance Group*, 376 F.3d 8, 18 (1st Cir. 2004); 3 McCarthy on Trademarks and Unfair Competition § 23:44.

[132] See *Pizzeria Uno Corporation v. Temple*,  747 F.2d 1522, 1530 (4th Cir. 1984).

[133] *Perfumania, Inc. v. Perfulandia, Inc.*, 279 F.Supp.2d 86, 98-99 (D.P.R. 2003); *National Van Lines, Inc. v. Dean*, 194 F.Supp. 334, 338 (N.D. Ill., E. D. 1960) (to constitute infringement, it is not necessary that defendant appropriate the whole of plaintiff's mark; imitation need only be slight if it attaches to the salient feature of plaintiff's mark).

060 8-Factor Test: Similar Marks, Dominant Word in Larger Letters

It is especially appropriate to give the dominant part of a mark extra weight on the issue of likelihood of confusion where the defendant putative infringer displays it in considerably larger letters than it uses for other words.[134]

---

[134] See *Pizzeria Uno Corporation v. Temple*, 747 F.2d 1522, 1530 (4th Cir. 1984).

061   8-Factor Test: Similar Marks, Composite Mark, Dominant Word Suggestive &
      Identical, Same General Class of Goods or Services

   If you find that the dominant word in the composite marks in issue is suggestive

and is identical in the plaintiff's and defendant's marks, with a difference only in the

prefix, and you find that the products or services involved, though not being identical,

belong to the same general class of merchandise or service, then you must find that there

is such similarity as to create a likelihood of confusion.[135]

---

[135] *Pizzeria Uno Corporation v. Temple*,  747 F.2d 1522, 1530 (4th Cir. 1984).

062  8-Factor Test: Similar Marks, Dominant Word in Composite Mark, Combining with Descriptive Word

If you find that the defendant has merely combined a word descriptive of its own product with a word that is the dominant feature of plaintiff's registered mark or marks, so that the borrowed word becomes the dominant feature of the defendant's mark, then you must find that the marks are sufficiently similar to create a likelihood of confusion.[136]

---

[136] *Pizzeria Uno Corporation v. Temple*, 747 F.2d 1522, 1530 (4th Cir. 1984); *Bon Ami Co. v. McKesson & Robbins*, 93 F.2d 915, 916-17 (C.C.P.A. 1938) (Hatfield, J., concurring) ("If all that a newcomer in the field need do in order to avoid the charge of confusing similarity is to select a word descriptive of his goods and combine it with a word which is the dominant feature of a registered trade-mark so that the borrowed word becomes the dominant feature of his mark, the registered trade-mark, made valuable and outstanding by extensive advertising and use, soon becomes of little value, and, of course, each of the subsequent initiating trade-marks (and there would be many) is of value only to the extent that its users are trading on the good will of the owner of the original registered trade-mark.")

063 8-Factor Test: Similar Marks, Website, Same Technology

Where defendant's website gives the impression that it is using plaintiff's technology, the similarity of marks factor weighs more heavily in the direction of a likelihood of confusion.[137]

---

[137] *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 110-11 (D.Mass. 2000).

064 8-Factor Test: Similar Marks, Website, Ambiguous Logos

On a website, similarities in sound and appearance of two marks are not overcome by differences in ambiguous logos.[138]

---

[138] *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 110 (D.Mass. 2000).

065 8-Factor Test: Similar Marks, Family of Marks

A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner.[139] A family of marks exists when the pattern of usage of the common element is sufficient to be indicative of the origin of the family.[140]

The sharing of a common, dominant term can be the basis of a family of marks.[141]

The existence of a family of marks is a question of fact for you, the jury, to decide based on the dominant feature's distinctiveness, the family's use, advertising, promotion, and inclusion in the party's other marks.[142]

---

[139] *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991).

[140] *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1463 (Fed. Cir. 1991).

[141] See *Motorola, Inc. v. Griffiths Electronics, Inc.*, 317 F.2d 397, 399 (C.C.P.A. 1963) (plaintiff successfully created a family of marks based on the dominant word GOLDEN); *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462-63 (Fed. Cir. 1991).

[142] *McDonald's Corp. v. McBagel's, Inc.*, 649 F.Supp. 1268, 1271 (S.D.N.Y. 1986).

066   8-Factor Test: Similar Marks, Family of Marks, Dominant Term Similarity
      Exacerbates LOC

In determining whether there is sufficient similarity between the plaintiff's and

defendant's marks to create a likelihood of confusion, you should consider whether the

parties have used a family of marks. If so, you should consider whether the dominant

terms of those families of marks are closely similar in sound, appearance and

connotation. If they are, then you should consider that confusion is all the more likely as

long as the goods or services of the two parties are in similar, even if different,

markets.[143]

---

[143] *International Diagnostic Technology, Inc. v. Miles Laboratories, Inc.*, 746 F.2d 798, 800 (Fed.
Cir. 1984).

067 8-Factor Test: Similar Marks, Family of Marks Requires Secondary Meaning

In determining whether a family trademarks exists, you should consider that, without "secondary meaning" there is no "family of trademarks." This means that, if you find that the common term among the group has not achieved sufficient secondary meaning to preclude others from using the term, a family of trademarks does not exist. However, the lack of a family of trademarks does not invalidate each of plaintiff's registered marks which share the common term. Each mark in itself may be distinctive enough to create a valid trademark.[144]

---

[144] *American Aloe Corporation v. Aloe Crème Laboratories, Inc.*, 420 F.2d 1248, 1253 (7th Cir. 1970); Compare *Lauritzen & Co., Inc. v. Borden Company*, 239 F.2d 405 (C.C.P.A. 1956) with *Motorola, Inc. v. Griffiths Electronics, Inc.*, 317 F.2d 397 (C.C.P.A. 1963).

**068  8-Factor Test: Similar Marks, Proximity of Putative Infringer's Name or House Mark Att017**

In determining whether the plaintiff's and defendant's marks are sufficiently similar to create a likelihood of confusion, you may consider whether the defendant-junior user displays its name or a "house" mark in close proximity to the allegedly infringing mark and whether doing so diminishes the likelihood of confusion.[145]

However, you should also consider that, in a reverse confusion case, the proximity of the more well-known junior user's name or house mark may not lessen the similarity of the marks, but could actually aggravate the threat to plaintiff's mark by more strongly suggesting a relationship or association between the defendant and the plaintiff companies. [146]

---

[145] From the instruction in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

[146] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir. 2006) (defendant's use of "Jenn-Air Attrezzi" did not necessarily lessen the likelihood of confusion with plaintiff's "Attrezzi" mark); *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1205 (1st Cir. 1983) (marks found similar despite prominent presence of defendant's name next to mark in question); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 54 (D.Mass. 1990) (use of respective parties' names in proximity to similar marks on athletic shoes did not negate likelihood of confusion); *Pump, Inc. v. Collins Management, Inc.*, 746 F.Supp. 1159, 1168 (D.Mass. 1990) (marks not found dissimilar despite mitigating presence of defendant's name); *Trak Incorporated v. Benner Ski KG*, 475 F.2d 1076, 1082 (D.Mass. 1979) (juxtaposition of defendant manufacturer's name to similar mark on ski does not mitigate effect of mark's similarity to that of plaintiff rival ski manufacturer because it could suggest a business relationship between the parties); *Electronics Corp. of Amer. v. Republic Industries, Inc.*, 507 F.2d 409, 410 (1st Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1679, 44 L.Ed.2d 102 (1975).

069 8-Factor Test: Similar Marks, Effect of Policing Mark

No inference of non-similarity of the marks can be drawn from Visible's decision to police, or not to police, its mark.[147]

---

[147] See *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 54 (D.Mass. 1990).

070  8-Factor Test: Similar Goods & Services, Similarity of Related/Non-Competing
     Goods and Services, Not Limited to Registration Certificate

In determining whether the similarity of goods or services factor weighs in plaintiff's favor in establishing a likelihood of confusion, you should consider that it is not necessary that the plaintiff's and defendant's goods or services be the same or directly competitive; to establish similarity, it is enough that the parties' respective goods or services be sufficiently related to each other to produce confusion in the minds of customers as to their source.[148]

You should consider that trademark protection is not limited to the market defined by the products or services listed in the trademark or service mark registration certificate or by those which directly compete with them, but extends to the market defined by related products and services.[149]

---

[148] See *Conde Nast Publications, Inc. v. American Greetings Corp.*, 329 F.2d 1012, 1013-14 (C.C.P.A. 1964) (although plaintiff's magazines and defendant's greeting cards were not they same nor competitive, where both were located in racks adjacent or in close proximity to one another in the same type of stores, they were sufficiently related to each other to produce confusion in the minds of customers as to their source.)

[149] *Re v. Smith*, 2005 WL 1140769, *4, 2005 U.S. Dist. LEXIS 8985, 77 U.S.P.Q.2d (BNA) 1858 (D.Mass., Slip Opn., May 11, 2005); *Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857, 861 (5th Cir. 1967); *E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports. Inc.*, 756 F .2d 1525, 1530 (11th Cir. 1985); *Sands, Taylor & Wood Co. v. The Quaker Oats Co.*, 978 F.2d 947, 958 (7th Cir. 1992); *Perfection Fence Corp. v. Fiber Composites LLC*, 2005 WL 353017 (D.Mass. 2005).

071  8-Factor Test: Similar Goods & Services, Possible Expansion of Senior User's
     Market, Logical Extension, or Actual Steps to Expand Market

In determining whether the "similarity of the goods or services" factor indicates a likelihood of confusion, you should consider that a trademark owner has a right to protection against parties using a similar mark on related, non-competing goods in order to guard against improper restraints on the possible expansion of the senior user's market.[150]

You should consider that goods or services are similar for purposes of creating a likelihood of confusion when the defendant's products are such that consumers or other relevant persons would expect the trademark owner to produce them as a logical extension of its current business or when the plaintiff trademark owner has actually taken some steps to expand its market.[151]

---

[150] *Scarves by Vera, Inc. v. Todo Imps. Ltd. (Inc.)*, 544 F.2d 1167, 1172 (2d Cir. 1976); *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir.1987); *Cartier, Incorporated, et al. v. Three Sheaves Co.*, Inc., 465 F.Supp. 123, 128 (S.D.N.Y. 1979); *De Beers LV Trademark Limited, et al. v. DeBeers Diamond Syndicate Inc.*, et al., 440 F.Supp.2d 249, 273-274 (S.D.N.Y. 2006). See *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 415, 36 S.Ct. 357, 361, 60 L.Ed. 713 (1916) (even where two parties independently employ the same mark in geographically separate markets, senior user has a right of protection against junior user where junior user selected the mark to forestall the extension of senior user's trade).

[151] See *Scarves by Vera, Inc. v. Todo Imps. Ltd. (Inc.)*, 544 F.2d 1167, 1172 (2d Cir. 1976); see also *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F.Supp. 1219, 1239 (D. Colo. 1976), *aff'd*, 561 F.2d 1365 (10th Cir. 1977), *cert. denied*, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978); see *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55 (D.Mass. 1990).

**072   8-Factor Test: Similar Goods & Services, Similarity of Related/Non-Competing G&S Not Dependent on Identity, Design, Price Att017**

In determining whether the "similarity of the goods or services" factor weighs in favor or against a finding of likelihood of confusion, you may consider the nature and price of the plaintiff's and defendant's respective goods and services.[152] But you should also consider that, for this factor to weigh in favor of a finding of a likelihood of confusion, it is not necessary that the goods and services be identical nor that they have the same design or price.[153]

---

[152] From the instruction in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

[153] See *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir. 2006) (where defendant sold major appliances and plaintiff sold small electric appliances, gourmet foods and dinnerware, it was not a case where the two products were so dissimilar as to make confusion highly unlikely); see also *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 546 (1st Cir. 1995) (strong similarity between hoof care products found despite price differential and sophisticated purchasers); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 111 (D.Mass. 2000) (though scope of the navigational aid differed, two web-based World Wide Web navigation services likely to be related in the minds of the public); *Public Service Co. v. Nexus Energy Software, Inc.*, 36 F.Supp.2d 436, 437-439 (D.Mass.1999) (while there were some differences between plaintiff's website, which directed customers to vendors of energy efficient products, and defendant's website, which analyzed customers' energy needs, both provided information relating to energy services); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 45 (D. Mass. 1995) (defendant's printing business sufficiently close to plaintiff's copying business, "even if focus is different."); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 54-55 (D.Mass. 1990) (differences in shoes' use [field sports v. basketball and street wear], design and price and price, did not outweigh similarities in style and appearance); *HQ Network Systems v. Executive Headquarters*, 755 F.Supp. 1110, 1118 (D.Mass. 1991) (office rental companies held to offer similar goods and services even though one provided "superior arrangements, with more services, higher internal standards, but higher costs to clients).

073   8-Factor Test: Similar Goods & Services, Similarity of Related/Non-Competing
        Goods and Services, More Similar Marks – Less Similar Goods and Services

In determining whether the "similarity of goods and services" factor weighs in favor of a finding of a likelihood of confusion, you should consider that, the more similar the marks are, the less necessary it is that the products themselves be very similar to create confusion.[154]

---

[154] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir. 2006); 3 McCarthy on Trademarks and Unfair Competition § 23:20.1, at 23-73 to 23-74 & nn.1-2 (4th ed.2005).

074 8-Factor Test: Channels of Trade, Advertising, Class of Prospective Purchasers

The channels of trade, advertising and class of prospective purchasers factors are usually considered together.[155]

---

[155] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir. 2006); *International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center* (IAM), 103 F.3d 196, 204 (1996); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir. 1987).

075   8-Factor Test: Channels of Trade, Advertising, Class of Prospective Purchasers,
Analysis Influenced by Same Purchaser Class

The analysis of the channels of trade, advertising and class of prospective

purchasers factors is heavily influenced by whether the parties are trying to sell to the

same purchaser class.[156]

---

[156] *Pump, Inc. v. Collins Management, Inc.*, 746 F.Supp. 1159, 1168-69 (D.Mass. 1990).

076   8-Factor Test: Channels of Trade, Advertising, Class of Prospective Purchasers, Success Immaterial

In determining whether the parties use the same channels of trade and advertising and have the same class of prospective purchasers, the relative success or failure of either party in advertising or in reaching potential customers is simply immaterial; rather, the key is whether the parties have similar potential markets and seek to exploit those markets in similar ways. Where the differences between the parties are simply of degree rather than kind, these factors favor the plaintiff.[157]

---

[157] See *Pump, Inc. v. Collins Management, Inc.*, 746 F.Supp. 1159, 1168-69 (D.Mass. 1990) (Were it otherwise, the effect would be to insulate better known, more successful parties from challenge whenever they attempt to steal names or ideas from unknown parties with limited market strength.).

077 8-Factor Test, Channels of Trade, Internet Strategy

In determining whether the "channels of trade" factor weighs in favor or against a finding of likelihood of confusion, you may consider the parties' respective internet strategies.[158]

In doing so, you should consider that ease of access to websites makes confusion more likely over the internet; web surfers are more likely to be confused as to the ownership of a website than traditional patrons of a brick-and-mortar store would be of a store's ownership.[159]

Where both parties sell and advertise through their internet websites, you may find that channels of trade, advertising and class of prospective purchasers factors favor the plaintiff. Where both parties sell their products and services from their respective websites to customers nationwide, it makes no difference that one party is a large corporation that sells and advertises on a national and an international scale and the other party is a much smaller enterprise.[160]

---

[158] See *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir. 2006).

[159] *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1057 (9th Cir.1999); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 112-113 (D.Mass. 2000).

[160] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir., 2006).

078 8-Factor Test: Advertising, Not Vehicles Used But Audience Targeted, Same Goals

In determining whether the "advertising" factor weighs in favor or against a finding of likelihood of confusion, you should consider that the issue is not whether the parties use the same advertising vehicles, for example, the same magazines, but whether and to what degree they target the same audience.[161]

Thus, the advertising factor factor may indicate a likelihood of confusion even though the parties have distinctly different approaches to advertising.[162]

Also, even if the overlap between the targets of the parties advertising is not substantial, you may consider the degree to which the parties share the same advertising goals.[163]

---

[161] *Star Financial Services, Inc. v. Aastar Mortgage Corp.,* 89 F.3d 5, 10 (1st Cir. 1996).

[162] *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 111-112 (D.Mass. 2000).

[163] *Boustany v. Boston Dental Group,* 42 F.Supp.2d 100, 109-10 (D.Mass. 1999) (even were the overlap between the targets of the parties advertising not substantial, it was significant for determining likelihood of confusion that plaintiff was likely to be able to show that the parties shared an identical advertising goal, i.e., increasing each's number of patients.).

079 8-Factor Test: Class of Prospective Purchasers, Identity Not Required

In determining whether the "class of prospective purchasers" factor weighs in favor or against a finding of likelihood of confusion, you should consider that the individuals to whom the parties market, advertise or sell their products do not need to be exactly the same in order for there to exist a likelihood of confusion. If you find that the plaintiff had plans to expand into defendant's market and had taken some steps in that direction, there is sufficient overlap to increase the risk of confusion.[164]

---

[164] *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55 (D.Mass. 1990)

080 8-Factor Test: Class of Prospective Purchasers, Sophisticated Customers

In determining whether there exists a likelihood of confusion, it is not sufficient for the defendant to assert that it markets and sells its products or services only to "sophisticated customers." You must determine who the relevant persons in the marketplace are and whether they are sufficiently sophisticated and knowledgeable to avoid being confused about the source of the parties' products or services or about the relationship between the parties.[165]

In making this determination, you should consider that, when the sophisticated customer defense is applied to a class of relevant persons of varying levels of sophistication, the standard for judgment is that of the least sophisticated member of class.[166]

---

[165] See *Boustany v. Boston Dental Group,* 42 F.Supp.2d 100, 109 (D.Mass. 1999) (where defendant argued that its dental-care services were marketed to knowledgeable executives unlikely to be confused, the court termed the argument "quite beside the point," since the relevant persons were the individual patients.)

[166] *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 293 (3rd Cir.1991); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 112-13 (D.Mass. 2000).

081  8-Factor Test: Class of Prospective Purchasers, Sophisticated Customers – Internet
Context

In determining whether there exists a likelihood of confusion, you should consider
the effect of viewing the parties' respective marks over the internet. When relevant
persons, whether they are sophisticated customers or not, are surfing the Web, they can
access websites with very little effort — usually with just one click from a linked site or a
search engine's list. Thus, Web-surfers are more likely to be confused about the
ownership of a website than traditional patrons of a brick-and-mortar store would be of a
store's ownership.[167]

---

[167] *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1057
(9th Cir.1999); *Northern Light. Northern Light Technology, Inc. v. Northern Lights Club*, 97
F.Supp.2d 96, 113 (D.Mass. 2000)

082 8-Factor Test: Actual Confusion, Persuasive But Not Essential

In determining whether there is a likelihood of confusion, you should consider that evidence of actual confusion constitutes "persuasive evidence" of the likelihood of confusion.[168] But you should also consider that evidence of actual confusion is not essential to a finding of likelihood of confusion.[169]

---

[168] *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 31 (1st Cir. 1989); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 45 (D. Mass. 1995); *Boustany v. Boston Dental Group,* 42 F.Supp.2d 100, 110 (D.Mass. 1999).

[169] *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir. 1987); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 120 (1st Cir. 2006); *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1011 (D.Mass. 1988); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992) (District court erred in requiring proof of actual product confusion: "In suing under any of the three Lanham Trade-Mark Act provisions, a plaintiff need only show that a likelihood of confusion is in prospect; a showing of actual confusion is not required.")

083 8-Factor Test: Actual Confusion, Lack of Evidence of

Difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy. The lack of evidence of actual confusion is not significant unless the circumstances indicate that such evidence should have been available.[170]

---

[170] *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1050 (9th Cir.1999); *Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 626 (6th Cir.1998); See *American Historic Racing Motorcycle Association, Ltd. v. Team Obsolete Promotions*, 33 F.Supp.2d 1000, 1006 (M.D.Fla. 1998) (court finds likelihood of confusion to exist despite absence of evidence of actual confusion and despite relevant market of "relatively sophisticated" consumers).

084 8-Factor Test: Actual Confusion, Absence of, Time Period

> The lack of evidence of actual confusion weighs against a finding of likelihood of confusion only in cases where the marks and the relevant products or services have been side-by-side in the same market for a long period of time, at least several years.[171] Where the parties' goods or services have not long been side-by-side in the market, the absence of actual confusion is neither surprising nor significant.[172]

---

[171] *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir. 1987); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 113-114 (D.Mass. 2000). See, as examples of time periods over which the absence of actual confusion was judged significant, *Aktiebolaget Electrolux v. Armatron International, Inc.*, 999 F.2d 1, 3 (1st Cir. 1993) (six years); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 490-91 (1st Cir.1981) (four years); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 377-78 (1st Cir.1980) (three and one-half years). See also, as examples of shorter time periods, over which the absence of actual confusion has not been found significant, *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 121 (1st Cir. 2006) (finding that a period of over two years constituted "no protracted period of product coexistence"); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 46 (D. Mass. 1995) (two years); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 114 (D.Mass. 2000) (five months); *Purolator, Inc. v. Efra Distributors, Inc.*, 524 F.Supp. 471, 476 (D.P.R.1981) (three months); *Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc.*, 875 F.Supp. 966, 980 (E.D.N.Y.1994) (seven months); *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1227 (2nd Cir.1987) (four months).

[172] *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55 (D.Mass. 1990); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir. 1987).

085 8-Factor Test: Actual Confusion, Lack of, Sophisticated Customers

      The lack of evidence of actual confusion in a market composed of even relatively sophisticated customers does not necessarily weigh against a finding of a likelihood of confusion where the defendant's allegedly infinging mark is used in in similar media to advertise similar goods or services.[173]

---

[173] *American Historic Racing Motorcycle Association, Ltd. v. Team Obsolete Promotions*, 33 F.Supp.2d 1000, 1006 (M.D.Fla. 1998) (actual confusion "important" but not "critical"; where plaintiff failed to offer any evidence of actual confusion and defendant offered circumstantial evidence that relevant market of consumers were relatively sophisticated and not likely to be misled, the court found a likelihood of confusion to exist because 1) plaintiff's mark was arbitrary and entitled to "utmost protection" and 2) even a sophisticated consumer cannot distinguish between plaintiff's and defendant's use of "BEARS" mark "when set forth in similar media to advertise similar services.")

086 8-Factor Test: Actual Confusion, Lack of, Substantial Disparities

In determining whether the "actual confusion" factor weighs in favor or against a finding of likelihood of confusion, you should consider that a lack of evidence of actual confusion is prejudicial to the plaintiff's case only when the parties' respective goods or services have other "substantial disparities." This means that, where the products and services offered by the parties are similar, the absence of actual confusion is not probative of the likelihood of confusion.[174]

---

[174] *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir. 1987); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 46 (D. Mass. 1995); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 113 (D.Mass. 2000).

087 8-Factor Test: Intent, Intent Not to Copy v. Intent to Copy

In determining whether the "intent" factor weighs in favor of or against a finding of a likelihood of confusion, if you find that the defendant did not intend to copy the plaintiff's mark, you should give that fact little weight.[175] The defendant's intent not to copy does not lessen the likelihood of confusion.

However, if you find that the defendant intentionally copied plaintiff's mark, you may presume that he intended to cause confusion and profit thereby; especially where competitors are involved.[176] You may consider an infringer's intent to copy as evidence of likelihood of confusion.

---

[175] *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 44 (1st Cir. 1998).

[176] *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 34 (1st Cir. 1989); *International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center* (IAM), 103 F.3d 196, 206 n. 10 (1996).

088 8-Factor Test: Intent, Newcomer Creates Presumption

The law begins with the proposition that a defendant, being a newcomer, has an

infinity of marks to chose from. If you find that the defendant was aware of the plaintiff's

mark and nevertheless chose a closely similar mark, you may draw an inference of

intentional infringement and likelihood of confusion.[177]

---

[177] *Perfumania, Inc. v. Perfulandia, Inc.*, 279 F.Supp.2d 86, 101 (D.P.R. 2003); see
*Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir. 1987); see *American
Historic Racing Motorcycle Association, Ltd. v. Team Obsolete Promotions*, 33 F.Supp.2d 1000,
1006 (M.D.Fla. 1998) (bad faith found where defendant created similar motorcycle racing class
with similar name).

089 8-Factor Test: Intent, Affirmative Duty to Distinguish

When a defendant-junior user adopts a mark similar to one already in use, the law imposes upon him an affirmative duty to avoid any likelihood of confusion. If you find that the defendant has failed to fulfill this duty, you may consider that failure as evidence that the defendant has intentionally copied plaintiff's mark and that the "intent" factor favors a finding of likelihood of confusion.[178]

---

[178] *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817-818 (1st Cir. 1987).

090 8-Factor Test: Intent, Effect of Prior Relationship

If you find that a relationship existed between the plaintiff and defendant companies before defendant's use of its allegedly infinging mark, you may consider the inference of defendant's intent to copy plaintiff's mark to be especially strong.[179]

---

[179] *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1012-13 (D.Mass. 1988); *Perfumania, Inc. v. Perfulandia, Inc.*, 279 F.Supp.2d 86, 101 (D.P.R. 2003).

091 8-Factor Test: Intent, Reliance on Counsel's Advice

      If you find that the defendant relied upon the advice of legal counsel in deciding to use its allegedly infringing mark, you should consider that such reliance does not automatically negate an inference that the defendant intended to copy the plaintiff's mark and that the "intent" factor therefore favors a finding of a likelihood of confusion.[180] Reliance on the advice of counsel should be both reasonable and regarding a close question of trademark law.[181]

---

[180] See *Wolfe v. Nat'l Lead*, 272 F.2d 867, 871 (9th Cir. 1959).

[181] See *Sands, Taylor & Wood Co. v. The Quaker Oats Co.*, 978 F.2d 947, 962 (7th Cir. 1992).

092 8-Factor Test: Intent, No Trademark Search

      If you find that the defendant failed to conduct a trademark search before using its allegedly infringing mark, this fact does not automatically require you to find that defendant had an intent to copy plaintiff's mark such that the "intent" factor weighs in favor of a finding of a likelihood of confusion. However, you may consider defendant's failure to conduct a trademark search as evidence of such intent.[182]

---

[182] See *Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd.*, 282 F.3d 23, 33-34 (1st Cir. 2002).

093 8-Factor Test: Intent, Knowledge of Plaintiff's Mark, Sufficient Time

      If you find that the defendant knew of plaintiff's asserted right to the trademark in issue sufficiently ahead of time to delete the infringing use from its advertising campaign and that, despite the knowledge, it decided to ignore the plaintiff's property rights and go forward with the campaign, you may consider that the defendant's decision constitutes sufficient evidence to support a finding that defendant intended to copy plaintiff's mark and that the "intent" factor therefore weighs in favor of a finding of a likelihood of confusion.[183]

---

[183] See *Pump, Inc. v. Collins Management, Inc.*, 746 F.Supp. 1159, 1170 n. 17 (D.Mass. 1990); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co*., 561 F.2d 1365, 1374-76 (10th Cir. 1977), *cert. denied*, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978)

094 8-Factor Test: Intent, Knowledge of Plaintiff's Mark, Decision to Gamble

If you find that the defendant was well aware that its use of its allegedly infringing mark would create a substantial risk of confusion with the plaintiff's mark and that it nonetheless decided to go ahead gamble that the plaintiff would not or could not seek trademark protection, you are free to conclude that defendant's infringement was willful.[184]

---

[184] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006).

095 8-Factor Test: Intent, Knowledge of Plaintiff's Mark, No "Natural Extension"

Where there is no evidence that defendant had previously used the word "visible," or anything like it, in any mark or for any purpose, you may not find that it chose the mark "3D Visible Enterprise" as a "natural extension" of any of its previous marks.[185]

---

[185] *Aktiebolaget Electrolux v. Armatron International, Inc.*, 999 F.2d 1, 4 (1st Cir. 1993).

096 8-Factor Test: Strength of Mark, Greater Protection, Factors

Strong marks are accorded broader protection against infringement than are weak marks.[186]

To determine whether the plaintiff's mark is strong, and so that the "strength of the mark" factor weighs in favor of a finding of likelihood of infringement, you should consider that registration with the United States Patent and Trademark Office is some evidence that a mark is strong.[187]

You should also consider the following factors:

1) the length of time the plaintiff trademark owner has used the mark;
2) the trademark owner's relative renown in its field of business;
3) the potency of the mark in plaintiff's field, paying special attention to the number of similar registered marks; and
4) plaintiff's efforts to promote and protect the mark.[188]

---

[186] *International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center (IAM)*, 103 F.3d 196, 206 (1996); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 819 (1st Cir. 1987); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 492 (1st Cir. 1981); *Pump, Inc. v. Collins Management, Inc.*, 746 F.Supp. 1159, 1170 (D.Mass. 1990);

[187] *Alta Vista Corporation, Ltd. v. Digital Equipment Corporation*, 44 F.Supp.2d 72, 79-80 (D.Mass. 1998); *International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center*, 103 F.3d 196, 206 (1996); *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 546-47 (1st Cir. 1995); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 114-15 (D.Mass. 2000); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55-56 (D.Mass. 1990).

[188] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 121 (1st Cir. 2006); *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 547 (1st Cir. 1995); *Keds Corp. v. Renee Intern. Trading Corp.*, 888 F.2d 215, 222 (1st Cir. 1989); *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 32 (1st Cir. 1989); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 819 (1st Cir. 1987); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 46 (D. Mass. 1995).

097 8-Factor Test: Strength of Mark, Factors, Examples

To help you consider whether the factors mentioned in the previous instruction indicate that the mark is strong or not, you may consider the following:

A plaintiff trademark owner's mark has been determined to be strong when used for as little as four or as many as 30 or more years.[189]

A plaintiff trademark owner has been determined to have relative renown in its field of business, and so a strong mark, when it has received favorable publicity in the relevant market, such as favorable write-ups in magazines or other types of favorable press coverage.[190]

A plaintiff trademark owner's mark has been determined to be potent in its field, and thus a strong mark, where the United States Patent and Trademark Office had rejected at least one attempt by a competitor to register a similar name[191] or had allowed the registration of only one similar mark.[192] But you must remember that use of similar

---

[189] *International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center*, 103 F.3d 196, 206 (1996) (30 years); *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 546-47 (1st Cir. 1995) (4 years); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55-56 (D.Mass. 1990) (four years).

[190] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 546-47 (1st Cir. 1995); *Northern Light Technology, Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 114-115 (D.Mass. 2000); *Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp. 48, 58 (D.Mass. 1993) ("strong" mark found based upon, *inter alia*, "write-ups in such magazines as *Rolling Stone*, *Gourmet* and *Cape Cod Life*"); *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55-56 (D.Mass. 1990) (shoes' sold under the mark reception of favorable press coverage).

[191] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 546-47 (1st Cir. 1995)  (PTO had rejected at least one attempt by a competitor to register a similar name);

[192] *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55-56 (D.Mass. 1990) (registration of only one similar mark)

marks by third-parties only indicates that the plaintiff trademark owner's mark is weak when it occurs in the same market or industry.[193]

A plaintiff trademark owner's efforts to promote its mark have been determined to have resulted in a strong mark where the plaintiff used the mark in 74 print advertisements,[194] or where it has consistently displayed its mark on its products and in its advertising and promotional materials,[195] and even when it simply used the mark on the Internet, on its website.[196]

A plaintiff trademark owner's efforts to protect its mark have been determined to have resulted in a strong mark where the plaintiff had successfully compelled one infringing competitor to change its name.[197]

---

[193] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 547 (1st Cir. 1995) (where plaintiff argued that use by "numerous companies" of variations of "Equine" portion of plaintiff's mark reduced the mark's strength, the lower court could properly find no effect where only one of the companies mentioned by defendant directly competed with plaintiff and its mark was not as similar, visually or aurally, as defendants' trademark); *Copy Cop, Inc. v. Trask Printing, Inc.*, 908 F.Supp. 37, 46-47 (D. Mass. 1995) (use of similar mark by third-parties did not reduce strength of plaintiff's mark where no other valid registrations of similar marks in the relevant industry and plaintiff successfully challenged one attempt to register a similar mark); *Playboy Enterprises, Inc. v. Netscape Communications Corporation*, 354 F.3d 1020, 1027 n. 33 (9th Cir. 2004) (third-party uses of similar marks in unrelated markets neither compelling nor dispositive in considering the "strength of the mark" factor on motion for summary judgment).

[194] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 546-47 (1st Cir. 1995).

[195] *Tanel Corporation v. Reebok International, Ltd.*, 774 F.Supp. 49, 55-56 (D.Mass. 1990) (mark strong when displayed on all plaintiff's shoes and in its advertising and promotional materials).

[196] *Alta Vista Corporation, Ltd. v. Digital Equipment Corporation*, 44 F.Supp.2d 72, 80 (D.Mass. 1998) (mark "reasonably widely promoted," by "being on the Internet," i.e., on plaintiff's website; even though it was not clear just how well known plaintiff was in its field).

[197] *Equine Technologies, Inc. v. Equitechnology, Incorporated*, 68 F.3d 542, 546-47 (1st Cir. 1995).

098 8-Factor Test, Strength of Mark, Use by 3ds, Agreement to Discontinue

      In determining whether the plaintiff's mark is strong, where the evidence indicates that a third-party agreed to discontinue its use of an allegedly infringing mark after the plaintiff trademark owner complained to it or sued it for infringement, you should consider that the third-party's use did not weaken mark, but instead strengthened it.[198]

---

[198] *Morningside Group Limited v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 139 (2nd Cir. 1999); *Trak Incorporated v. Benner Ski KG*, 475 F.Supp. 1076, 1080 (D.Mass. 1979).

099 8-Factor Test, Strength of Mark, Factors, Reverse Confusion

In a reverse confusion case, consideration of the "strength of the mark" factor should also take into account the strength of the junior user and its mark. You should consider that, the more well-known a junior user's mark is, the more likely it is to do harm to a senior user by multiplying or exacerbating the likelihood of confusion.[199]

---

[199] See *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006) (where defendant showed large national expenditures to promote its mark, the relatively greater strength of the junior user may hurt rather than help its defense); *Alta Vista Corporation, Ltd. v. Digital Equipment Corporation*, 44 F.Supp.2d 72, 75-76, 80 (D.Mass. 1998).

100 8-Factor Test: Strength of Mark, Factors, Spectrum Classification Irrelevant

In determining whether a mark is strong or weak, you should not consider where it falls on the distinctiveness spectrum, that is, you should not consider whether it is arbitrary, fanciful, suggestive, descriptive or generic.[200]

---

[200] *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006).

**101 Willfull Infringement[201] Att018**

If you find that plaintiff has not proved its claim, then you will conclude your deliberations. If you find that plaintiff has proved its claim, then you will proceed to decide whether defendant committed willful infringement.

To prove that defendant willfully infringed plaintiff's trademark, plaintiff has the burden of proving all of the following elements:

1. That defendant knew of plaintiff and its use of the mark;

2. That defendant either knew or was deliberately indifferent to the fact that its conduct would infringe plaintiff's trademark; and

3. That defendant intentionally sold its products in connection with the infringing mark.

---

[201] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

**102 Monetary Awards[202] Att019**

If you find that defendant has committed trademark infringement, I will prohibit it from using the mark in the future. However, you must determine whether and to what degree plaintiff either has already suffered harm or that defendant has earned profits from its use of the mark. In addition to injunctive relief, plaintiff has asked for two types of awards. The first is actual damages. The second is defendant's profits. You should not consider whether plaintiff is entitled to a monetary award unless you determine that it has proved its infringement claims.

---

[202] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

**103 Actual Damages[203] Att020**

Plaintiff's actual damages are those caused by defendant's infringement, whether defendant anticipated them or not. They are measured by determining the amount of money which will reasonably and fairly compensate plaintiff for any injury and/or property damage resulting from defendant's infringement of plaintiff's trademark. One way to think of actual damages is as that amount of money necessary to place plaintiff in the position it would have been in had defendant never committed trademark infringement in the first place.

Willful infringement is not required to support a claim for actual damages.

Before engaging in this calculation, however, you must first determine whether plaintiff has in fact suffered actual damage at all. Plaintiff must prove this by a preponderance of evidence.

You may find that plaintiff has suffered actual damage if:

1. Defendant caused injury to plaintiff's business reputation and/or goodwill; or

2. Plaintiff has incurred expenses opposing defendant's registration of defendant's infringing mark;

If you determine that plaintiff has suffered actual damage, you must then determine to what degree. The law does not require mathematical certainty in computing damages. Your computation must, however, be supported by the evidence; it cannot be based on speculation. Any award of damages must be limited to damages that plaintiff has suffered as of the date of your verdict. Do not include any amount for future damages.

---

[203] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

**104 Defendant's Profits[204] Att021**

If you find that defendant infringed willfully, you may also award plaintiff any of defendant's profits earned from selling goods under the mark.

You may calculate defendant's profits by deducting its "expenses" from its "gross revenue." Plaintiff has the burden of proving by a preponderance of evidence what defendant's "gross revenue" has been. "Gross revenue" is calculated by determining all of defendant's receipts resulting from the sale of goods bearing the trademark. "Expenses" are all of the operating and production costs incurred in producing gross revenue. Defendant has the burden of proving by a preponderance of the evidence what the "expenses" are, as well as proving that any portion of its profits are attributable to factors other than the use of the infringed trademark. Your computation of expenses must be supported by the evidence. It cannot be based on unsupported assertions or speculation.

Any award of defendant's profits must be limited to defendant's profits that were earned as of the date of your verdict. Do not include any amount for future profits.

---

[204] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

105 Unfair Competition Claims

Evidence of likelihood of confusion establishes unfair competition under federal law (Lanham Act sec. 43(a), 15 U.S.C. sec. 1125) and state law (M.G.L. c. 93A).[205]

---

[205] See *Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp. 48, 58 (D.Mass. 1993) ("The gravamen of an unfair competition claim is a showing of likelihood of confusion."), quoting *Data-comm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 489 N.E.2d 185 (1986); *Bayshore Group Ltd. v. Bay Shore Seafood Brokers, Inc.*, 762 F.Supp. 404, 415 (D.Mass. 1991).

**106 Conclusion[206] Att022**

The principles of law set forth in these instructions are intended to guide you in reaching a fair and just result in this case, which is important to all of the parties. You are to exercise your judgment and common sense without prejudice, without sympathy, but with honesty and understanding toward both parties. You should be conscientious in your determination of a just result in this case because that is your highest duty as officers of this court.

---

[206] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

**107 Selection of Foreperson[207] Att023**

      When you retire, you should elect one member of the jury as your foreperson.

That individual will act very much like the chairman of a committee, seeing to it that the

deliberations are conducted in an orderly fashion and that each juror has a full and fair

opportunity to express his or her views, positions and arguments on the evidence and on

the law.

---

[207] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

**108 Verdict Must Be Unanimous[208] Att024**

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

---

[208] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

**109 Deliberations[209] Att025**

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and to change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or merely for the purpose of returning a verdict.

Remember at all times that you are not partisans, you are judges, judges of the facts. Your sole interest is to seek the truth from the evidence in the case. If during your deliberations it becomes necessary to communicate with me, you may do so only in writing, signed by the foreperson or by one or more members of the jury. Give that note to the marshal and he will bring it to my attention. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will communicate with you on anything concerning the case either in writing or orally in the courtroom.

Remember that you are not to tell anyone, including me, how the jury stands, numerically or otherwise, on the matters you are deciding, until after you have reached a unanimous verdict or have been discharged.

Nothing said in these instructions is intended to suggest or to convey in anyway or manner what your verdict should be. The verdict is your sole and exclusive duty and responsibility.

---

[209] From the instructions in *Attrezzi LLC v. Maytag Corporation*, U.S.D.C., D.N.H., Civil No. 03-461-PB, Document 81, Filed 02/07/2005.

When you have arrived at a verdict, notify the marshal and you will be returned to the courtroom where the foreperson will render the verdict orally.

Respectfully Submitted,

Plaintiff,

VISIBLE SYSTEMS CORPORATION,
By its attorneys,


   /s/Stephen H. Galebach
Stephen H. Galebach, BBO # 653006
GALEBACH LAW OFFICE
9-11 Touro Avenue
Medford, MA  02155
781-874-2239
galebach@galebachlaw.com

and

Lawrence M. Kraus, BBO # 564561
Carrie J. Fletcher, BBO # 642369
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
617-342-4000

July 13, 2007

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic

Filing.


July 13, 2007                          /s/ Stephen H. Galebach
                                   Stephen H. Galebach