UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VISIBLE SYSTEMS CORPORATION,<br><br>　　　　　　　　　　Plaintiff<br><br>v.<br><br>UNISYS CORPORATION,<br><br>　　　　　　　　　　Defendant | Civil Action No. 04-CV-11610-RGS |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION *IN LIMINE***

　　　　The defendant, Unisys, responds as follows to the omnibus motion *in limine* filed by the plaintiff:

　　　　**I.　　Nancy McCarthy should be permitted to testify**

　　　　Among its seven trial witnesses, Unisys has listed Nancy McCarthy, a managing partner of the company's Global Financial Services business unit.  The key purpose for which Ms. McCarthy will be called to testify is straightforward: she will help explain to the jury, using actual examples, the nature of the consulting work Unisys performs for clients—an explanation that will make clear the sharp distinctions between these businesses of the parties, and the markets in which the parties compete, and the absence of any conceivable likelihood of confusion arising from Unisys's use of the 3D VISIBLE ENTERPRISE mark.

　　　　Ms. McCarthy lives in North Andover, Massachusetts, and Unisys decided during its preparations for trial to ask her to testify, in part because she is relatively closer to the site of the trial than other potential company witnesses.  Unisys disclosed its intention to

rely on Ms. McCarthy as a witness as soon as the decision was made to do so. Plaintiff raised no objection at the time, and made no effort to inquire about the subject-matter of her testimony, or about what might be done to avoid any prejudice from the timing of the identification, but instead chose to lie in wait for a possible tactical advantage. Plaintiff's current protest is particularly surprising given that plaintiff itself has listed a trial witness not previously identified in its automatic disclosure or discovery responses: Russell Abisla.

Ms. McCarthy's name and role in the company have been no secret in this case: she is prominently identified in at least three separate places on Unisys's public website, which the company expressly incorporated by reference and relied upon in its discovery responses.[1] To the extent plaintiff contends that Unisys was required to go further and identify every one of its tens of thousands of employees who has knowledge about its consulting services, there is no reasonable basis for such a view. Furthermore, plaintiff has had ample opportunity to explore the nature and details of Unisys's consulting services during discovery, including in the Rule 30(b)(6) deposition of Unisys, conducted over three days; in the deposition of Dominick Cavuoto, the former president of exactly the same Global Financial Services business unit in which Ms. McCarthy serves;[2] and in the depositions of Unisys's CEO and other executives.

---

[1] *See* Website Excerpts, Exhibit A hereto; *and see, e.g.,* Unisys's Supplemental Answers to Interrogatories, Exhibit B hereto, at 2, Item (vi) (expressly incorporating website by reference).

[2] A principal focus of Mr. Cavuoto's deposition was Unisys's internal use of the term "Right-Time Visible Bank" and related names in development of strategies for marketing the company's consulting services to banking clients. While Unisys contends that this subject is immaterial to plaintiff's complaint in this case, which concerns Unisys's right to use the mark 3D VISIBLE ENTERPRISE, in the event the jury hears evidence on this collateral matter, Ms. McCarthy may be asked to address it briefly in rebuttal.

Under these circumstances, plaintiff has not been materially or unfairly prejudiced by the timing of Ms. McCarthy's appearance on Unisys's witness list, and its motion to preclude her testimony should be denied.

**II.     Advice of Counsel**

With what potential evidence this part of plaintiff's motion is concerned is difficult to understand, but the request for relief appears to be moot. With respect to the decision in late 2003 and early 2004 to adopt the 3D VISIBLE ENTERPRISE trademark, and the advice Unisys received from its own trademark counsel as part of that decisionmaking process, Unisys's position throughout this litigation has been consistent: it has maintained the attorney-client privilege. To the extent plaintiff has charged that Unisys adopted the 3D VISIBLE ENTERPRISE mark in bad faith, Unisys has not asserted an "advice-of-counsel defense" to this charge. Nor has there been any need for it to do so, since as the Court has already concluded, plaintiff has offered no sufficient evidence that Unisys adopted its mark in bad faith.

At the same time, Unisys has been clear that it does rely on and intend to present evidence that it received and relied upon non-privileged advice from counsel for Unisys's outside advertising firm, Grey Worldwide, concerning the availability of the 3D VISIBLE ENTERPRISE mark for Unisys's use. That advice, in the form of a December 2003 letter addressed to Grey that was forwarded to Unisys in early 2004, has already been agreed to and marked as an admitted exhibit for trial.

Plaintiff has attempted to blur the sole issue raised by its complaint—whether Unisys's 3D VISIBLE ENTERPRISE mark infringes plaintiff's trademark rights—by referring to evidence of Unisys's use of the word "visible" in various internal

communications and advertisements, including materials wholly unrelated to any market in which VSC conceivably competes, and evidence of Unisys's internal decisionmaking about such usage during and in the context of this lawsuit. Plaintiff's discovery efforts on these collateral matters, and Unisys's assertion of privilege as to certain internal communications, was the subject of discussion at the recent hearing before Magistrate Judge Bowler to which plaintiff's motion *in limine* refers.

The subject of Unisys's other uses of "visible" was also before this Court at summary judgment, and here, as with the original adoption of the 3D VISIBLE ENTERPRISE mark, VSC has offered no evidence remotely suggesting that Unisys has acted in bad faith. Thus, Unisys has had no need to assert an advice-of-counsel defense, and has consistently preserved the attorney-client privilege, as its counsel confirmed to Magistrate Judge Bowler at the recent hearing.

Unisys has argued in its own motions *in limine* that the issue of Unisys's alleged bad faith is no longer "live" in this case, and that plaintiff should be precluded from diverting the jury's attention at trial into the collateral matters of Unisys's uses of the word "visible" other than in the disputed mark. But in the event plaintiff is permitted to present such evidence to the jury, and "opens the door" by inquiring about Unisys's internal decisionmaking process concerning other non-pleaded uses of the term "visible," then Unisys reserves the right to present any and all appropriate rebuttal evidence about that process, including the fact that counsel was consulted, without being deemed to have waived its privilege.

Therefore: (1) this portion of plaintiff's motion should be denied as moot, because it concerns an issue—Unisys's alleged bad faith—that is no longer part of this case,

though it is correct that Unisys has consistently asserted the attorney-client privilege rather than relying on an advice-of-counsel defense to the bad-faith charge; (2) Unisys is in no way precluded from offering and relying upon evidence of non-privileged advice it received from counsel for the Grey advertising firm; and (3) Unisys likewise would not be precluded from offering rebuttal evidence with respect to its decisionmaking during this litigation about other uses of "visible," in the event plaintiff is permitted to explore this issue at trial and thereby opens the door.

### III.    "Fair Use Defense"

Unisys has argued in its motions *in limine* that plaintiff should be precluded from offering evidence concerning Unisys's use of the term "visible" outside the context of the 3D VISIBLE ENTERPRISE trademark that is the subject of plaintiff's complaint in this case. This collateral evidence includes, for example, instances in which Unisys has used the term "visible" in a descriptive, non-trademark sense in advertisements, and in internal discussions of potential marketing strategies. To the extent plaintiff is permitted to offer such evidence at trial, and elects to do so, then Unisys is entitled to argue, under 15 U.S.C. § 1115(b)(4), that these other uses of "visible" were "otherwise than as a mark," and were "descriptive of and used fairly and in good faith only to describe the goods or services of" Unisys.[3] The proposition advanced by the plaintiff—that this defense applies only to use of a term "otherwise than as a mark"—is correct, but this is exactly why Unisys may and would rely on the defense with respect to these non-trademark uses plaintiff seeks to offer in evidence.

Therefore, this aspect of plaintiff's motion should be denied.

---

[3] 15 U.S.C. § 1115(b)(4).

### IV.-V. The relative strength of plaintiff's mark will be an important part of the likelihood-of confusion analysis in this case, and Unisys is entitled to offer evidence and argument on it

In this case, there are two related but different questions relating to the conceptual strength (that is, the distinctiveness) of plaintiff's VISIBLE mark: First, does plaintiff have exclusive rights to the term VISIBLE by virtue of its federal registrations of marks including the word, and if so what is the scope of the protection to which plaintiff is entitled? And second, even if plaintiff's mark is presumptively distinctive enough to deserve some protection, how distinctive is it for purposes of the likelihood-of-reverse-confusion analysis?

As discussed in Unisys's other pre-trial filings and at summary judgment, plaintiff's "incontestable" registrations are its 1985 registrations of VISIBLE SYSTEMS CORPORATION and VISIBLE SYSTEMS. But these registrations were for the limited purpose of using the marks on "computer programs recorded on magnetic disks." Furthermore, as "composite marks" (that is, marks made up of multiple words) these marks were only ever entitled to the statutory presumption of validity—including the presumption of distinctiveness and non-descriptiveness—as a whole, and did not of themselves give plaintiff any right to protect any individual word, including VISIBLE.[4]

---

[4] *See, e.g., In re National Data Corp.*, 753 F.2d 1056, 1059 (Fed. Cir. 1985). The fact that plaintiff was required to disclaim any separate rights to the terms SYSTEMS and CORPORATION is of no moment. A disclaimer "does not have the effect of removing from the registered mark the matter disclaimed. It disclaims only a claim that the federal registration gives an exclusive right in those disclaimed words or symbols per se. That is, the applicant is merely stating that he is claiming only the whole composite mark as his property, and makes no claim to those particular portions disclaimed" standing "apart from the composite as a whole." J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* ("McCarthy on Trademarks) § 19:63 at 212-13. *And see, e.g., Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 362-63 (11th Cir. 1997) (Registrant of mark LONE STAR CAFE, who disclaimed CAFE in the registration, did not thereby acquire presumptive rights as to LONE STAR). Courts do

The two more recent registrations on which plaintiff relies are both contestable, and, as Unisys has argued, should be understood as confined to the use of VISIBLE in selling software products and assisting purchasers with use and implementation of those products.  Thus, plaintiff's registrations, in and of themselves, at most establish a right to protect the VISIBLE mark in the specific fields of operation as to which the registration certificates provide fair public notice.[5]

But to whatever extent this Court accepts that plaintiff has trademark rights based on its registration history, this alone does not suffice to show that its mark is strongly distinctive, rather than borderline descriptive or at most weakly distinctive, for purposes of the likelihood-of-confusion.  The Supreme Court's decision in *Park 'N Fly, Inc. v.*

---

not dissect a composite word mark to look for the "dominant" word, and this would be prohibited by the "anti-dissection rule," under which "a composite mark is tested for its validity and distinctiveness by looking at it as a whole, rather than dissecting it into its component parts."  McCarthy on Trademarks § 11:27 at 56.3.

[5] As discussed in Unisys's summary judgment briefs, in *Re v. Smith*, No. Civ.A.04-11385-RGS, 2005 WL 1140769 (D. Mass. May 11, 2005) (Stearns, J.), this Court denied a defendant's motion for summary judgment raising solely the question of whether the plaintiff's mark was eligible for federal trademark protection, and specifically rejected an argument about the scope of the plaintiff's rights arising from her federal registration.  The stated use in the registration was "training programs and educational classes."  *Id.* at *4.  Plaintiff and defendants were also the authors and publisher of books using the mark in their titles.  *Id.* at *2.  The Court held that because plaintiff's book "could reasonably be found by a trier of fact to be a teaching material related in the minds of the relevant public to her SOCIAL SAVVY seminars," plaintiff's trademark rights could be found to extend to the book.  *Id.* at *4.  This result was correct on the facts presented, and the point is a very narrow one, but the decision does not deal fully with the distinction between the evidentiary *presumptions* arising from a trademark registration, which are limited by the text of the public notice contained in the registration document, and the potentially broader trademark *rights* that the holder of a registered mark may claim, which as the Court correctly notes are defined by the perception of the consuming public.  In the latter field, the holder is without the benefit of the presumptions (including distinctiveness) conferred by virtue of the registration.  *See* McCarthy on Trademarks § 32:152 at 277 & nn. 1-2 (contrasting scope of presumption of validity with scope of potential remedies for infringement).

*Dollar Park & Fly, Inc.*,[6] does not, as plaintiff appears to believe, dictate that the distinctiveness of an incontestable mark cannot be challenged. The Court held that a defendant in an infringement action cannot use descriptiveness as a basis to cancel the plaintiff's incontestable registration. The Court did not hold that the descriptive nature of a mark may not be considered in the separate likelihood-of-confusion inquiry.[7]

Unisys argues that the term VISIBLE as used to refer to plaintiff's software tools is likely to be understood by relevant consumers as describing a quality or characteristic of such tools: that they enable a user to see and understand something. Because the literal meaning and ordinary usage of "visible" and "visibility" encompasses not only the mere physical act of seeing but also the mental acts of perceiving and comprehending, it takes no particular "imaginative leap" for a consumer, sufficiently versed in the field of modeling to be interested in plaintiff's products, to connect the word "visible" with this attribute or capability the company claims they possess. As plaintiff's own witnesses have conceded, the precise reason why plaintiff adopted the term "visible" in the first place had to do not with its inherent distinctiveness, but with its concrete descriptive power. Because this is likely to be evident to plaintiff's potential customers, it weighs against a likelihood of reverse confusion.

The portions of plaintiff's motion *in limine* addressing these points should be

---

[6] 469 U.S. 189 (1985).
[7] *See, e.g., Hasbro, Inc. v. Clue Computing, Inc.*, 66 F. Supp. 2d 117, 131 n.9 (D. Mass. 1999) (Woodlock, J.); *Petro Stopping Centers, L.P. v. James River Petroleum, Inc.,* 130 F.3d 88, 92 (4th Cir.1997), *cert. denied,* 523 U.S. 1095 (1998). *See also* McCarthy on Trademarks § 11:44 at 87 ("While the Park 'N Fly decision confirmed that the *validity* of an incontestably registered mark cannot be challenged, the majority of courts hold that this does not prevent defendant from questioning the *strength,* and hence the scope of protection, of the mark as to different goods or services in determining the issue of likelihood of confusion.")

8

denied.

### IV.     The affidavit of plaintiff's CEO is admissible

Through its own investigative efforts, Unisys recently discovered that plaintiff's own CEO, George Cagliuso, provided an affidavit in a prior lawsuit, undisclosed by the plaintiff in this litigation, discussing a number of material issues in this case, including the true nature of plaintiff's business and the real reasons for the poor financial performance which plaintiff has sought to attribute to Unisys.  The document is a public record, and Unisys obtained a copy of it from the Middlesex County Superior Court.  Plaintiff's claim that Unisys had a discovery obligation in this case to inform plaintiff that its own CEO had given this testimony, and to provide it with a copy of this public record—a document plaintiff itself created—is preposterous.  Plaintiff's motion should be denied.

### V.     Assuming plaintiff is entitled to advance its baseless theory that its profits declined as a result of Unisys's use of the 3D VISIBLE ENTERPRISE mark, then Unisys is entitled to challenge the "evidence" supporting this theory

Unisys has argued in its own motions *in limine* that because there is concededly no evidence of actual consumer confusion in this case, and because plaintiff cannot demonstrate that it suffered any actual harm as a result of Unisys's use of the 3D VISIBLE ENTERPRISE mark, plaintiff should be precluded from advancing its "damages" claim before the jury.  But assuming for the moment that plaintiff were allowed to proceed on this theory, then Unisys is certainly entitled to present the ample evidence (not "speculation") undermining it.  This includes, for example, the fact that plaintiff's revenues have declined in each year since 2000 (long before Unisys began

9

using the disputed mark); that plaintiff has reported a net loss from its operations in each of these years except one (when it reported a profit of less than $15,000); and that plaintiff's own witnesses have offered various alternative explanations for the company's financial performance since 2000.

Plaintiff's motion on this point should be denied.

### VI. Unisys is entitled to offer evidence of plaintiff's own bad-faith efforts to increase the possibility of consumer confusion

Since the start of this litigation, plaintiff has engaged in various efforts to foster, not avoid, the possibility of consumer confusion. In particular, plaintiff has adopted for the first time the term THE VISIBLE ENTERPRISE, and featured the term on its website and in advertising. While those efforts have been unsuccessful in creating even a single instance of actual confusion, the Court and the jury are nonetheless entitled to hear evidence of plaintiff's activities.

Plaintiff's motion on this issue should be denied.

### VII. Evidence of the widespread trademark use of the term "Visible," both within and outside the various markets in which plaintiff has claimed to compete, is relevant and admissible

As noted above, a key aspect of the jury's likelihood-of-confusion analysis in this case will be an assessment of the relative distinctiveness of plaintiff's VISIBLE mark. It is settled law that evidence of third parties' uses of the same or similar marks is relevant to the question of whether consumers are likely to perceive a mark as an identifier of the source of goods or services, and in particular as an identifier of the plaintiff as that source.[8] Indeed, all of the cases cited in plaintiff's motion *in limine* support this

---

[8] *See, e.g., Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020,

10

proposition, and <u>none</u> of them support the proposition advanced by the plaintiff, that evidence of third-party usage is inadmissible.[9] Whether the numerous other users of the term VISIBLE as to whom Unisys has adduced evidence offer goods or services that are

---

1028 n.33 (9th Cir. 2004) ("[E]xtensive third-party use of a mark might tend to show that consumers are likely to associate the mark with companies and meanings other than the markholder's."); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 (5th Cir. 1980) ("The greater the number of identical or more or less similar trade-marks already in use on different kinds of goods, the less is the likelihood of confusion."); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp*, 657 F.2d 482, 492 n.3 (1st Cir. 1981) (same); *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F. Supp. 994, 1008 (D. Mass. 1988) (Woodlock, J.) ("In determining whether a particular word has a descriptive or suggestive significance as applied to a field of merchandise or service, it is proper to take notice of the extent to which it has been used in trademarks by others in the same field."); *Colt Defense LLC v. Bushmaster Firearms, Inc.*, 486 F.3d 701, 706 (1st Cir. 2007) ("[t]he more members of the public see a term used by competitors in the field, the less likely they will be to identify the term with one particular producer."); *Hasbro, Inc. v. Clue Computing, Inc.*, 66 F. Supp. 2d 117, 131 (D.Mass. 1999) (evidence of third-party usage of a mark "suggests the possibility that any acquired distinctiveness of the plaintiff's mark ... has been seriously undermined by third party use of the same or similar marks"); *Restatement (Third) of the Law of Unfair Competition* §14 cmt. B at 124-125 (It is "appropriate to consider the extent to which the same or similar terms have been used by others in connection with comparable goods. If the term has been frequently employed by other sellers, an inference of descriptiveness may be justified.").

[9] *See Conde Nast Publ'ns, Inc. v. American Greetings Corp.*, 329 F.2d 1012, 1014 (C.C.P.A. 1964) ("We agree with the board that such [third-party] registrations and/or usage may be considered as tending to show that a registered mark may be a 'weak' mark and thus result in a narrowing of opposer's rights therein."); *Morningside Group, Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 139 (2d Cir. 1999) (after bench trial, disagreeing with the district court's factual determination, but not commenting on the *admissibility* of third-party usage evidence); *Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)*, 544 F.2d 1167, 1173 (2d Cir. 1976) (after dismissal, ruling that district court erred in giving too much "weight" to third-party registrations, but not commenting on the *admissibility* of such registrations); *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 n.33 (9th Cir. 2004) (noting that "evidence of extensive third-party use of a mark may be useful in evaluating the strength of the secondary meaning of a mark" and that "[e]vidence of third-party use in markets similar to the markholder's is more compelling than evidence of third-party use in unrelated markets"); *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874 (Fed. Cir. 1992) (holding only that use of a word from the mark on unrelated goods or services was "less relevant" than use on similar goods and services); *National Lead Co. v. Wolfe*, 223 F.2d 195 (9th Cir. 1955) (although ruling that "[t]he third party uses as are shown are not such as would permit a holding that appellant's trade-mark had become publici juris," not commenting on the admissibility of such evidence).

related closely enough to the various markets in which plaintiff claims to own exclusive trademark rights in the name VISIBLE is a matter of the arguable weight of the evidence, not its admissibility.

Plaintiff's motion on this point should be denied.

Dated: July 18, 2007

                                 UNISYS CORPORATION,
                                 By Its Attorneys,

                                 /s/ William L. Boesch
                                 Anthony M. Doniger, BBO No. 129420
                                 William L. Boesch, BBO No. 558742
                                 SUGARMAN, ROGERS, BARSHAK
                                  & COHEN, P.C.
                                 101 Merrimac Street
                                 Boston, MA 02114
                                 617-227-3030

CERTIFICATE OF SERVICE

I hereby certify that this document is being filed through the ECF system, and that I am therefore relying on the system to complete service by sending copies of the filing electronically to the necessary counsel, who are registered participants.

                               /s/ William L. Boesch

393837.3