UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VISIBLE SYSTEMS CORPORATION,<br><br>            Plaintiff<br><br>v.<br><br>UNISYS CORPORATION,<br><br>            Defendant | Civil Action No. 04-CV-11610-RGS |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
<u>RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW</u>**

Unisys Corporation's renewed motion presents a rehash of arguments previously rejected by the Court, supplemented by distortions of the trial record and arguments contrary to controlling law and precedent.

Contrary to the entire tone and tenor of Unisys' memorandum, judicial review of a jury verdict must consider the evidence "in the light most favorable to the jury verdict." *Jennings v. Jones,* 479 F.3d 110, 112 (1st Cir. 2007).

When examined against the First Circuit's eight-factor test for likelihood of confusion, the trial record contains overwhelming support for the jury's verdict:

<u>Similarity of marks</u>.  Evidence showed Unisys using the VISIBLE mark in increasingly confusing ways, starting with "3D Visible Enterprise" (Trial Exhibit 89) and expanding to "Visible Commerce" (Ex. 85) and marketing slogans such as "Visible Breakthrough" and "Is your company visible?" (Ex. 38) – finally leading to "visible" splayed in huge letters in the center of a full-page advertisement in *Forbes* in June 2006 (Ex 90).

<u>Similarity of goods or services</u>.  Multiple exhibits showed Unisys using variations on the Visible name in connection with enterprise architecture modeling – both modeling services (Exs. 38, 85, 89, 90)

1

and modeling products (Exs. 96-99, 127-129, 131) – precisely the market in which plaintiff had used the Visible name for more than 20 years. Unisys' modeling-based consulting services under the Visible banner are precisely in the information technology consulting field that is the specified field of use for the Visible service mark (Ex. 6). Plaintiff's expert, Dr. Malcolm Lane, testified that the products and services offered by Unisys under the name "3D Visible Enterprise," when compared to the products and services of Visible Systems Corporation, are "very similar and they have very similar outputs and results for clients." Tr. 7/26/07 at 82-83. Moreover, Unisys' 3D Visible Enterprise experiential workshops are advertised in terms that closely mirror the workshops that plaintiff has been providing for many years. *See* J. Nash, Tr. 7/24/07 at 30-36; Ex. 35; C. Finkelstein, Tr. 7/26/07 at 34-36.

Channels of trade. Modeling products and services are typically purchased and discussed by personnel in the IT departments of companies and agencies (C.Finkelstein, Tr. 7/26/07 at 32; R. Schoenrank, Tr. 7/24/07 at 12; M. Cesino, Tr. 7/25/07 at 81-83; W. Earl, Tr. 7/27/07 at 15, 30-33). The jury had ample evidence from which to conclude that the main channel of trade for the modeling products and services of both companies is the IT department of corporations and government agencies.

Juxtaposition of advertising. The jury saw many exhibits illustrating the extensive Internet advertising of plaintiff and defendant, both using the Visible name. *E.g.,* Exs. 87-88, 119, 123-126, 133, 137-144, 148, 159 (Visible's online advertising); Exs. 31-35, 37-38, 85, 94, 127, 128 (Unisys' online advertising). John Nash testified to the effects of Unisys' Internet advertising upon Visible's Internet positioning on Internet search engines. Tr. 7/25/07 at 22, 33-34. Visible's President, Michael Cesino, testified that the harm to plaintiff was precisely in decreased sales of modeling products, sales that were primarily dependent on Internet-based advertising and Internet-based inquiries. Tr. 7/25/07 at 117.

Classes of prospective purchasers. Visible's CEO testified that the two companies have the same customer base, namely corporations and government agencies (G. Cagliuso, Tr. 7/23/07 at 92),

and the evidence amply substantiated his statement. *See, e.g.,* G. Cagliuso, Tr. 7/23/07 at 81-82 and Ex. 88; as to Unisys, Ex. 71). Both companies have been involved in modeling in connection with developing information systems for court and criminal justice systems (Visible, Ex. 2; Unisys, Exs. 71, 167); for banks (as to Visible, G. Cagliuso, Tr. 7/23/07 at 93; as to Unisys, Ex. 71); for government agencies (as to Visible, G. Cagliuso, Tr. 7/23/07 at 69-71; A. Perkins, Tr. 7/25/07 at 43-45; M. Cesino, Tr. 7/25/07 at 58-59; as to Unisys, Ex. 71; J. Nash, Tr. 7/24/07 at 72); telecommunications companies (as to Visible, J. Nash, Tr. 7/24/07 at 73; for Unisys, Ex. 71); and for manufacturers and large retailers (Visible, M. Cesino, Tr. 7/25/07 at 57, 80-81; A. Perkins, Tr. 7/25/07 at 45; Unisys, Ex. 71).

<u>Evidence of actual confusion</u>. While no customers testified at trial, the jury could infer actual confusion from circumstantial evidence. Plaintiff demonstrated a 19% drop in average monthly revenue, when the baseline period of January 2003 through June 2004 is compared with the four months that immediately followed Unisys' "3D Visible Enterprise" launch and preceded plaintiff's hiring of an experienced sales person to solve the evident problem. *See* M. Cesino, Tr. 7/25/07 at 114-17; Ex. 155. It is highly significant that it was Internet-based sales of modeling tools that dropped immediately upon Unisys' Internet launch of "3D Visible Enterprise." By contrast, Visible's sales of consulting services increased each year from 2002 to 2005. *See* Ex. 156; M. Cesino, Tr. 7/25/07 at 116-17. Thus, the actual harm suffered by plaintiff was precisely the harm that would logically flow from the introduction of a second Visible name into the Internet universe of enterprise architecture modeling, depriving Visible of its longstanding and trademark-law-protected uniqueness.

<u>Defendant's intent in adopting the infringing mark</u>. The jury had powerful evidence to support its finding of willfulness. Unisys' rationales for non-infringement proved at trial to be the thinnest of reeds.

3

Unisys claimed that "visible" was an ordinary descriptive word in the relevant market, yet Unisys *could not show the jury a single example of "visible" used descriptively by a third party in the modeling market before the launch of the "3D Visible Enterprise" campaign.* Unisys found a tiny handful of uses of "visible" by Visible Systems Corp., but these were plays on words by the trademark owner of that name. Even though Unisys itself had been involved in enterprise architecture modeling for many years with its predecessor "Business Blueprinting" initiative and its longstanding Linc – EAE – Agile Business Suite modeling environment (F. Dillman, Tr. 7/27/07 at 54-58, 110-11, 125-27), *Unisys could not and did not present to the jury a single instance of "visible" used in its marketing literature before the "3D Visible Enterprise" launch on June 17, 2004.*

Unisys' defense that it was totally unlike Visible, in that Unisys is not in the business of software, exploded at trial in the face of multiple Unisys documents describing Unisys modeling software/tools in association with "3D Visible Enterprise." Unisys' defense that Visible Systems Corp. does no real consulting likewise exploded in the face of testimony from Visible's President Michael Cesino and current consulting services customer William Earl of the Arizona Supreme Court.

As a fellow participant in the enterprise modeling market for many years, Unisys could not credibly deny knowledge of the oldest name still standing in that market. The hundreds of Unisys contacts documented in Visible's customer databases (Ex. 130) made abundantly clear that persons from the IT working level to the Vice President level had normal business interaction with and thus knowledge of Visible. The VISIBLE mark, moreover, was registered as a trademark in the modeling products field, and as a service mark in the IT consulting services field.

When an infringer has both constructive and actual knowledge of a mark, and when the infringer's reasons for believing it can use that mark are transparently vacuous, a jury has ample reason to find the infringement willful. In this case, the jury also knew from Unisys' former corporate 30(b)(6)

4

designee David Wright's deposition, that Unisys needed a corporate image makeover, *see* Tr. 7/27/07 at 14, thus explaining why the company would engage in such a reckless course of action.

<u>Strength of the marks</u>.  The VISIBLE mark is exceptionally strong by all relevant criteria: Visible has built the value of this name for more than 20 years, spending more than $2 million in advertising.  *See* M. Cesino, Tr. 7/25/07 at 112; Ex. 154.

Visible gained extraordinary exposure to a key target audience of students being trained to work in IT departments, via a student version modeling tool featured in many university and graduate school textbooks, used by over 100,000 students, and used in hundreds of institutions of higher learning (G. Cagliuso, Tr. 7/23/07 at 75, 104, 116; Ex. 88).

Visible's renown in the field was further enhanced by a professional journal that reported survey results in the mid-1990's, showing Visible to be the second most commonly used modeling tool in universities (Ex. 20).  Dr. Lane testified that a similar approach to students is used by Microsoft (Tr. 7/26/07 at 74-75), owner of the modeling tool Visio is in the same *id.* at 72-73.  "Why would Microsoft do it?  It's the best advertising in the world.  A student leaves the university and is very familiar with these products and they're going to naturally migrate to them."  *Id.* at 75.

The evidence showed that Unisys infringed by using the oldest name still standing in the modeling market.  (G. Cagliuso, Tr. 7/23/07 at 117-21).  The jury could well have concluded that Unisys saw "Visible" as the strongest name for a speedy image makeover.

The strength of the VISIBLE mark was further enhanced by Visible's successful challenge to AT&T's use of "Visible Business" – with one of the world's largest companies agreeing to "phasing out its current marketing plans and use of 'visible business' in this manner regarding this channel." (Ex. 30; G. Cagliuso, Tr. 7/23/07 at 138-39).

<u>In light of plaintiff's strong eight-factor showing, Unisys' focus on isolated aspects of individual factors is unavailing</u>.  Plaintiff's showing at trial was far stronger than the *Attrezzi* case, where there were factors pointing equally in both directions, and the trial judge and appellate panel both expressed a tendency to view the defendant's as the stronger case. *Attrezzi, LLC v. Maytag Corp*., 436 F.3d 32, 36, 39-40 (1st Cir., 2006.

Unisys seeks to overcome the strength of the eight-factor analysis by singling out individual aspects of two factors: Sophisticated customer and duration of infringement with no actual confusion.

Sophisticated customer analysis avails defendant nothing, because there was no showing that the decline in Internet-based sales of modeling tools was bound up in sophisticated customer decisions – as opposed to being the simple result of fewer people of all types coming to Visible's website after Visible ceased to be the only Visible name for modeling on the Internet.  There was testimony from multiple witnesses that the association of Unisys with the Visible name would be confusing to persons who knew of the consolidation trend in this market that resulted in names such as Microsoft Visio, IBM Rational, and CA Erwin, as the modeling tools Visio, Rational, and Erwin were acquired by large companies and ceased independent existence – this would apply whether such customers were sophisticated or not.

As to the class of purchasers and purchase decision influencers represented by the over 100,000 students exposed Visible's name and modeling tools – a presumably non-sophisticated or less-sophisticated group --  Dr. Lane testified that students he taught and other relevant persons in the market would likely be confused. Tr. 7/26/07 at 119-20.

Concerning duration of infringement without actual confusion, Unisys' argument fails for at least three reasons.  First, Unisys' use of the VISIBLE mark became increasingly similar to Visible Systems' family of VISIBLE marks over time.  Unisys' prominent display of VISIBLE alone in *Forbes,*

6

reflecting an exact identity in usage between the companies, occurred less than four months before the end of fact discovery in this case.

Second, the jury could well have inferred actual confusion from circumstantial evidence. *See* p.3, *supra*. Finally, the nature of confusion in this case, whereby the proliferation of VISIBLE names on the Internet took away plaintiff's distinctiveness, and plaintiff experienced an immediate drop in Internet-based sales as a result, makes it extraordinarily difficult and expensive for a plaintiff to identify persons who have *not* come to a website as a result of their confused impression that Visible has gone the way of Rational, Visio and Erwin, being acquired by a large company that maintains a name association with the acquired modeling tool name.

<u>The jury's damage award has a strong basis in the evidentiary record</u>. The persistent four months of severely impaired Visible Systems revenue that followed immediately upon Unisys' launch of 3D Visible Enterprise is convincing circumstantial evidence of actual harm. Contrary to Unisys' persistent argumentation, the First Circuit requires a showing of "actual harm" – not actual confusion – for trademark damages. *Aktiebolaget Electrolux v. Armatron International, Inc.,* 999 F.2d 1, 5 (1st Cir.1993).

Unisys' Internet advertising campaign, which started in the second half of June 2004 (*see* Ex. 89, p.2), deprived Visible Systems of its unique Internet standing as the only "Visible" name in the online universe of enterprise architecture modeling. It is hardly irrational to conclude that it is better to be the only name in the market than to be one of two. Uniqueness, after all, is what trademark protection is about.

Nor is it irrational to infer that the worst calendar quarter in Visible Systems' history, and the worst four month period (M. Cesino, Tr. 7/25/07 at 114), were the result of the infringement that commenced immediately before that period. The quarterly revenue picture of Visible Systems (Ex. 155)

7

provided the jury a relatively stable 6-quarter baseline against which to compare the post-infringement 19% monthly revenue drop. "Proof of a general decline in sales or a disruption of anticipated business growth following the defendant's misconduct can be sufficient in some cases to justify an inference of causation. . . ." Restatement (Third) of Unfair Competition § 36, comment h (1995), *quoted in McCarthy on Trademarks*, § 30:79 note 3.

Visible's President testified that at the transition from third to fourth quarter 2004, the company brought in Stewart Nash, whose prior experience with the company enabled him to have immediate impact in addressing the post-infringement sales problem and producing improved fourth quarter revenue. Unisys' presentations of 5-year Visible Systems revenue trends, when on an annual basis at trial or month-by-month as in Unisys' post-trial briefing, simply attempt to obscure the clear 19% drop in the four month period as contrasted to the prior 6-quarter baseline. The jury was on solid ground in inferring that Visible Systems suffered actual harm that followed immediately upon the infringement.

Standards of proof for trademark damages, like antitrust damages, allow a broad range of inference from contested circumstantial evidence. "Our willingness to accept a degree of uncertainty in these cases rests in part on the difficulty of ascertaining business damages as compared, for example, to damages resulting from a personal injury or from condemnation of a parcel of land." *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 US 557, 566, (1981). Moreover, where defendant's wrongdoing causes a situation of uncertainty and difficulty in calculation of damages, "the defendant cannot complain about imprecision." *Thermo Electron Corp. v. Schiavone Construction Co.*, 958 F.2d 1158, 1166 (1st Cir. 1992), *quoting Jay Edwards, Inc. v. New England Toyota Distributor, Inc.*, 708 F.2d 814, 821 (1st Cir.), *cert. denied*, 464 U.S. 894 (1983).

Based on the evidence of the immediate adverse revenue impact, the jury could award damages based on Visible's lost profits, as well as harm to reputation and goodwill inferred from the adverse

revenue impact. Visible's profits are easily calculated from the amount of lost revenue less Visible's cost of goods sold, reflected in Visible's financials that were admitted into evidence (Ex. 62-64).

Unisys' effort to overturn the jury verdict based on absence of an expert profit calculation is disingenuous in the extreme. Visible's President, Michael Cesino, prepared a calculation of Visible's profit margin to present to the jury. When he offered it at trial, however, Unisys' counsel objected on grounds that: "The financial statements are in evidence. They show everything." Tr. 7/25/07 at 118. The financial statements did in fact show everything necessary: revenue and cost of sales. The financial statements are what Visible relied upon in closing argument, and what the jury was obviously entitled to rely upon in light of the thrust of Unisys' objection.[1]

Finally, Unisys has no grounds for its argument that plaintiff's claims for damages and/or disgorgement are barred by waiver (Def's Mem. at 34). The Court questioned plaintiff's counsel about the basis of plaintiff's claim for damages, immediately after giving the Court's position that an accounting of infringer's profits is an equitable remedy to be considered by the Court later. Tr. 7/27/07 at 82. Damages and infringer's profits are two separate remedy items under the federal trademark statute, 15 U.S.C. § 1117(a)(1)-(2). Plaintiff's counsel, in response to the Court's question, explained that the jury was entitled to infer damage from the immediate negative impact on plaintiff's revenue, a harm that continued throughout the infringement to the present day. Tr. 7/27/07 at 82-83. The jury could logically infer, from the evidence of immediate and substantial harm from the infringement, both the plaintiff lost profits in the amount of lost revenues less cost of goods sold, and in the form of harm to reputation and goodwill by losing plaintiff's distinctive advantage as the only "Visible" name on the Internet for modeling products and services.

---

[1] Although Unisys' objection made the issue academic, it is the case that calculations of costs and profits by company officers are admissible at trial, and they can be the basis of a jury award of lost profits. *See, e.g.*, *Jay Edwards, Inc. v. New England Toyota Distributor, Inc.*, 708 F.2d 814, 819-20 (1st Cir.), *cert. denied*, 464 U.S. 894 (1983).

9

By contrast to these facts, a waiver requires clear, express, unequivocal language. *Tompkins v. United Healthcare of New England, Inc.*, 203 F.3d 90, 97 (1st Cir. 2000); *Jardines Bacata, Ltd. v. Diaz-Marquez*, 878 F.2d 1555, 1559 (1st Cir. 1989).

<u>The jury's finding of willful infringement is rationally based and should be upheld</u>.  For all the reasons stated above concerning defendant's intent, the jury had substantial reason to find willful infringement.  Under the Court's instructions, the jury needed to find "that Unisys knew of the Visible Systems' mark; That Unisys either knew or was deliberately indifferent to the fact that it would infringe the "Visible" mark; and, That it intentionally launched the '3D Visible Enterprise' campaign despite such a state of mind."

Unisys did not object to this, or to any other part of the Court's instructions to the jury.  It was clear on the record that Unisys had knowledge of Visible's marks through repeated contact during many years, including three documented contacts at the Vice President level and many more via the Marketing Department and product development and IT managers and directors of Unisys (Ex. 130).  The weakness of Unisys' defenses of descriptiveness and non-overlap of modeling products and modeling services of the two companies, together with the registration of Visible Systems as a non-contestable mark, strongly supported the inference that Unisys knew or was deliberately indifferent to the fact that it was infringing the VISIBLE marks.  And it was apparent that Unisys had intentionally launched the "3D Visible Enterprise" campaign despite such state of mind.

The reckless, deliberately indifferent behavior of Unisys was further apparent in Unisys' multiplying of Visible-centric marks and marketing slogans during the course of its infringement.  Far from taking action to make confusion less likely in the 3D Visible Enterprise campaign, Unisys repeatedly made confusion more likely over time.

Finally, the jury could draw negative inferences about Unisys' intent from Unisys' effort at trial to claim that not only the name "3D Visible Enterprise," but also each of the individual terms thereof were independently thought up by Grey Advertising. The witness from Grey, Mr. Aaker, denied emphatically during cross-examination that any of the three terms 3D, Visible, or Enterprise, were suggested to Grey by Unisys. Tr. 7/27/07 at 174. Yet the reading of the written questions deposition of Unisys' CEO, Joseph McGrath, on the last day of trial, exploded the story line of independent derivation. Mr. McGrath admitted that the concept "3D" had been prominently presented at the June 2004 Unisys launch of Business Blueprinting, that the term "3D" had been regularly used by individuals at Unisys to describe characteristics of the Business Blueprinting methodology. Tr. 7/31/07 at 6. Mr. McGrath's deposition also admitted that he had used the term "visible" in connection with Business Blueprinting at the same launch event. *Id.* at 7. The Business Blueprinting launch, featuring the terms "3D" and "visible," had been recorded in a video of the Unisys launch of Business Blueprinting. *Id.* at 6.

The falsity of the "independent derivation" story is confirmed by Exhibit 166, the powerpoint presentation that Mr. Aaker admitted was presented by Grey to Unisys on January 5, 2004. On the 6th page of this document, Grey states that it "reviewed large amounts of Unisys data" in the course of coming up with a new name for Business Blueprinting. Specifically listed among the data reviewed is the "Business Blueprinting launch video." (Ex. 166, at 6). The jury could well infer that the independent derivation story was made up by Unisys precisely to disguise the fact that Unisys knew it was adopting the name of a long-time fellow participant in the modeling market.

<u>Conclusion</u>.  For the reasons stated above, Defendant's renewed motion to overturn the jury's verdict should be denied.

> Plaintiff,
>
> VISIBLE SYSTEMS CORPORATION,
> By its attorneys,
>
> _____/s/Stephen H. Galebach_____
> Stephen H. Galebach, BBO # 653006
> GALEBACH LAW OFFICE
> 9-11 Touro Avenue
> Medford, MA  02155
> 781-874-2239
> galebach@galebachlaw.com

September 27, 2007

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

September 27, 2007                                _____/s/Stephen H. Galebach____
                                                                  Stephen H. Galebach