**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| VISIBLE SYSTEMS CORPORATION,<br><br>Plaintiff<br><br>v.<br><br>UNISYS CORPORATION,<br><br>Defendant | Civil Action No. 04-CV-11610-RGS<br><br>**Leave to File Granted 10-9-07** |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW TO**
**DEFENDANT'S OPPOSITION TO PLAINTIFF'S PROPOSED INJUNCTION**

Plaintiff Visible Systems Corporation makes the following reply to Defendant Unisys Corporation's arguments with respect to Plaintiff's Motion for Injunction, Declaratory Rulings, Award of Profits and Attorneys' Fees.

Plaintiff notes that Defendant's Memorandum contains no argument in opposition to Plaintiff's request for judgment declaring Plaintiff's marks valid and Defendant's marks invalid and un-registerable and denying Defendant's counter-claim for cancellation of Plaintiff's marks' registrations. Therefore, this Court should enter judgment for Plaintiff accordingly.

Plaintiff calls the Court's attention to the recent evidence, summarized by John Nash of Visible Systems Corporation in his attached Declaration (Exhibit 1, hereto, with attached Internet search documents Exs. 2 through 6), showing that:

(a) Unisys has been dramatically expanding, during September 2007, its use of "Visible Breakthrough," in an apparent effort to circumvent the impact of any injunction against the use of "3D Visible Enterprise" and other Visible-related product and service

names – thus confirming the importance of enjoining the use of marketing slogans containing plaintiff's VISIBLE marks;

(b) Unisys has advertising and marketing literature on non-US websites which illustrates the ability of Unisys to advertising the VISIBLE name in the US over the Internet, via such non-US websites, which should accordingly be included within the prohibition of the injunction (Nash Decl. at 2, and Ex. 6); and

(c) Unisys has advertising and marketing literature on third party websites, which Unisys is able to control or influence; and such websites should also be within the scope of Unisys' obligation to comply with the injunction that the Court enters.

**Appropriate Scope of Injunctive Relief**

Defendant argues that any injunctive relief awarded should be "appropriately tailored to the facts of this case,"[1] then submits a form of injunction designed to deny Plaintiff effective relief. While the jury found that Plaintiff had established a valid and protectable trademark in the word "Visible," Defendant specifically limits its proposed injunction to its "3D Visible Enterprise" marks.[2] This limitation, combined with its plan to continue to use the offending marks and marketing slogans without limitation for more than 200 days,[3] to exempt from the injunction any internal use of the offending marks,[4]

---

[1] Defendant's Memorandum, p. 28.
[2] Defendant's Proposed Injunction, pars. 3-5.

[3] Defendant's Proposed Injunction, par. 7, and as suggested by the Mattos affidavit, par. 18. This affidavit, submitted by a witness never previously disclosed by Defendant, unsupported by any documentation, and setting forth purported facts which have arisen after trial and which Plaintiff has never had an opportunity to verify or contest through discovery of any type, should not be considered by this Court. Its obvious intent is to make an exaggerated claim about the burdensomeness of any injunction, but it is belied, e.g., by the fact that Defendant never produced or referenced the 300,000 documents Mr. Mattos mentions, par. 8, in any response to Plaintiff's discovery, although they would have been responsive. Further, the huge burden which it claims to exist in employee time and effort, ultimately a financial burden, is utterly inconsistent with Defendant's maximum settlement offer, made before trial, of $750,000 and its utter refusal to discuss any sort of settlement since trial. In any event, a defendant which has deliberately proceeded with marketing and promotion in spite of the danger of infringement can not be heard to

to exempt from the injunction its 33 foreign websites[5] accessible from computers in the U.S., and to erect a dispute resolution mechanism which would deny Plaintiff recourse to this Court in the event of any violation of an injunction,[6] suggests that Defendant plans to continue to use the word "Visible" to denote its products and services and to come as close as it dares to the limits of any prohibition that this Court imposes upon it.

Plaintiff is not entitled merely to the minimal relief described by Defendant's proposed Injunction, but to "effective relief; and any doubt in respect of the extent thereof must be resolved in [the plaintiff's] favor as the innocent producer and against the [defendant], which has shown by its conduct that it is not to be trusted."[7] A district court's failure to grant effective injunctive relief to a successful trademark plaintiff can constitute an abuse of discretion.[8] In cases, such as the instant case, where the infringing use is for similar goods or services, a broad injunction is "especially appropriate,"[9] and it is

---

complain that it would be severely injured if an injunction directed against those activities is upheld. Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc., 560 F.2d 1325, 1333-1334 (7th Cir. 1977). See also Midwest Guaranty Bank v. Guaranty Bank, 270 F.Supp.2d 900, 923-924 (E.D. Mich. 2003) (infringer could not put itself in harm's way and then later claim that an injunction should not issue because of its own costs which it must incur in order to remedy its own misconduct); Van De Kamp v. Marsh, 687 F.Supp. 495, 501 (N.D. Cal. 1988) (pecuniary injury not an adequate basis for denying injunctive relief).

[4] Defendant's Proposed Injunction, par. 6.1.

[5] Defendant's Proposed Injunction, par. 5; Defendant's Memorandum, p. 29.

[6] Defendant's Proposed Injunction, par. 8.

[7] William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 532, 44 S.Ct. 615, 68 L.Ed. 1161 (1924), quoted in Levi Strauss & Company v. Shilon, 121 F.3d 1309, 1314 (9th Cir., 1997) (affirming district court's grant of injunctive relief).

[8] Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135-1136 (9th Cir. 1986).

[9] GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1211 (9th Cir. 2000); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175,1181 (9th Cir. 1988).

appropriate for the injunctive relief to cover related markets where infringing use of the market would likely cause confusion.[10]

Further, a competitor that willfully infringes may be properly subjected to an injunction covering a broader range of marks than the plaintiff has registered under the "safe distance" rule,[11] which counsels that "an infringer, once caught, must expect some fencing in …. Thus, a court can frame an injunction which will keep a proven infringer safely away from the perimeter of future infringement."[12] To prevent Unisys from gaining continuing benefit from its infringing Visible mark advertising, through the use of "Visible Breakthrough" and such Visible-centric marketing slogans, it is essential that the court keep Unisys a safe distance from the VISIBLE marks. To ensure that the infringer keeps "safely away," the court can appropriately proscribe conduct which would have been unassailable if undertaken by an innocent party.[13]

---

[10] See Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 220 (2nd Cir. 2003) (district court acted well within its discretion in applying injunction, not only to competitor's marketing of pasta sauce, but also to its marketing of packaged food products, since trademark holder was first to bridge the gap from restaurant services to pasta sauce; whatever goodwill trademark holder developed in marketing of pasta sauce was entitled to be enjoyed in marketing of other food products, without encountering confusingly similar marketing by competitor).

[11] Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd., 282 F.3d 23, 26 (1st Cir. 2002).

[12] Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd., 282 F.3d 23, 40 (1st Cir. 2002), quoting 5 J.T. McCarthy, McCarthy on Trademarks and Unfair Competition, sec. 30:4, at 30-12;

[13] Chevron Chem Co. v. Voluntary Purchasing Groups, Inc., 659 F.2d 695, 705 (5th Cir. 1981) ("In fashioning relief against a party who has transgressed the governing legal standard, a court of equity is free to proscribe activities that, standing alone, would have been unassailable."), cert. denied, 457 U.S. 1126 (1982), quoting Ky. Fried Chicken Corp. v. Diversified Packaging Corp., 549 F.2d 368, 390 (5th Cir. 1977); Trademark Law: A Practitioner's Guide, Practicing Law Institute (4th ed., New York), § 17:2.1.See also Wella Corp. v. Wella Graphics, Inc., 37 F.3d 46, 48 (2nd Cir. 1994) (party who has once infringed trademark may be required to suffer position less advantageous than that of innocent party), on remand 874 F.Supp. 54; Indep. Nail & Packing Co. v. Stronghold Screw Prods., Inc., 215 F.2d 434, 436 (7th Cir. 1954) (once convicted of trademark infringement, a competitor is required to keep a safer distance away from the trademark at issue than a good-faith user would be); Serv. Ideas, Inc. v. Traex Corp., 846 F.2d 1118, 1124 (7th Cir. 1988); Trademark Law, supra, §17:2.5.

As Defendant's arguments and proposed injunction suggest, this is a case in which "the court must give careful consideration to the possibility that a defendant found to have either infringed the plaintiffs mark or unfairly competed with the plaintiff will modify his behavior ever so slightly and attempt to skirt the line of permissible conduct."[14] In such cases, the courts have appropriately responded by issuing broad injunctions that prohibit conduct that clearly infringes the plaintiff's mark as well as conduct that ordinarily would not justify any relief.[15]

Plaintiff's proposed injunction, set forth in pars.5-7 of its "Proposed Judgment and Permanent Injunction, falls well within these parameters. Within the relevant and related market, it prohibits Defendant from using its offending mark or its abbreviation and from using Plaintiff's mark "Visible," as part of any mark or advertising phrase or slogan. It expressly allows Defendant to continue to use the word "visible" in its ordinary, descriptive sense, but does not allow Defendant to attempt to create new "ordinary" senses of the term within the relevant market, a prohibition that is necessary to prevent the degradation of Plaintiff's marks.

Finally, Unisys' proposal that it be allowed to continue Internet-based infringement so long as the relevant servers are outside the United States is a transparent effort to avoid the force and effect of United States trademark law.  It would be all too easy for Defendant to redirect its internet traffic to its 33 websites outside the U.S., even to those containing English language webpages, which will effectively allow it to continue its offending marks. The Court cannot ignore this problem, as both parties have

---

[14] Conan Props., Inc. v Conan Pizza, Inc., 752 F.2d 145, 154 (5th Cir. 1985); Trademark Law: A Practicioner's Guide, Practicing Law Institute (4th ed., New York), § 17:2.1.

[15] Conan Props., Inc. v Conan Pizza, Inc., 752 F.2d 145, 154 (5th Cir. 1985).

5

marketed their goods and services through the Internet, "a medium in which geography is largely irrelevant."[16] To address the problem, the Court need not attempt to enjoin any party outside of the United States; it need only address its order to Defendant, and to marketing that is accessible to United States customers (for whom it is utterly irrelevant where the Internet servers are located for traffic that they access on their US computers).. For websites which are truly beyond Defendant's control, Defendant can simply restrict access to them from its U.S. websites and report on its progress in doing so.

The dispute resolution mechanism which Defendant suggests in par. 8 of its proposed injunction, without citation to any authority or precedent whatsoever, is inappropriate. It will actually increase the likelihood of future litigation by emboldening the Defendant to pursue activities perilously close to those prohibited. Combined with the inappropriate exculpatory provisions of par. 6, Defendant's proposals would make it seem that the injunction was intended to protect Defendant rather than Plaintiff. What Defendant suggests provides Plaintiff with the equivalent of no injunction at all.

Plaintiff submits that this Court should instead adopt the attitude of the 9th Circuit as evinced in Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132 (9th Cir. 1986), a case in which the district court had denied injunctive relief against a willful infringer which, as here, had refused to stop violating the plaintiff's trademark rights until plaintiff brought suit in federal district court, on the grounds that plaintiff did not introduce evidence that defendant was likely to infringe again. The court ruled that the failure to grant an injunction was an abuse of discretion. Citing the "effective relief" language of William R. Warner & Co., supra, the 9th Circuit stated, at 1135-1136:

---

[16] Members First Federal Credit Union v. Members 1st Federal Credit Union, 54 F.Supp.2d 393, 401 (M.D.Pa. 1999).

> In this case, the district court refused to grant an injunction because the plaintiffs had not introduced any specific evidence to demonstrate that the defendants would infringe in the future. The court was correct in noting that cessation of the unlawful conduct can moot such a dispute. But it failed to recognize that "the reform of the defendant must be irrefutably demonstrated and total." 2 J. McCarthy, Trademarks and Unfair Competition § 30:6, at 471 (2d ed. 1984). The defendants had willfully violated Polo's trademark rights. The defendants refused to stop violating those rights until Polo brought suit in federal district court. We should not require Polo also to introduce concrete evidence that the defendants are likely to infringe again. If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives Polo substantial protection of its trademark. A broad injunction such as that proposed by Plaintiff, enforceable by recourse to contempt proceedings before this Court, is the appropriate way to deter future litigation and to protect Plaintiff from its expense.

This Court should thus fashion an injunction which effectively, unambiguously and finally protects Plaintiff, its business and its marks, without the need for further recourse to this Court or any alternative dispute resolution procedure. Defendant will inevitably dislike any effective injunctive remedy, but Defendant's dislike, inconvenience or expense may not set the parameters of an appropriate injunction. Defendant here finds itself in the situation described in *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006), that of a defendant who was well aware that its use of a potentially infringing mark would create a substantial risk of confusion with the plaintiff's mark and nonetheless decided to go ahead and gamble. Defendant here gambled and lost. This Court should not allow Defendant, in effect, to overturn the jury's verdict by granting an inappropriately narrow injunction. Rather, this Court should grant an injunction in the from proposed by Plaintiff.

**Defendant's "Unclean Hands" Argument**

Defendant claims that Plaintiff is not entitled to any injunctive relief because it has unclean hands, repeating the argument it made to the jury that Plaintiff used the term

"Visible Enterprise" on its website after it became aware of Defendant's "3D Visible Enterprise" campaign. However, Plaintiff introduced evidence that it had used the phrase "Visible Enterprise" long before the launch of Defendant's campaign.[17] Defendant did not request a special jury question on Plaintiff's alleged "unclean hands" and its argument had no discernible effect on the jury's verdict. The jury having impliedly found against the Defendant on this point, Defendant cannot re-argue it to the Court in a post-trial motion. Further, equitable defenses, such as "unclean hands," do not prevent injunctive relief where there has been a finding of likelihood of confusion, especially where the infringement is willful.[18]

**Defendant Should Be Allowed No More Than Sixty (60) Days to Comply With An Injunction**

As the Mattos affidavit should not be considered, and even if considered should not be considered credible,[19] Defendant has submitted no compelling reason why compliance with any injunction should be delayed. Defendant's reference to Attrezzi, LLC v. Maytag Corporation, 436 F.3d 32 (1st Cir. 2006)[20] is inapposite. In Attrezzi, the First Circuit allowed the defendant twelve months to sell off an "existing stock" of

---

[17] Trial Exs. 145, 146, and 147; testimony of Michael Cesino, 7/25/07 Tr. at pp. 88-92.

[18] Bunn-O-Matic Corp. v. Bunn Coffee Service. Inc., 88 F.Supp.2d 914, 924 (C.D.Ill. 2000) (intentional trademark infringer could not use defenses of acquiescence and laches to bar injunctive relief); Emmpresa Cubana Del Tabaco v. Culbro Corp., 213 F.Supp.2d 247, 273 (S.D.N.Y. 2002) (where trademark infringement plaintiff presents strong showing of likelihood of confusion, equitable defenses, such as laches or acquiescence, will not bar its claims for injunctive relief), affirmed in part, reversed in part, 399 F.3d 462 (2nd Cir. 2005); Great Eastern Resort Corp. v. Virtual Resort Solutions, L.L.C, 189 F.Supp.2d 469, 480 (W.D.Va. 2002) (where there is a likelihood of confusion, estoppel by laches may not be invoked to deny injunctive relief in trademark infringement action), citing Sara Lee Corporation v. Kayser-Roth Corporation, 81 F.3d 455, 461 (4th Cir. 1996); Creative Computer Visions, Inc. v. Laser Learning Technologies, Inc., 931 F.Supp. 455, 457 (S.D.W.Va. 1996) (while laches and acquiescence are available in trademark infringement context to bar claim for damages, defenses cannot bar permanent injunctive relief where there is strong or manifest showing of likelihood of confusion).

[19] See note 3, supra.

[20] Defendant's Memorandum, p. 30.

appliances, i.e., tangible goods, to avoid the "wastefulness" of renaming or junking them. Id., 436 F.3d at 42. The court was evidently concerned with the physical destruction or modification of otherwise unoffending goods. However, in this case, as Defendant so consistently and repeatedly pointed out at trial, it deals mainly in intangible services and what it does not want to take the time to destroy or alter consists mainly of printed or electronic marketing materials whose main function is to set forth the offending marks. It is precisely these marketing materials which must be destroyed or altered swiftly in order to provide effective relief to Plaintiff. As a willful infringer, Defendant cannot argue that the burden of complying swiftly with such an effective injunction is too great.[21]

**Defendant Has No Grounds to Argue Waiver of Plaintiff's Right to a Trial or Hearing on an Award of Infringer's Profits.**

The 1st Circuit has consistently held that waiver of a right occurs only when the waiver is unequivocal, in clear and express language. *See Tompkins v. United Healthcare of New England, Inc.*, 203 F.3d 90, 97 (1st Cir. 2000); Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555, 1559 (1st Cir. 1989).

**Defendants Misread the Federal and Local Rules as to Plaintiff's Objections to Magistrate Judge Bowler's Decision of July 12, 2007.**

Defendants argue that Plaintiff missed the 10-day period for filing objections to the July 12, 2007 order. They ignore that federal practice omits intermediate Saturdays, Sundays, and legal holidays in computing time periods less than 11 days. Fed. R. Civ. P. 6(a). Plaintiff made its appeal of the June 12, 2007 on the record in open court one day *before* the 10-day period ran. *See* Tr. 7/25/07 at 170.

---

[21] See Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc., 560 F.2d 1325, 1333-1334 (7th Cir. 1977) cited in note 3, above. See also Midwest Guaranty Bank v. Guaranty Bank, 270 F.Supp.2d 900, 923-924 (E.D. Mich. 2003) (infringer could not put itself in harm's way and then later claim that an injunction should not issue because of its own costs which it must incur in order to remedy its own misconduct)

9

Defendant also argues that Plaintiff's appeal was ineffective because it was not filed and served writing. But the appeal was clearly stated, transcribed in writing in the transcript delivered to opposing counsel.

## CONCLUSION

This Court should allow Plaintiff's Motion and grant it an injunction in the form proposed by Plaintiff.

> Plaintiff,
> VISIBLE SYSTEMS CORPORATION,
> By its attorneys,
>
>
> ___/s/Stephen H. Galebach_____
> Stephen H. Galebach, BBO # 653006
> GALEBACH LAW OFFICE
> 9-11 Touro Avenue
> Medford, MA  02155
> 781-874-2239
> galebach@galebachlaw.com
>
> Joseph E. Rendini, BBO#542746
> LAW OFFICES OF JOSEPH E. RENDINI
> 48 Doonan Street
> Medford, MA  02155
> (781) 396-6937
> jrendini@comcast.net

October 10, 2007

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

October 10, 2007                  ____/s/ *Stephen H. Galebach*_____
                                  Stephen H. Galebach