UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VISIBLE SYSTEMS CORPORATION,

Plaintiff

v.                                                    Civil Action No. 04-CV-11610-RGS

UNISYS CORPORATION,

Defendant

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES**

As plaintiff Visible Systems Corporation (VSC) acknowledges, the Lanham Act

permits an award of attorneys' fees only in an "exceptional" case[1]—that is, a case

involving particularly egregious conduct by the defendant, and unusual circumstances

requiring an award of fees as a matter of equity.  This case involves neither of these.

Defendant Unisys has acted at all times in the reasonable and good-faith belief that its 3D

VISIBLE ENTERPRISE mark is not confusingly similar to any mark used by VSC.  No

evidence was presented that any customer of either company has ever actually been

confused by Unisys's mark.  This is not surprising, since Unisys and VSC are in different

businesses and are not competitors, the customers and clients of both companies are

highly sophisticated and unlikely to be confused by Unisys's mark, and "visible" is a

common explanatory word.  The Court held at summary judgment that Unisys did not act

in bad faith or with any intent to harm VSC, and called VSC's case "about as thin a case

---

[1]  15 U.S.C. § 1117(a).

as I have seen."[2]  Finally, notwithstanding the jury's award of $250,000 in damages, VSC

failed to show that it has suffered any actual harm as a result of Unisys's use of its mark.

This is not an exceptional trademark-infringement case.  Nor has VSC shown any

reason why, as a matter of its equitable discretion, the Court should depart from the

ordinary rule that litigants bear their own expenses.  VSC's request for an award of fees

should be denied.

I.      **Unisys's good-faith conduct in adopting and using the disputed 3D VISIBLE
        ENTERPRISE mark does not justify an award of attorneys' fees**

The First Circuit has held that fee awards are appropriate under the Lanham Act

only where the defendant's "acts of infringement were malicious, fraudulent, deliberate,

or willful," where equitable considerations justify fee-shifting, *and* where the district

court "supportably finds the case exceptional."[3]  In assessing the first of these elements—

the defendant's conduct—a court should consider such factors as whether the defendant

intended to deceive or confuse consumers, whether the defendant made a concerted effort

to create a non-infringing mark, whether the applicable trademark law is uncertain in

relevant respects, whether there are close legal questions involved, whether a party in the

defendant's position might reasonably have thought it did not infringe, and whether the

---

[2] *See* Summary Judgment Hearing Transcript (03/29/07) at 42 ("[T]here is no evidence offered that the defendant, Unisys, adopted [its] mark in bad faith or with any intent to actually do harm to the plaintiff") and at 42 ("about as thin a case as I have seen").  This view was echoed in the Court's ruling on Unisys's motion for judgment as a matter of law at the close of VSC's case at trial.  *See* Transcript 07/27/07 at 82 ("[S]ome fairly strong arguments are advanced" in Unisys's motion, which the Court was "not going to necessarily deny," but for practical reasons would defer until later in the case.).

[3] *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 31-32 (1st Cir. 2002) (internal quotations omitted).  Some courts have applied a "clear and convincing" standard of proof to the question of whether a case is exceptional.  *See*, *e.g.*, *Icon Health & Fitness, Inc. v. The Nautilus Group, Inc.*, 2006 WL 753002, *9 (D. Utah 2006); *Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 747 (D. Del. 2005); *Sun Prods. Group, Inc. v. B & E Sales Co., Inc.*, 700 F. Supp. 366, 388 (E.D. Mich. 1988).

plaintiff suffered any actual damage.[4]

In *Tamko Roofing*, the First Circuit upheld an award of attorneys' fees based on evidence of egregious conduct by the defendant, Ideal.  The Court noted that (1) Ideal adopted the infringing mark within days after attending a trade show where plaintiff Tamko's mark was prominently displayed; (2) Ideal told its advertising agency not to do a trademark search, and its own lawyer did no search either; (3) Ideal considered other names that were substantially similar to competitors' marks; (4) Ideal designed its mark with a cursive script similar to Tamko's; (5) the parties were direct competitors, and Ideal was seeking to increase its share of the common market; (6) Ideal ignored letters from Tamko warning of the infringement; (7) Ideal violated a court injunction against use of its mark, and was found in contempt; and (8) even after the contempt finding, Ideal delayed its compliance.[5]

There is nothing remotely comparable in Unisys's conduct in this case.  The evidence shows that Unisys has consistently had a reasonable, good-faith belief that it was not (and is not) infringing any trademark rights of VSC.  This belief was and is supported by the facts, shown at trial and set forth in detail by Unisys elsewhere,[6] that (1) the relevant consumers in this case are extraordinarily sophisticated; (2) the buying processes in which the consumers are involved are careful and deliberate; (3) there has been not a single instance of actual consumer confusion shown in more than three years of co-existence of the 3D VISIBLE ENTERPRISE and VISIBLE marks; (4) no one outside this litigation has ever perceived VSC and Unisys as competitors; (5) the products

---

[4]  *Tamko Roofing*, 282 F.3d at 32-33.
[5]  *Id.* at 33.
[6]  *See, e.g.,* Unisys's Post-Trial Memorandum, Docket No. 122.

and services of the two companies are significantly different; (6) the companies market

and sell their offerings in substantially different ways; (7) the Unisys mark, on its face

and in the context in which it is actually encountered by consumers, is not confusingly

similar to VSC's mark; (8) the word "visible" has important descriptive and explanatory

functions, which militate against any likelihood of confusion; (9) the outside advertising

firm that developed the 3D VISIBLE ENTERPRISE mark for Unisys had its counsel

conduct a trademark clearance search, and provided Unisys with a copy of the attorney's

clearance letter; (10) the theory on which VSC's infringement claim is based—a theory

of "reverse confusion"—is not supported by any evidence of "saturation" of the

marketplace or "overwhelming" of VSC's reputation, as is required by the governing

doctrine; and (11) Unisys has never sought to "palm off" its services as those of VSC, to

trade on its reputation, or to damage VSC or prevent legitimate competition.  It was this

constellation of facts, presumably, that led the Court to remark at summary judgment

about VSC's unusually "thin" case.[7]

In a brief attempt in its memorandum to argue that Unisys's conduct somehow

meets the standard of culpability required for an award of fees, VSC points, as it has

before, to a list it offered in evidence at trial of contacts between VSC and certain Unisys

employees dating back two decades—a list the Court had implicitly rejected at summary

judgment as insufficient to show bad faith.[8]  VSC did not call any of the Unisys

personnel identified on the list as witnesses, and has no basis for suggesting that any of

---

[7] *See* footnote 2 *supra.  Cf. Raxton Corp. v. Anania Associates, Inc.*, 668 F.2d
622, 625 (1st Cir. 1982) (district court correctly held that case was not exceptional.
"Indeed, it was close enough that at one stage in the litigation it appeared that [defendant]
would prevail.").

[8] *See* Trial Exhibit 130.  The list was previously offered as VSC's Summary
Judgment Exhibit 34.

the employees had even a tangential role in the decision to adopt the 3D VISIBLE

ENTERPRISE mark.  Thus, the list does nothing to offset the overwhelming evidence of

Unisys's consistent good-faith belief that it had every right to use its mark, much less to

support a finding that this is an exceptional case.[9]

VSC also again refers to what it supposes was a conflict in the evidence at trial on

the origins of the "3D" and "Visible" components of Unisys's mark.  There was, in fact,

no such conflict.  Jack Aaker of Grey Worldwide, the outside advertising firm that

developed the 3D VISIBLE ENTERPRISE mark for Unisys, testified in detail about the

creative process at Grey that led to the conception of the mark, and said that it was the

Grey team, not anyone at Unisys, who devised the mark.[10]  But Grey's work naturally

included a careful study of how Unisys had historically described and explained its

consulting services and what set them apart.  And Unisys CEO Joseph McGrath, whose

deposition was read at trial, testified that he recalled the terms "3D" and "visible" having

been used at Unisys "for some time" to describe characteristics of the company's

blueprinting methodology.[11]  This only serves to bolster Unisys's contention that words

such as "visible" have concrete explanatory power that makes them especially useful in

conveying the complex ideas involved in what Unisys does, and that the selection of the

3D VISIBLE ENTERPRISE mark was the product of a careful and good-faith creative

process, not of an effort to take advantage of a competitor's goodwill.

---

[9] *Cf. 24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 447 F. Supp. 2d 266, 283 (S.D.N.Y. 2006) (no permissible inference of bad faith where defendant's employees who knew of plaintiff's mark had no role in defendant's decision to use mark).

[10] *See* Transcript 07/27/07 at 174; *see also* Transcript 07/27/07 at 6-7 (testimony of Unisys's David Wright, offered in evidence by VSC, that no one at Unisys suggested the 3D Visible Enterprise name to Grey).

[11] *See* Transcript 07/31/07 at 6-7.

In sum, there is simply no evidence in this case of the sort of egregious conduct by the defendant—deliberate copying of a competitor's mark, intent to confuse consumers, desire to harm the competitor and/or capture its market share, or contempt of a court injunction—that courts have found meet the high "exceptional case" standard required to justify an award of attorneys fees.

## II.    The jury's advisory finding of "willfulness" does not warrant an award of fees

The absence of anything exceptionally culpable in Unisys's conduct is not altered by the jury's advisory finding of willfulness.[12]  As the First Circuit has made clear, a finding of "willfulness" by a jury is by itself insufficient to support an award of fees.[13] Furthermore, as Unisys has argued, the jury's finding in this case conflicts with the Court's rulings that there was no evidence that Unisys acted with bad faith or bad intent, and was not supported by the evidence as to Unisys's adoption of the 3D VISIBLE ENTERPRISE mark.[14]  For these reasons, the jury's "willfulness" finding should be disregarded by the Court, and is certainly inadequate by itself to demonstrate that this case is somehow exceptional.

## III.    VSC has not been harmed by Unisys's use of the 3D VISIBLE ENTERPRISE mark

As noted, one of the other factors relevant to whether a case is "exceptional"

---

[12]  As the Court correctly recalled at the recent hearing on post-trial motions, it made clear at the charge conference during trial that it would regard the jury's finding on this point as "advisory," since it did not bear on any element of the infringement claim. *See* Transcript 07/30/07 (Charge Conference) at 58:24.

[13]  *Tamko Roofing*, 282 F.3d at 31 n.5 ("To the extent Ideal argues that it would be error for a district court to adopt a per se equivalence between 'exceptional case' and a jury finding of willfulness, we would agree....").

[14]  *See* Unisys's Post-Trial Memorandum, Docket No. 122, at 23-26.

within the meaning of the Lanham Act's attorneys'-fees provision is whether the plaintiff

has suffered actual damage.[15]  Here, as Unisys has argued elsewhere, there was no

adequate evidence at trial to support any award of damages—either as "lost profits" or

based on claimed harm to VSC's goodwill.  There was no evidence (1) that any consumer

has in fact ever been confused by Unisys's mark; (2) that any consumer ever—for any

reason—purchased any services (or goods) from Unisys instead of purchasing

comparable goods (or services) from VSC; (3) that any such purchasing decision was

ever made because of Unisys's use of the 3D VISIBLE ENTERPRISE mark; or (4) that

any potential customer declined to purchase VSC's products (or services) because of a

lowered estimation of VSC's reputation somehow stemming from Unisys's use of the 3D

VISIBLE ENTERPRISE mark.  Under these circumstances, VSC necessarily could not

show that it lost sales because of consumer confusion stemming from Unisys's mark.

And indeed, the evidence showed that VSC's annual revenues have been steadily

declining since 2001, long before Unisys's alleged infringing activities began.  The jury

could not have rationally linked any trend in VSC's revenues to Unisys or its mark.[16]

Indeed, VSC's own founder and CEO testified that there were "probably a thousand

reasons" why VSC's revenues declined.[17]  Moreover, even if it could have shown that it

lost *revenues* as a result of Unisys's alleged infringement, VSC could not meet its further

burden of showing that this translated into lost *profits*.[18]  Indeed, VSC was unprofitable

---

[15]  *Tamko Roofing*, 282 F.3d at 32-33.

[16]  *Cf. Jeffery Chain, L.P. v. Tropodyne Corp.*, 238 F.3d 421 (6th Cir. 2000)
(reversing damages award based on jury verdict where plaintiff's damages theory was
founded on supposed decline in sales correlating to defendant's infringement).

[17]  *See* Transcript 07/23/07 at 135.

[18]  *See, e.g., The Murphy Door Bed Co., Inc. v. Interior Sleep Sys., Inc.*, 874 F.2d
95, 103 (2d Cir. 1989) (collecting cases); *The Apollo Theater Found., Inc. v. Western*

long before the 3D VISIBLE ENTERPRISE mark ever existed.[19]

The jury's damages award likewise could not have properly been based on supposed harm to VSC's goodwill. To begin with, as Unisys has argued, VSC waived any such theory of damages. Furthermore, there was, in fact, no sufficient evidence to support an award of damages for harm to goodwill. VSC failed to show that its reputation has somehow suffered in any respect as a result of Unisys's use of the 3D VISIBLE ENTERPRISE mark, and indeed there is no reason to suppose this has occurred. There was certainly no basis on which the jury could have rationally determined the value of this business asset, and therefore no way to have reasonably assigned a figure to compensate VSC for its supposed loss.[20]

VSC's failure to demonstrate at trial that it suffered any damages further militates against any finding that this case is exceptional such that an award of fees is potentially warranted.

## IV.  Nothing in Unisys's handling of this litigation renders this case exceptional or merits an award of fees

VSC's argument that an attorneys'-fees award in this case is justified by Unisys's "oppressive litigation conduct" is frivolous. VSC refers in passing to a single issue that

*Int'l Syndication*, 2005 WL 1041141, *11 (S.D.N.Y. May 5, 2005) (plaintiff must show not only lost revenue, but "what it would have cost to generate that revenue"); *Ushoday Enters., Ltd. v. V.R.S. Int'l, Inc.*, 63 F. Supp. 2d 329, 341 (S.D.N.Y. 1999) (same).

[19]  *See* Trial Exhibit 160.

[20]  *See Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 401 F.3d 901, 914 (8th Cir. 2005) (vacating jury award of goodwill damages; issue should not have gone to jury absent testimony that plaintiff company was worth less because of its injury or evidence "giving a measure of, or a way of measuring, how much less"). The Court's instructions and verdict form suggested that the jury could consider goodwill. *See* Transcript 07/31/07 at 103; Verdict Form, Question 4. But the Court indicated at the charge conference that if the jury did not accept VSC's lost-profits theory, the other evidence would support only an award of nominal damages. *See* Transcript 07/30/07 (Charge Conference) at 58:9-12, 59:4-16.

arose during discovery, one that was addressed by Magistrate Judge Bowler in a July 12, 2007 order after brief and argument by the parties.  Addressing one in a series of meritless and purely tactical discovery motions by VSC in this case, the magistrate judge roundly rejected VSC's contention that Unisys had violated an earlier discovery order.[21]

### V.    There is no basis for VSC's arbitrary assertion that its attorneys' actual hourly rates should be doubled

VSC suggests in passing at the end of its memorandum, without citation to any evidence or authority, that the Court should double its attorneys' actual hourly rates in calculating the requested fee award.  VSC refers to "the partially contingent nature of the fee" paid to its attorneys, but it supplies no written contingent-fee agreement, as is of course required under the applicable ethical rules.[22]  And VSC has refused Unisys's request that it produce any agreement that may exist.

While Unisys contends that VSC is not entitled to any award of fees, it has certainly offered no adequate basis for its arbitrary request that the actual fees be doubled.

### VI.    Conclusion

For all of the foregoing reasons, VSC's request for attorneys' fees fails to meet any of the necessary elements for such an award: the defendant's conduct was far from egregious, there are no equitable considerations warranting fee-shifting, and there are no grounds on which this Court could "supportably find[] the case exceptional."[23]  VSC's motion should be denied.

---

[21]  *See* Decision, Docket No. 83, at 2 (Unisys "correctly argues that there was no violation of the July 18, 2006 Order").
[22]  *See* Mass. R. Prof. Cond. 1.5(c).
[23]  *Tamko Roofing,* 282 F.3d at 32.

<u>Request for Oral Argument</u>

Unisys hereby respectfully requests that the Court schedule oral argument on the

motion addressed in this memorandum.


Dated: December 20, 2007

UNISYS CORPORATION,
By Its Attorneys,


/s/ William L. Boesch
Anthony M. Doniger, BBO No. 129420
doniger@srbc.com
William L. Boesch, BBO No. 558742
boesch@srbc.com
SUGARMAN, ROGERS, BARSHAK
 & COHEN, P.C.
101 Merrimac Street
Boston, MA 02114
617-227-3030

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document is being filed through the ECF system, and that
I am therefore relying on the system to complete service by sending copies of the filing
electronically to the necessary counsel, who are registered participants.


/s/ William L. Boesch


398756.3